# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Application of GORSOAN LIMITED and GAZPROMBANK OJSC for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding,<br><br><br>Petitioners. | Case No.<br>ECF CASE<br>**13 MISC 0397** |

## DECLARATION OF OWEN C. PELL

I, Owen C. Pell, declare as follows:

    1.  I am a Partner with the firm of White & Case LLP, counsel for Gorsoan Limited ("Gorsoan") and Gazprombank OJSC ("GPB," and together with Gorsoan, the "Petitioners"). I have personal knowledge of the factual matter set forth in this declaration and submit it in support of Petitioners' *Ex Parte* Application for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding (the "Application").

    2.  A true and correct copy of an Affidavit of Service on Janna Bullock dated October 11, 2012 (showing that Janna Bullock was personally served on October 9, 2012 in front of 120 East 87th Street, New York, New York) is attached hereto as **Exhibit 1**.

    3.  A true and correct copy of a Verified Complaint first filed in the New York Supreme Court for New York County in *RIGroup LLC et al. v. Trefonisco Mgmt. Ltd. et al.*, No. 650809/2012 (Dkt. No. 6) and removed to federal court in the proceeding styled *RIGroup LLC et al. v. Trefonisco Mgmt. Ltd. et al.*, No. 12-cv-3721-JMF (S.D.N.Y. Dkt. No. 1-3) is attached hereto as **Exhibit 2**.

4.   A true and correct copy of the registration information of New York-licensed attorney Stuart Alan Smith of 425 Park Avenue, Floor 27, New York, New York 10022-3517 in the New York State Unified Court System's online Attorney Directory is attached hereto as **Exhibit 3**.

5.   A true and correct copy of a Power of Attorney for Zoya Kuznetsova at 120 87th Street, New York, New York, dated January 24, 2007 and recorded in the Office of the City Register of the City of New York on May 1, 2007 is attached hereto as **Exhibit 4**.

6.   A true and correct copy of a website displaying a photo of Zoe Bullock Remmel (formerly known as Zoya Kuznetsova) and Janna Bullock is attached hereto as **Exhibit 5**.

7.   A proposed Subpoena to Janna Bullock is attached hereto as **Exhibit 6**.

8.   A proposed Subpoena to RIGroup LLC is attached hereto as **Exhibit 7**.

9.   A proposed Subpoena to Stuart Alan Smith is attached hereto as **Exhibit 8**.

10. A proposed Subpoena to Zoe Bullock Remmel (a.k.a. Zoya Kuznetsova) is attached hereto as **Exhibit 9**.

Dated: New York, NY
      November 26, 2013

Owen C. Pell

2

# Exhibit 1

```
---------------------------------------------------X
Re: Action number 3573/2012 D.C, Limassol           |
Gorsoan Limited and other vs. Janna Bullock and others  |
                                                    |
---------------------------------------------------X
```

**AFFIDAVIT OF SERVICE**

STATE OF NEW YORK        )
                         )    ss.:
COUNTY OF NEW YORK       )

**RONALD GUEST**, being duly sworn, deposes and says:

1.    That I am not a party to this action, am over eighteen years of age and resides in the State of New York;

2.    That on <u>October 09, 2012,</u> at approximately <u>11:43 a.m.,</u> I personally served in the Greek language together with a translation in the English/French language of the Writ of Summons, Notice of the Writ of Summons, Application for interim orders dated 10.8.2012, Affidavit of Maria Kokovina Parouti dated 10.8.2012 with 2 exhibits in support of the application dated 10.8.2012, which are the affidavit of Vitaliy Evgenyevich Sirotkin and its Greek translation, Affidavit of Vitaliy Evgenyevich Sirotkin dated 10.8.2012 with 162 exhibits in support of the application dated 10.8.2012, Ex-parte interim freezing order of the Court dated 14.8.2012, Application for leave to serve outside of the jurisdiction dated 14.8.2012, Affidavit of Eleni Apostolidou dated 14.8.2012 in support of the application dated 14.8.2012, Ex-parte court order dated 16.8.2012 granting leave to serve the court documents outside of the jurisdiction, minutes of Court dated 22.8.2012 extending the return date to 3.9.2012, application dated 3.9.2012 for substituted service, supplementary affidavit dated 5.9.2012, and order of the Court allowing substituted service and extending return date to 24.9.2012, all upon **JANNA BULLOCK**, by delivering to and leaving a copy with Ms. Janna Bullock, by performing a "stake-out" service with photo of Janna Bullock in hand.  Deponent observed Janna Bullock exiting the address indicated below who was approached and served with said papers. Janna Bullock then attempted to evade service by walking away and leaving the papers which were served upon her on the ground in front of her building.  Deponent then followed Janna Bullock who walked about twenty feet away and kept advising Janna Bullock that she was served.  Janna Bullock then turned and went back to the papers which were served upon her and looked in the banker box at the papers and then decided to leave them sitting on the ground and proceeded to walk in the same direction as before.  At this time, deponent then took out his cell phone and proceeded to take pictures of Janna Bullock as further proof that she had been served, which service was effected at her actual place of residence indicated below:

> Janna Bullock
> 120 East 87th Street / Front of building
> New York, New York 10128

3.    **Ms. Janna Bullock** can be best described as:

Female - White skin – Blonde hair – Blue eyes - Approximately 40– 45 years of age - 5'3" – 5'6" and 115 – 135 lbs.

Dated: October 11, 2012
       New York, New York

_____
RONALD GUEST
License No.: 1282614
Exclusive Process
P.O. Box 858, NYC 10268

Sworn to before me on this the 11th day of October 2012

_____
NOTARY PUBLIC

ANNA DONG
Notary Public, State of New York
Reg. No. 04DO6228919
Qualified in New York County
Commission Expires Sept. 27, 20

Exhibit 2

FILED: NEW YORK COUNTY CLERK 04/25/2012

NYSCEF DOC. NO. 6

INDEX NO. 650809/2012

RECEIVED NYSCEF: 04/25/2012

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------ X
                                                       :
RIGROUP LLC and JANNA BULLOCK                          :
                                                       :
                    Plaintiffs,                        :
                                                       :
              -against-                                :       INDEX NO. 650809/12
                                                       :
TREFONISCO MANAGEMENT LIMITED,                         :       **VERIFIED COMPLAINT**
CONFLICT.NET.RU (a/k/a LIMITED                         :
LIABILITY COMPANY                                      :
KONFLIKT.NET.RU), ALEXANDER ESIN,                      :
A.V. BELOV and JOHN DOES 1-9,                          :
                                                       :
                    Defendants.                        :
------------------------------------------------------ X

Plaintiffs RIGroup LLC ("RIGroup USA") and Janna Bullock, by their attorneys,

Stuart A. Smith and Joel E. Abramson, as and for their Verified Complaint against Trefonisco

Management Limited ("Trefonisco"), Conflict.net.ru (a/k/a limited liability company

Konflict.net.ru) ("Konflikt.net"), Alexander Esin, Alexey Belov, and John Does nos. 1-9, allege

as follows:

### NATURE OF ACTION

1.      Plaintiffs RIGroup USA and Bullock bring this action seeking hundreds of

millions of dollars in damages arising from Defendants' fraud, breach of fiduciary duty and

conversion. The principal architects of said frauds and wrongful acts, as pleaded herein, are

Defendants Esin and Belov, who previously served as the CEO and CFO of OOO RIGroup

("RIGroup Russia"), of which Plaintiff RIGroup USA was the principal shareholder. Esin and

Belov stole and converted Plaintiffs' assets, and the assets of RIGroup Russia, by way of their

falsification of corporate and financial documents (including "loans" purportedly transferred and

assigned to Defendants' Trefonisco and Konflict.net). Upon information and belief, and as set forth further below, Esin and Belov falsified certain corporate documents of RIGroup Russia, and otherwise falsely designated and noticed (and filed documents with the Russian Register of Legal Entities (the "Russian Register") concerning same) certain corporate director and shareholder meetings, whereby Esin and Belov transferred control of RIGroup Russia (and the assets of its valuable corporate affiliates) to a gang of Russian corporate raiders (which included Esin and Belov, among others). As a reward for their allegiance to this group of raiders (as opposed to Plaintiffs, as shareholders of RIGroup Russia), both Esin and Belov were paid extravagantly. Upon information and belief, Esin, for instance, received $100,000 per month to continue to support the falsified corporate records, as well as 10% of any asset stripped from RIGroup Russia and/or its corporate affiliates.

2.      Defendant Esin and Belov's asset-stripping activities also involved the wrongful creation and later "purchase" of RIGroup Russia's assets in bankruptcy. Specifically, Esin and Belov purported to "purchase," for little or no consideration, a number of "loans" which, upon information and belief, Esin and Belov, and/or their associated corporate raiders had falsely created and manufactured in the first instance. These falsified "loans," which Esin and Belov have transferred to Trefonisco and/or Konflict.net, purport to encumber Plaintiffs' properties and/or otherwise wrongfully require payments from Plaintiffs. Because the loans are void *ab initio* and fraudulent, they must be set aside.

3.      As set forth herein, Esin and Belov used and conspired with others to effectuate their unlawful acts, as part of their overall scheme to enrich themselves at Plaintiffs' expense.

2

The Parties

4.      Plaintiff RIGroup LLC ("RIGroup USA") is a Delaware limited liability company

with a principal place of business in New York, New York.  Until the Raiders undertook the

unlawful actions described herein, RIGroup USA owned a controlling interest  in RIGroup

Russia, directly or through intermediate companies wholly owned by RIGroup USA.

5.      Plaintiff Janna Bullock ("Bullock") is a citizen of United States with her principal

residence in New York, New York.  Bullock is the sole member of Plaintiff RIGroup USA.

6.      Upon information and belief, Defendant Alexander Esin is a Russian citizen with

his principal residence in Moscow, Russia.  Alexander Esin is, on information and belief, a

notorious Russian corporate raider who has deep, illegitimate connections with various Russian

government agencies

7.      Upon information and belief, Defendant Alexey Belov is a Russian citizen with

his principal residence in Moscow, Russia.

8.      Upon information and belief, Defendant Trefonisco Management Limited

("Trefonisco") is a corporation organized and existing under the laws of Cyprus.  Belov has been

the sole shareholder of Trefonisco since 2011.  On or about February 22, 2012, Esin was granted

a broad power of attorney to act on Trefonisco's behalf.

9.      Upon information and belief, Defendant Conflict.net.ru (a/k/a limited liability

company Konflict.net.ru) ("Konflikt.net") is a limited liability company organized and existing

under the laws of Russia.  Belov serves as General Director of Konflikt.net.  Upon information

and belief, Esin is similarly related to Konflikt.net.

10.     Upon information and belief, John Does 1-9 are individuals and entities who are

or have acted in concert with the other Defendants to defraud Plaintiffs and wrongfully convert

3

Plaintiffs' assets. The true names and capacities, whether individual, corporate, or otherwise, of defendants named herein John Does 1 through 9 are presently unknown to Plaintiffs, who therefore sue said Defendants by said fictitious names. Plaintiffs believe that information obtained in discovery will lead to the identification of the Defendants' true names and permit the Plaintiffs to amend this Complaint to allege these Defendants' true names and capacities, together with such other allegations as may be necessary or appropriate, when they become known.

### JURISDICTION AND VENUE

11.     Jurisdiction over the Defendants is pursuant to New York Civil Practice Law and Rules §§ 301 and 302(a)(1) and (a)(3). Jurisdiction over the Defendants Esin, Trefonisco and Konflict.net is also appropriate on the grounds that these Defendants have been properly and personally served with Summons with Notice in New York, New York.

12.     Venue is appropriate in New York County pursuant to CPLR § 503(a) and (c).

### FACTUAL ALLEGATIONS

**General Background**

13.     Plaintiff Bullock, a United States citizen, is the owner and sole member of RIGroup USA, a Delaware limited liability company. Bullock, via RIGroup USA and the other companies she owns, engages in real property development and investment in various locations throughout the world.

14.     Until the conspiratorial and wrongful acts described further herein, Bullock was the lawful and legitimate majority owner and shareholder (via a number of corporate entities, including RIGroup USA) of RIGroup Russia. As reported by RIGroup Russia at the close of 2007, RIGroup Russia had significant assets, including thousands of hectares of land and real

4

property assets valued at the close of 2007 at more than 3 billion Russian Rubles. In addition, and prior to the wrongful acts described herein, Bullock was the lawful and legitimate owner and shareholder of a number of additional corporate entities (and corporate assets) located in Russia.

15.     RIGroup Russia, for its part, held significant real estate assets and development rights in and around Moscow. In addition, RIGroup Russia held a significant shareholder interest in a valuable subsidiary company, Open Joint Stock Company Rosweb ("Rosweb").

16.     In 2008, and at all times relevant herein, Defendant Esin was the Director General (or Chief Executive Officer) of RIGroup Russia. By his position as an officer of RIGroup Russia, Esin owed Plaintiffs, shareholders of RIGroup Russia, fiduciary duties.

17.     In 2008, and at all times relevant herein, Defendant Belov was the Chief Financial Officer of RIGroup Russia. By virtue of his position as an officer of RIGroup Russia, Belov owed fiduciary duties to Plaintiffs, shareholders of RIGroup Russia.

18.     Esin and Belov (together with their co-conspirators, John Does 1-9) wrongly fabricated a company-initiated "buyout" in which Bullock (or the companies she controlled, including RIGroup USA) purportedly agreed to accept shares of an affiliated company Rosweb in exchange for her shares of RIGroup Russia. Esin and Belov falsely represented that such buy out occurred in or about August 2008.

19.     Esin and Belov's representations concerning a shareholder "approved" buy out were intentionally false when made. In fact, no such "buy out" ever occurred.

20.     The shareholders of RIGroup Russia, including Plaintiffs herein, never approved any such "buy out." And any corporate document evidencing such shareholder approval was wrongly falsified.

21.    Contrary to RIGroup Russia's falsified records, the shareholders of the company (including Plaintiffs herein): (a) never sent written notices to RIGroup Russia on August 8, 2008 stating an intent to sell RIGroup Russia shares; (b) never executed agreements on or about August 28, 2008 whereby they agreed to sell their shares to RIGroup Russia in exchange for Rosweb shares; and (c) never received any such Rosweb shares in any event.

22.    The purported "buy out" of RIGroup Russia was nothing more than an after-the-fact lie. That fact is firmly established by RIGroup Russia's September 15, 2009 filing with the Russian Register. In this filing– *i.e.* well after the purported August 2008 company "buyout"– the company represents and discloses that as of September 15, 2009, Plaintiffs and their affiliated companies remained shareholders of RIGroup Russia. Thus, the filing establishes beyond any doubt that no corporate "buyout" had occurred in August 2008.

23.    As specifically set forth in RIGroup Russia's corporate filing, as of 15 September 2009 the shares of RIGroup Russia were held as follows:

| SHAREHOLDER | SHARES | % |
|---|---|---|
| Hotrast Consulting Ltd | 2,618,288,200 | 32.4% |
| Nogion Holdings Ltd | 2,518,764,800 | 31.2% |
| Trivalent Advisors S.A. | 2,048,787,000 | 25.3% |
| Vinilio Consulting Ltd | 462,297,000 | 5.7% |
| RIGroup USA | 298,863,000 | 3.7% |
| Westbury Fund Ltd | 135,000,000 | 1.7% |

24.    Of the companies listed as shareholders of RIGroup Russia, Ms. Bullock was the rightful owner of Hotrast Consulting Ltd. ("Hotrast"), Nogion Holdings Ltd. ("Nogion"), Vinilio Consulting Ltd. ("Vinilio") RIGroup USA, and the Westbury Fund Ltd ("Westbury Fund").

25.    By their wrongful acts, however, Esin, Belov, and their co-conspirators wrested control of RIGroup Russia, and looted its assets, ultimately filing corporate disclosures with the

Russian Registry that the new 98% shareholder of RIGroup Russia was a newly formed Cypriot entity, Amytal Holdings Ltd. ("Amytal").

26.     Upon information and belief, Esin, Belov, and their co-conspirators established and control Amytal for the sole purpose of accepting the proceeds of the theft.

27.     But Esin, Belov and their co-conspirators theft and conversion did not stop there. In addition to their looting of the assets of RIGroup Russia, Esin, Belov and their co-conspirators created and falsified a number of purported loans, due and owing to RIGroup Russia, from Ms. Bullock and certain of her additional companies located outside of Russia.  These purported loans are not authentic or enforceable, but are complete shams.

28.     Upon information and belief, Esin and Belov, by their companies Trefonisco and Konflict.net, purported to buy these fraudulent loans (up to 9 different loans, including purported "loans" of tens of millions of Euros related to Ms. Bullock's purchase of three French hotels) from RIGroup Russia for little or no consideration.

29.     The purported loans held by Trefonisco and/or Konflict.net are false and fraudulent.  As such they are void.

30.     Notwithstanding the foregoing, Esin (acting on behalf of himself and the other Defendants) has made demands for settlement of the loans at 1% of their value.  Such demands, and attempts to enforce these fraudulent loans, are nothing more than further attempted theft.

31.     These Russian corporate raiders also stole and converted the assets of a number of Plaintiff's other companies, including Rosweb, a venture capital fund established in 2007 and worth hundreds of millions of Euros from its holdings in, inter alia, companies operating within the telecommunications, banking and financial services industries.

32.    As of February 19, 2008, RIGroup Russia held 6,864,600 shares, or 51% of the authorized shares of Rosweb.  As set forth above, Esin, Belov and their co-conspirators engineered a purported buy-out of RIGroup Russia whereby its shareholders received shares of Rosweb.  Similar falsified documentation concerning the distribution of Rosweb shares has been filed with the Russian Registry – when in fact such shareholders received nothing.

33.    Even if the shareholders of RIGroup Russia were to have received shares of Rosweb to hold directly (which did not occur), these shares of Rosweb are now virtually worthless as a result of Defendants' corporate raiding and conversion of assets.

34.    Esin, Belov, and their co-conspirators transferred the management control of Rosweb to the ORSI Group.  Once the ORSI Group was wrongfully entrenched in a management position, ORSI divested the company of all of its assets.

35.    ORSI's appointment to management, however, was similarly based upon false and fraudulent corporate actions.  Specifically, Esin, Belov and their co-conspirators wrongly and fraudulently "voted" in favor of ORSI's appointment on behalf of certain of Ms. Bullock's companies (Hotrast and Nogion) based upon false, fabricated, and unauthorized "powers of attorney."  Thus, ORSI's appointment was void *ab initio*.

36.    In furtherance of the looting and the corporate raids, Esin, Belov and their co-conspirators also wrongly converted Ms. Bullock's ownership and interest in the company Skevor Enterprises Ltd. (the beneficial owner of Russian properties worth tens of millions of Euros).

37.    Defendants accomplished the theft of Skevor and its assets by the wrongful termination of the original trust deed pursuant to which Ms. Bullock was the designated

8

beneficial owner of Skevor, and issuance of a substitute trust deed whereby one of Defendants'
coconspirators was named beneficial owner.

38.   Following the creation and delivery of this new, fraudulent trust deed, Defendants
improperly took control of Skevor and looted it of any assets.

39.   Upon information and belief, Defendants are responsible for the alteration of
additional trust deeds, and further corporate looting in derogation of the Plaintiffs' interests, to be
proven at trial.

**FIRST CLAIM FOR RELIEF
MISAPPROPRIATION AND CONVERSION
(AGAINST DEFENDANTS ESIN AND BELOV)**

40.   Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 39
above as if set forth fully herein.

41.   Esin and Belov, through abuse of positions of trust, fraud, and other conduct
described herein, obtained possession of rights and property belonging to Plaintiffs.

42.   Without lawful rights, and in derogation of their duties to Plaintiffs, Esin and
Belov converted property rightfully belonging to Plaintiffs to their own use and enjoyment.

43.   By their conduct, Esin and Belov have clearly manifest a desire to steal the
property of Plaintiffs and not to return it.

44.   The property converted by Esin and Belov includes, without limitation, the
ownership and management of RIGroup Russia, the assets of Rosweb and Skevor, and the
ownership, management, and assets of the certain other companies to be proven at trial.

45.   Defendants did not pay for the ownership or assets of RIGroup Russia, Rosweb or
Skevor.

9

46.     Defendants wrongfully misappropriated the ownership or assets of RIGroup Russia, Rosweb and Skevor.  Upon information and belief, Defendants continue to retain the assets of RIGroup Russia, Rosweb and Skevor and/or proceeds from the sale thereof.

47.     By virtue of this conversion, Plaintiffs have suffered the loss of valuable property, as described above.  Such loss constitutes a significant and serious harm and damage to Plaintiffs.

48.     As a direct and proximate result of the conduct of the Raiders, Plaintiffs have suffered substantial injury in an amount to be determined at trial but believed to exceed millions of dollars.

49.     Accordingly, Plaintiffs are entitled to an award representing damages resulting from Defendants' conversion and the forfeiture of any additional amounts which they claim to be owed.

50.     Defendants' conduct was wanton, reckless, outrageous, or in willful disregard of Plaintiffs' rights, such that punitive damages should be imposed against them.

### SECOND CLAIM FOR RELIEF
### FRAUD AND CONSPIRACY TO DEFRAUD
### (AGAINST ALL DEFENDANTS)

51.     Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 50 above as if set forth fully herein.

52.     Defendants joined in a concerted and conspiratorial effort to defraud Plaintiffs by misrepresenting their authority to act on behalf of certain companies, by misrepresenting corporate acts as the acts and meetings of shareholders, thereby causing Defendants to gain control of RIGroup Russia, Rosweb, Skevor, and the other looted companies to be identified through the course of these proceedings.

53.     As set forth above, Defendants Esin and Belov engaged in improper conduct in connection with their dealings in regard to RIGroup Russia, Rosweb and Skevor to unjustly enrich themselves at Plaintiffs' expense. In connection with such conduct, Defendants Esin and Belov made numerous fraudulent misrepresentations, and/or omissions when under a duty to disclose.

54.     Defendants' representations as to their ownership of RIGroup Russia by way of a "buy out" were false when made, and were known by Defendants to be false.

55.     Defendants' representations as the appointment of ORSI to management of Rosweb were false when made, and were known by Defendants to be false.

56.     Defendants' representations as to their ownership of Skevor by way of a cancelled trust deed and re-issuance of that trust deed in the name of Defendants' co-conspirator were false when made, and were known by Defendants to be false.

57.     Defendants' representations as the existence and validity of loans to RIGroup Russia, which have now been purportedly transferred to Trefonisco and Konflict.net, were false when made, and were known by Defendants to be false.

58.     As set forth above, Esin and Belov structured the fraudulent RIGroup Russia, Rosweb and Skevor transactions to enable them to misappropriate hundreds of millions of dollars from Plaintiffs.

59.     Once the Defendants made their fraudulent misrepresentations, Defendants engaged in a systematic effort to steal Plaintiffs' assets, including the ownership, control, and assets of the raided companies described herein.

60.     In doing so, Defendants have caused untrue statements, including, without limitation, the false and concocted story about the purported buyout of RIGroup Russia, as well

as the wrongful appointment of ORSI as management to Rosweb, to be filed with the Russian Registry. On the basis of these untruths, Defendants have further misrepresented their ownership and control of these and other entities, in furtherance of their efforts to strip the assets of and thereby loot these companies.

61.     Defendants have gone so far as to create, purchase, and attempt to enforce false "loans" purportedly granted by certain of Ms. Bullock's companies outside of Russia to RIGroup Russia, and to attempt to enforce or compromise these fraudulent loans.

62.     As detailed herein, Esin, Belov, Trefonisco and Konflict.net each made fraudulent misrepresentations and/or omissions in connection with the fraudulent scheme.

63.     As detailed herein, Esin, Belov, Trefonisco and Konflict.net each knowingly participated .and assisted the scheme to wrongly misappropriate and/or extract funds from Plaintiffs.

64.     As detailed herein, Esin, Belov, Trefonisco and Konflict.net each acted with knowledge of the relevant misrepresentations and omissions, and profited handsomely as a result of their knowing participation in the fraudulent scheme.

65.     As a direct and proximate result of the fraud the Defendants conspired to and did commit, Plaintiffs have suffered substantial injury in an amount to be determined at trial but believed to exceed millions of dollars.

66.     Accordingly, Plaintiffs are entitled to an award representing damages resulting from Defendants' fraud and the forfeiture of any additional amounts which they claim to be owed.

67.     Defendants' conduct was wanton, reckless, outrageous, or in willful disregard of Plaintiffs' rights, such that punitive damages should be imposed against them.

68.     Moreover, because the loans purportedly transferred by RIGroup Russia to Defendants Trefonisco and Konflict.net are fraudulent documents, which were never presented to nor agreed to by anyone acting on any legitimate counter-party, contain unconscionable terms, and are the product of Defendants' fiduciary breaches, such purported loans should be declared void and of no effect and/or rescinded.

## CLAIM FOR RELIEF
## BREACH OF FIDUCIARY DUTY
## (AGAINST ESIN AND BELOV)

69.     RIGroup LLC repeats and realleges the allegations set forth in paragraphs 1 through 68 above as if set forth fully herein.

70.     As General Director and Chief Financial Officer of RIGroup Russia, specially reposed of authority to act in the interests of the company's shareholders (including Plaintiffs here), Esin and Belov acted in a fiduciary capacity with regard to Plaintiffs.

71.     Each of Esin and Belov thus owed fiduciary and other duties to Plaintiffs. Such fiduciary duties included, among other things, the duties of undivided loyalty, to act in the utmost good faith and to deal honestly, fairly and in the best interests of Plaintiffs and their affiliated companies, to fully disclose conflicts of interest, to refrain from self-dealing and the usurpation of corporate opportunities, to protect against unscrupulous and undocumented claims, to maintain the confidences and privileged and confidential information provided to them, and to put the interests of Plaintiffs and their companies before their own interests.

72.     By engaging in the fraudulent and unlawful conduct described above, both Esin and Belov violated their fiduciary duties to Plaintiffs.

73.     Upon information and belief, Esin and Belov, working together and with others, each knowingly participated and assisted in the aforesaid breaches.

<u>VERIFICATION</u>

STATE OF NEW YORK      )
                      ) ss.:
COUNTY OF NEW YORK     )

Janna Bullock, being duly sworn, deposes and says:

I have read the foregoing Verified Complaint and know the contents

thereof; and the same is true to my knowledge, except as to the matters therein stated to

be alleged upon information and belief, and as to those matters I believe them to be true.

_____
JANNA BULLOCK

Sworn to before me this
17th day of April 2012.

_____
Notary Public

```
**********************************
*      SHILPA A SHETTY            *
*  Notary Public - State of New York  *
*      NO. 01SH6241166            *
*    Qualified in Kings County    *
* My Commission Expires  5-16-15  *
**********************************
```

SUPREME    COURT OF THE STATE OF NEW YORK     650809    12
STATE OF NEW YORK, COUNTY OF NEW YORK    Index No.       Year

---

RIGROUP LLC and JANNA BULLOCK,

                                    Plaintiffs,

-against-

TREFONISCO MANAGEMENT LIMITED, CONFLICT.NET RU (a/k/a LIMITED
LIABILITY COMPANY KONFLIKT.NET.RU), ALEXANDER ESIN,
A.V. BELOV and JOHN DOES 1-9

                                      Defendants.

---

VERIFIED COMPLAINT AND AFFIDAVIT OF SERVICE

---

Joel E. Abramson, P.C.   &amp;   Stuart A. Smith, as Co-Counsels

*Attorney(s) for*     Plaintiffs

*Office and Post Office Address, Telephone*

271 Madison Avenue, 22nd Floor     425 Park Avenue, 27th Floor
New York, New York 10016     New York, New York 10022
Tel: (212) 599-7700     (212) 759-8285

---

To    Roshini Chaudhari, Esq. &amp; Bertand C. Sellier Esq.    Signature (Rule 130-1.1-a)
    VANDENBERG &amp; FELIU, LLP
    *Attorneys for Defendant Alexander Esin*
    60 East 42nd Street, 51st Floor    Print name beneath
    New York, New York 10017
    (212)763-6800    Service of a copy of the within is hereby admitted.

Attorney(s) for    Dated: _____

---

**PLEASE TAKE NOTICE:**

☐ NOTICE OF ENTRY

that the within is a *(certified) true copy of a*
duly entered in the office of the clerk of the within named court on

☐ NOTICE OF SETTLEMENT

that an order                  of which the within is a true copy
will be presented for settlement to the HON.        one of the judges of the
within named Court, at
on                at        M.
Dated,

                        Yours, etc.

                        JOEL E. ABRAMSON, P.C.

# Exhibit 3



New York State Unified Court System

# COURTS

| | |
|---|---|
| **Attorney Search** | Courts |
| **Attorney Registration** | Litigants |
| **Registered In-House Counsel Search** | Attorneys |
| **In-House Counsel Registration** | Jurors |
| **Resources** | Judges |
| **E-Courts** | Careers |
| **Contact Us** | Search |

## *Attorney Detail*

*as of 11/25/2013*

**Registration Number:**    1213099

**STUART ALAN SMITH**
STUART A. SMITH
425 PARK AVE FL 27
NEW YORK, NY 10022-3517
United States
(New York County)
(212) 759-8285

**E-mail Address:**
**Year Admitted in NY:**    1964
**Appellate Division Department of Admission:**    2
**Law School:**    HARVARD
**Registration Status:**    Currently registered
**Next Registration:**    Mar 2014

[ Search Again ]

The Detail Report above contains information that has been provided
by the attorney listed, with the exception of REGISTRATION STATUS,
which is generated from the OCA database. Every effort is made to
insure the information in the database is accurate and up-to-date.

The good standing of an attorney and/or any information regarding
disciplinary actions must be confirmed with the appropriate Appellate
Division Department. Information on how to contact the **Appellate
Divisions** of the Supreme Court in New York is available at
www.nycourts.gov/courts.

If the name of the attorney you are searching for does not appear,
please try again with a different spelling. In addition, please be advised
that attorneys listed in this database are listed by the name that
corresponds to their name in the Appellate Division Admissions file.
There are attorneys who currently use a name that differs from the
name under which they were admitted. If you need additional
information, please contact the NYS Office of Court Administration,
Attorney Registration Unit at 212-428-2800.

www.NYCOURTS.gov

Exhibit 4

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2007020501353002003EC0B4

| RECORDING AND ENDORSEMENT COVER PAGE | | PAGE 1 OF 4 |
|---|---|---|
| **Document ID:** 2007020501353002 | Document Date: 01-24-2007 | Preparation Date: 04-26-2007 |
| Document Type: POWER OF ATTORNEY | | |
| Document Page Count: 3 | | |

| PRESENTER: | RETURN TO: |
|---|---|
| WINDMILL LAND SERVICES | BLUE WOODS MANAGMENT GROUP |
| 444 MERRICK ROAD | 307 SEVENTH AVE, APT. 604 |
| COMMONWEALTH LAND TITLE INS. CO. | NEW YORK, NY 10001 |
| LYNBROOK, NY 11563 | ATT. ARLENE MARIN |
| 516-256-1010 | |
| 340150-SONY / FF | |

**PROPERTY DATA**

| Borough | Block | Lot | | Unit | Address |
|---|---|---|---|---|---|
| MANHATTAN | 1515 | 1391 | Entire Lot | R20-F | 120 EAST 87TH STREET |

Property Type: SINGLE RESIDENTIAL CONDO UNIT

**CROSS REFERENCE DATA**

CRFN_____ *or* Document ID_____ *or* _____ Year____ Reel ___ Page _____ *or* File Number_____

**PARTIES**

| PARTY ONE: | PARTY TWO: |
|---|---|
| ZOYA KUZNETSOVA | THE PARK AVENUE CONDOMINIUM BOARD |
| 120 EAST 87TH STREET, UNIT R20F | 120 EAST 87TH STREET |
| NEW YORK, NY 10128 | NEW YORK, NY 10128 |

**FEES AND TAXES**

| Mortgage | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | | |
| TASF: | $ | 0.00 | | | |
| MTA: | $ | 0.00 | | | |
| NYCTA: | $ | 0.00 | | | |
| Additional MRT: | $ | 0.00 | | | |
| TOTAL: | $ | 0.00 | | | |
| Recording Fee: | $ | 52.00 | | | |
| Affidavit Fee: | $ | 0.00 | | | |

**RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK**

Recorded/Filed          05-01-2007 09:32
City Register File No.(CRFN):
          **2007000224638**

*Cnnette M Hill*

*City Register Official Signature*

Exhibit 5

People    Events    Tools    Newsletter            Join    Login

✉ Email Page

Report a problem with this image    Back to Person
Browse Gallery
3 of 41 Pictures

← prev    next →

Search...

🔍

FOLLOW US:    f  t  t

SIGN UP FOR OUR WEEKLY NEWSLETTER

email address    →

## Janna Bullock, Zoe Bullock-Remmel

12-18-2012 - FEED Bears Holiday Preview at J. McLaughlin

Suggest credits for this photo



**People Credits**
Janna Bullock, Photographed
Zoe Bullock-Remmel, Photographed
Amber De Vos, Photographer

Presented By:

Recent Photos

Loading...

Recent News

Speculation Mounts for Hugo Lindgren's
Successor (WWD 2013-11-22)
- mentions Deborah Needleman and Sam
Sifton

Giants know Romo can beat them if he plays
mistake-free  (The New York Post 2013-11-22)
- mentions Tony Romo and Super Bowl Rings

Ex-MSNBCer David Shuster Tweet-Shames
MSNBC for Silence on Bashir  (Mediaite 2013-
11-22)
- mentions Martin Bashir and Sarah Palin

Recent Events

2013-11-16  11th Annual Lupus LA Hollywood Bag
Ladies Luncheon
2013-11-14  Women Helping Women New York
2013
2013-11-13  2013 Stand Up for Gus Benefit
2013-11-11  ARCTA Live @ Otto's Shrunken Head
2013-11-08  Charlie Baltimore at Sister 2 Sister
25th Anniversary Party at Palms
Resort in Las Vegas, NV.
2013-11-08  Kita Williams at Sister 2 Sister 25th
Anniversary Party at Palms Resort in
Las Vegas, NV

Apps You Might Like

Search Apps    Search

Featured   Popular   Recommended

New York   PIX11 News   York County   New York   iRadio New
Post       - New York   Emergency   NY Local   York

New York   NBC New    New York   EASTER    Missing

Exhibit 6

AO 88A  (Rev. 06/09) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Southern District of New York

| | |
|---|---|
| In re App. of Gorsoan Ltd. and Gazprombank OJSC | ) |
| *Plaintiff* | ) |
| v. | )     Civil Action No. |
| | ) |
| | )     (If the action is pending in another district, state where: |
| *Defendant* | )                        ) |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:   Janna Bullock
      120 East 87th Street, New York, NY 10128

   ☑ *Testimony:*  **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization that is *not* a party in this case, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:
See the deposition topics on the attached Schedule A.

| Place: White & Case LLP | Date and Time: |
|---|---|
|         1155 Ave of the Americas | |
|         New York, NY 10036 | |

      The deposition will be recorded by this method:   <u>STENOGRAPHIC TRANSCRIPTION & VIDEOTAPED</u>

   ☑ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material:
See the documents requested on the attached Schedule A.

      The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date: _____

            *CLERK OF COURT*
                                 OR

       _____        _____
          *Signature of Clerk or Deputy Clerk*                   *Attorney's signature*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*     <u>Gorsoan Limited and</u> <u>Gazprombank OJSC</u> _____ , who issues or requests this subpoena, are:
Owen C. Pell (opell@whitecase.com) and Max Shterngel (mshterngel@whitecase.com),
White & Case LLP, 1155 Avenue of the Americas, New York, NY 10036.  Telephone: 212-819-8200

AO 88A  (Rev.  06/09) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

  ☐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

  ☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

          _____
               *Server's signature*

          _____
               *Printed name and title*

          _____
               *Server's address*

Additional information regarding attempted service, etc:

AO 88A  (Rev.  06/09) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information;

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

## SUBPOENA OF JANNA BULLOCK

### SCHEDULE A

### DEFINITIONS AND INSTRUCTIONS

1.     Whenever reference is made to a person or legal entity, it includes any and all of such person's or entity's past and present affiliates, officers, directors, agents, partners, servants, employees, attorneys, representatives, consultants, accountants, investigators predecessors, successors, assigns and/or any other person or entity acting on, or purporting to act on, its behalf.

2.     The term "you," "your," "Bullock," and any synonym thereof and derivatives therefrom means Janna Bullock.

3.     The terms "document" and "documents" mean any and all items referred to as "documents" in Fed. R. Civ. P. 34 and as "writings" and "recordings" in Rule 1001 of the Federal Rules of Evidence.  By way of example and without limitation, the terms "document" and "documents" include the original, all drafts, and all non-identical copies, regardless of origin or location, of the following: notes, correspondence, internal communications, telegrams, cables, telexes, e-mail, ledger books, contracts, statements, memoranda, summaries of records of conversations, diaries, reports, charts, tags, stickers, labels, cartons, boxes, art work, mockup labels, films, video tapes, audio tapes, phonograph records, compact disks, digital video disks, drawings, graphs, photographs, microfilm, minutes or records of meetings, reports and/or summaries of interviews or investigations, opinions and/or reports and/or studies of experts or consultants, agreements, reports and/or studies from County personnel, legislative, administrative and/or policy documents, including but not limited to, ordinances, resolutions, administrative orders or memoranda, notebooks, letters, advertisements, promotional literature, trade letters, press releases, proxy statements, prospectuses, stock certificates, books of account,

ledgers, invoices, financial statements, purchase orders, receipts, canceled checks and any other data compilations from which information can be obtained or translated through detection devices into usable form. The term "document" shall include data stored, maintained or organized electronically, magnetically or through the use of computer equipment (including back-up tapes), translated, if necessary, into reasonably usable form.

4.      "Communication" is used in its broadest sense and includes, but is not limited to, any oral or written transmittal of information or request for information made from one person to another, whether made in person, by telephone, email, or by any other means, or a document as defined above, made for the purpose of recording a communication, idea, statement, opinion, or belief.

5.      "Reflecting," "referring to," "relating to," and   "reflecting, referring and/or relating to," mean evidencing, discussing, defining, mentioning, pertaining to, consisting of, reflecting, concerning, recording, evaluating, or in any way logically or factually connected with the matter discussed or to which reference is made.

6.      "And" and "or" shall be construed in the conjunctive or disjunctive as necessary to bring within the scope of the Request all responses that might otherwise be construed as outside its scope.

7.      "Each" shall be construed to include the word "every" and "every" shall be construed to include the word "each."

8.      "Any" shall be construed to include the word "all" and "all" shall be construed to include the word "any."

9.      "Including" shall be construed to include the phrase "without limitation."

2

10.     "Person" means any natural person, corporation, partnership, company, sole proprietorship, association, institute, joint venture, firm, governmental body, or other legal entity, whether privately or publicly owned or controlled, for profit or not-for-profit, or partially or fully government owned or controlled.

11.     To the extent a request calls for the production of documents or things you contend are subject to a privilege or immunity from discovery, your written response to the request should so indicate, but you are requested to produce the balance of the documents or things not subject to a claim of privilege which fall within the scope of the request. Additionally, to the extent information subject to a privilege or immunity from discovery is contained within responsive documents or things, you are requested to produce a redacted version of the document or thing containing the non-privileged information with a notation on the produced document or thing indicating that it is being produced in redacted form.

12.     "Freezing and Disclosure Order" shall mean that order issued on March 6, 2013 by the District Court of Limassol in Cyprus in Action No. 3573/2012, with which you were personally served on April 24, 2013.

13.     For each document or thing requested that you object to producing on the basis of any privilege or immunity from discovery, please provide the following information:

        a.   The basis for the privilege being invoked;

        b.   The date of the document;

        c.   The title of the document (if any);

        d.   The name of the person(s) authoring the document;

        e.   The name of the person(s) to whom the document and/or any copies thereof were given or transmitted;

3

f.  The present location and custodian of the document, or any copies thereof; and

g.  The general subject matter dealt with in the document with reasonable specificity.

## ELECTRONIC DOCUMENTS

1.      Electronic Documents should be produced in a format that can be loaded into Summation 2.9. That format is: (1) single page tiff files at 300 dpi/group IV located in a folder directory and OCR/Extracted text for every page in .txt format and residing with the matching tiff image in the designated folder; (2) data file that has a field delimiter of □ (Character 124) and Text Delimiter ^ (Character 94) and contains all metadata and data fields including, but not limited to, DOCID, EndDoc#, Bates Attach First, Bates Attach Last, To, From, CC, BCC, Date Sent, time Sent, Doc Date, Custodian, File Name, Original File Path, Email Folder Path, Attach First, Attach Last, Native Link and File Type (e.g. email, attachment, edoc); accompanied by an @I .dii load file with NO @C information populated. The deliverable should also include native files for each edoc and attachment for which there is included in the data file a native link. Each electronic document should be identified by a unique number and part specific prefix.

## REQUESTED DOCUMENTS

1.      Documents sufficient to comply with paragraph 2 of the Freezing and Disclosure Order, by which you were ordered to provide information regarding your assets exceeding €10,000 in value anywhere in the world as of the date of your compliance with this subpoena (the "Assets"), including:

(i).    the specific location of the Assets;
(ii).   whether the Assets belong to you exclusively or jointly;
(iii).  whether the Assets are held in trust or through another form of ownership; and
(iv).   whether the Assets are held directly by you or indirectly through other natural or legal entities.

4

2.      Documents describing the location and nature of any and all Assets (as defined in Request No. 1 above) held under the following three trusts:

(i).    The Golden Venture Trust (or any renamed incarnation of said trust structure);
(ii).   The Purple Trust (or any renamed incarnation of said trust structure); and
(iii).  The Azul Trust (or any renamed incarnation of said trust structure).

3.      Documents relating to your financial, corporate, managerial and/or employment relationship (including any ownership and/or control, whether direct or indirect) with the following corporate entities between January 1, 2005 through to the date of your compliance with this subpoena:

(i).    RIGroup LLC;
(ii).   RIGroup Russia OOO; and
(iii).  IFC RIGroup Finance ZAO;

4.      Documents relating to your financial, corporate, managerial and/or employment relationship (including any ownership and/or control, whether direct or indirect) with the following entities, from January 1, 2005 through to the date of your compliance with this subpoena:

(i).    Laziar Holdings Limited;
(ii).   Nova Prova Engineering Limited;
(iii).  Nogion Holdings Limited;
(iv).   Nakoda Limited;
(v).    Alcork Limited;
(vi).   Kitnell Limited;
(vii).  Elmwood Ventures Limited;
(viii). Solferino Developments S.A.;
(ix).   SAS Société des Hôtels Pralong et Crystal 2000;
(x).    SARL Pralong;
(xi).   SARL Crystal;
(xii).  SCI Chateu Du Puy Robert;
(xiii). EURL Société d'Exploitation de l'Hôtel Château du Puy Robert; and
(xiv).  SAS Société des Hôtels d'Altitude.

5.      Documents relating to your financial, corporate, managerial and/or employment relationship (including any ownership and/or control, whether direct or indirect) with the following entities, from January 1, 2005 through to the date of your compliance with this subpoena:

(i).    Polintic Trading Limited;
(ii).   Trabol Holdings Ltd.;
(iii).  Monli Holdings Ltd.;
(iv).   Imperial Field Enterprises Ltd.;
(v).    Ammopia Management Limited;

5

| | |
|---|---|
| (vi). | Skeveor Enterprises Ltd.; |
| (vii). | Terminus Trading Limited; |
| (viii). | Menetes Enterprises Limited; |
| (ix). | Hosbern Finance Limited; |
| (x). | Adminico Nominees Limited; |
| (xi). | Maicon Investments Limited; |
| (xii). | Vixenbeidge Limited; |
| (xiii). | Jarment Investments Limited (or Jarmen Investments Limited); |
| (xiv). | Rution Management Limited; |
| (xv). | Southwark Overseas Limited; |
| (xvi). | Danfold Holdings Limited; |
| (xvii). | Jaze Art Foundation Inc. |
| (xviii). | 54 East 64th Street LLC; |
| (xix). | 9 East 67th Street Realty LLC; |
| (xx). | Malfort Business Inc.; |
| (xxi). | Hotrast Consulting Limited; |
| (xxii). | Barnsdale Intenational Limited; |
| (xxiii). | Leiko S.A.; |
| (xxiv). | Napton Investments Limited; |
| (xxv). | Lahugral Limited; |
| (xxvi). | Lysanflor Limited; |
| (xxvii). | Celederia Investments Limited; |
| (xxviii). | Gaildorf Limited; |
| (xxix). | Linden Investments Limited; |
| (xxx). | The Westbury Fund Limited; |
| (xxxi). | Flodemer International Limited; |
| (xxxii). | Vartberg Limited; |
| (xxxiii). | Trot Trading Limited; |
| (xxxiv). | Perla Developments Limited; |
| (xxxv). | Topola Investments Limited; |
| (xxxvi). | Royal Winner Trading Limied; |
| (xxxvii). | Morris Invest Group Limited; |
| (xxxviii). | WestLogistics B.V.;  and |
| (xxxix). | Retrex International Limited. |

6.    Documents relating to your knowledge of and/or involvment in the issuance of bonds, and the investment of the proceeds of the bonds, by the following entities at any time:

| | |
|---|---|
| (i). | Mortgage Company of the Moscow Region OAO (or "IKMO"); |
| (ii). | Moscow Region Mortgage Agency OAO (or "MOIA"); and |
| (iii). | Moscow Region Investment Mortgage Company OAO (or "MOITK"). |

7.    Documents reflecting your non-privileged Communications with the following Persons (as that term is defined in paragraph 10 above) relating to any of the matters referenced in Request Nos. 1-6 above, from January 1, 2005 through to the date of your compliance with this subpoena:

6

(i).     Alexey Kuznetsov;
(ii).    Liudmila Bezdel;
(iii).   Dmitry Kotlyarenko;
(iv).    Valery Nosov;
(v).     Stuart A. Smith;
(vi).    Zoe Bullock Remmel (a.k.a. Zoya Kuznetsova);
(vii).   C.P. Palema Limited;
(viii).  C.P. Palema Services Limited;
(ix).    Cyproman Services Limited;
(x).     Charambos Papas, a.k.a. Pampos Papas;
(xi).    Zoulian Management Limited;
(xii).   Zoulian Limited;
(xiii).  Eleni Kinani;
(xiv).   Maria Atzini;
(xv).    Gianna Antoniou;
(xvi).   Afroditi Dimitriou;
(xvii).  Georgia Michail;
(xviii). Christiana Christou;
(xix).   Panikos Symeou;
(xx).    Cyprus Popular Bank Public Co Limited; and
(xxi).   Hellenic Bank Public Company Limited.


## DEPOSITION TOPICS

1.     Your knowledge of or participation in bond issuances, or the investment of the proceeds of the bonds, by IKMO or MOIA or MOITK.

2.     Your financial, corporate, managerial and/or employment relationship with any of the Persons or entities listed in Requests Nos. 2, 3, 4 and 5 above.

3.     Your involvement, if any, with Solferino Developments S.A. and/or its Board.

4.     Information about your Assets as requested in Request Nos. 1 and 2 above.

7

# Exhibit 7

AO 88B (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### District of Delaware

| | |
|---|---|
| In re App. of Gorsoan Ltd. and Gazprombank OJSC | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No. |
| | ) |
| | ) (If the action is pending in another district, state where: |
| *Defendant* | ) Southern District of New York          ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:  RIGroup LLC
     c/o The Corporation Trust Company, Registered Agent, 1201 Orange Street, Wilmington, DE 19801

    ☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material: See the documents requested on the attached Schedule A.  In lieu of personally appearing, you may have the responsive documents delivered to the located listed below on or before the date and time listed below.

| Place: White & Case LLP<br>1155 Avenue of the Americas<br>New York, NY 10036 | Date and Time: |
|---|---|
| | |

    ☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

    The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date: _____

               *CLERK OF COURT*
                                             OR

_____      _____
    *Signature of Clerk or Deputy Clerk*                     *Attorney's signature*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*     Gorsoan Limited and
Gazprombank OJSC _____ , who issues or requests this subpoena, are:

Owen C. Pell (opell@whitecase.com) and Max Shterngel (mshterngel@whitecase.com),
White & Case LLP, 1155 Avenue of the Americas, New York, NY 10036.  Telephone: 212-819-8200

AO 88B  (Rev.  06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. _____

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 88B  (Rev.  06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information;

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

## SUBPOENA OF RIGroup LLC

### SCHEDULE A

### DEFINITIONS AND INSTRUCTIONS

1.     Whenever reference is made to a person or legal entity, it includes any and all of such person's or entity's past and present affiliates, officers, directors, agents, partners, servants, employees, attorneys, representatives, consultants, accountants, investigators predecessors, successors, assigns and/or any other person or entity acting on, or purporting to act on, its behalf.

2.     The term "you," "your," "RIGroup LLC," "RIG LLC" and any synonym thereof and derivatives therefrom means RIGroup LLC.

3.     The terms "document" and "documents" mean any and all items referred to as "documents" in Fed. R. Civ. P. 34 and as "writings" and "recordings" in Rule 1001 of the Federal Rules of Evidence.  By way of example and without limitation, the terms "document" and "documents" include the original, all drafts, and all non-identical copies, regardless of origin or location, of the following: notes, correspondence, internal communications, telegrams, cables, telexes, e-mail, ledger books, contracts, statements, memoranda, summaries of records of conversations, diaries, reports, charts, tags, stickers, labels, cartons, boxes, art work, mockup labels, films, video tapes, audio tapes, phonograph records, compact disks, digital video disks, drawings, graphs, photographs, microfilm, minutes or records of meetings, reports and/or summaries of interviews or investigations, opinions and/or reports and/or studies of experts or consultants, agreements, reports and/or studies from County personnel, legislative, administrative and/or policy documents, including but not limited to, ordinances, resolutions, administrative orders or memoranda, notebooks, letters, advertisements, promotional literature, trade letters, press releases, proxy statements, prospectuses, stock certificates, books of account,

ledgers, invoices, financial statements, purchase orders, receipts, canceled checks and any other data compilations from which information can be obtained or translated through detection devices into usable form. The term "document" shall include data stored, maintained or organized electronically, magnetically or through the use of computer equipment (including back-up tapes), translated, if necessary, into reasonably usable form.

4.    "Communication" is used in its broadest sense and includes, but is not limited to, any oral or written transmittal of information or request for information made from one person to another, whether made in person, by telephone, email, or by any other means, or a document as defined above, made for the purpose of recording a communication, idea, statement, opinion, or belief.

5.    "Reflecting," "referring to," "relating to," and   "reflecting, referring and/or relating to," mean evidencing, discussing, defining, mentioning, pertaining to, consisting of, reflecting, concerning, recording, evaluating, or in any way logically or factually connected with the matter discussed or to which reference is made.

6.    "And" and "or" shall be construed in the conjunctive or disjunctive as necessary to bring within the scope of the Request all responses that might otherwise be construed as outside its scope.

7.    "Each" shall be construed to include the word "every" and "every" shall be construed to include the word "each."

8.    "Any" shall be construed to include the word "all" and "all" shall be construed to include the word "any."

9.    "Including" shall be construed to include the phrase "without limitation."

2

10.    "Person" means any natural person, corporation, partnership, company, sole proprietorship, association, institute, joint venture, firm, governmental body, or other legal entity, whether privately or publicly owned or controlled, for profit or not-for-profit, or partially or fully government owned or controlled.

11.    To the extent a request calls for the production of documents or things you contend are subject to a privilege or immunity from discovery, your written response to the request should so indicate, but you are requested to produce the balance of the documents or things not subject to a claim of privilege which fall within the scope of the request. Additionally, to the extent information subject to a privilege or immunity from discovery is contained within responsive documents or things, you are requested to produce a redacted version of the document or thing containing the non-privileged information with a notation on the produced document or thing indicating that it is being produced in redacted form.

12.    For each document or thing requested that you object to producing on the basis of any privilege or immunity from discovery, please provide the following information:

      a.  The basis for the privilege being invoked;

      b.  The date of the document;

      c.  The title of the document (if any);

      d.  The name of the person(s) authoring the document;

      e.  The name of the person(s) to whom the document and/or any copies thereof were given or transmitted;

      f.  The present location and custodian of the document, or any copies thereof; and

      g.  The general subject matter dealt with in the document with reasonable specificity.

3

## ELECTRONIC DOCUMENTS

1.      Electronic Documents should be produced in a format that can be loaded into Summation 2.9.  That format is: (1) single page tiff files at 300 dpi/group IV located in a folder directory and OCR/Extracted text for every page in .txt format and residing with the matching tiff image in the designated folder; (2) data file that has a field delimiter of □ (Character 124) and Text Delimiter ^ (Character 94) and contains all metadata and data fields including, but not limited to, DOCID, EndDoc#, Bates Attach First, Bates Attach Last, To, From, CC, BCC, Date Sent, time Sent, Doc Date, Custodian, File Name, Original File Path, Email Folder Path, Attach First, Attach Last, Native Link and File Type (e.g. email, attachment, edoc); accompanied by an @I .dii load file with NO @C information populated.  The deliverable should also include native files for each edoc and attachment for which there is included in the data file a native link.  Each electronic document should be identified by a unique number and part specific prefix.

## REQUESTED DOCUMENTS

1.      The articles of incorporation, by-laws, minutes, board materials, and resolutions of RIG LLC, including any amendments thereto.

2.      A chart of or documents sufficient to show the corporate parents, subsidiaries, and any affiliates of RIG LLC, both at the time of incorporation and presently.

3.      Documents showing how RIG LLC was and has been capitalized during the period from incorporation to the present.

4.      Documents relating to RIG LLC's relationship (including any ownership and/or control, whether direct or indirect) with the following corporate entities between January 1, 2005 through to the date of your compliance with this subpoena:

    (i).      RIGroup Russia OOO; and
    (ii).     IFC RIGroup Finance ZAO;

5.      Documents relating to RIG LLC's relationship (including any ownership and/or control, whether direct or indirect) with the following entities, from January 1, 2005 through to the date of your compliance with this subpoena:

4

    (i).     Laziar Holdings Limited;
    (ii).    Nova Prova Engineering Limited;
   (iii).    Nogion Holdings Limited;
   (iv).    Nakoda Limited;
    (v).    Alcork Limited;
   (vi).    Kitnell Limited;
  (vii).    Elmwood Ventures Limited;
 (viii).    Solferino Developments S.A.;
   (ix).    SAS Société des Hôtels Pralong et Crystal 2000;
    (x).    SARL Pralong;
   (xi).    SARL Crystal;
  (xii).    SCI Chateu Du Puy Robert;
 (xiii).    EURL Société d'Exploitation de l'Hôtel Château du Puy Robert; and
 (xiv).    SAS Société des Hôtels d'Altitude.

6.    Documents relating to RIG LLC's relationship (including any ownership and/or control, whether direct or indirect) with the following entities, from January 1, 2005 through to the date of your compliance with this subpoena:

    (i).     The Golden Venture Trust;
    (ii).    The Purple Trust;
   (iii).    The Azul Trust;
   (iv).    Polintic Trading Limited;
    (v).    Trabol Holdings Ltd.;
   (vi).    Monli Holdings Ltd.;
  (vii).    Imperial Field Enterprises Ltd.;
 (viii).    Ammopia Management Limited;
   (ix).    Skeveor Enterprises Ltd.;
    (x).    Terminus Trading Limited;
   (xi).    Menetes Enterprises Limited;
  (xii).    Hosbern Finance Limited;
 (xiii).    Adminico Nominees Limited;
 (xiv).    Maicon Investments Limited;
  (xv).    Vixenbeidge Limited;
 (xvi).    Jarment Investments Limited (or Jarmen Investments Limited);
 (xvii).    Rution Management Limited;
(xviii).    Southwark Overseas Limited;
 (xix).    Danfold Holdings Limited;
  (xx).    Jaze Art Foundation Inc.
 (xxi).    54 East 64th Street LLC;
 (xxii).    9 East 67th Street Realty LLC;
(xxiii).    Malfort Business Inc.;
(xxiv).    Hotrast Consulting Limited;
 (xxv).    Barnsdale Intenational Limited;
(xxvi).    Leiko S.A.;
(xxvii).    Napton Investments Limited;

5

(xxviii).   Lahugral Limited;
(xxix).   Lysanflor Limited;
(xxx).   Celederia Investments Limited;
(xxxi).   Gaildorf Limited;
(xxxii).   Linden Investments Limited;
(xxxiii).   The Westbury Fund Limited;
(xxxiv).   Flodemer International Limited;
(xxxv).   Vartberg Limited;
(xxxvi).   Trot Trading Limited;
(xxxvii).   Perla Developments Limited;
(xxxviii).   Topola Investments Limited;
(xxxix).   Royal Winner Trading Limied;
(xl).   Morris Invest Group Limited;
(xli).   WestLogistics B.V.;  and
(xlii).   Retrex International Limited.

7.   Documents relating to RIG LLC's knowledge of and/or involvment in the issuance of bonds, and the investment of the proceeds of the bonds, by the following entities at any time:

(i).   Mortgage Company of the Moscow Region OAO (or "IKMO");
(ii).   Moscow Region Mortgage Agency OAO (or "MOIA"); and
(iii).   Moscow Region Investment Mortgage Company OAO (or "MOITK").

8.   Documents reflecting RIG LLC's non-privileged Communications with the following Persons (as that term is defined in paragraph 10 above) relating to any of the matters referenced in Request Nos. 1-7 above, from January 1, 2005 through to the date of your compliance with this subpoena:

(i).   Janna Bullock;
(ii).   Alexey Kuznetsov;
(iii).   Liudmila Bezdel;
(iv).   Dmitry Kotlyarenko;
(v).   Valery Nosov;
(vi).   Stuart A. Smith;
(vii).   Zoe Bullock Remmel (a.k.a. Zoya Kuznetsova);
(viii).   C.P. Palema Limited;
(ix).   C.P. Palema Services Limited;
(x).   Cyproman Services Limited;
(xi).   Charambos Papas, a.k.a. Pampos Papas;
(xii).   Zoulian Management Limited;
(xiii).   Zoulian Limited;
(xiv).   Eleni Kinani;
(xv).   Maria Atzini;
(xvi).   Gianna Antoniou;
(xvii).   Afroditi Dimitriou;

6

(xviii).    Georgia Michail;

(xix).    Christiana Christou;

(xx).    Panikos Symeou;

(xxi).    Cyprus Popular Bank Public Co Limited; and

(xxii).    Hellenic Bank Public Company Limited.

7

# Exhibit 8

AO 88A  (Rev. 06/09) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Southern District of New York

| | |
|---|---|
| In re App. of Gorsoan Ltd. and Gazprombank OJSC | ) |
| _____ | ) |
| *Plaintiff* | ) |
| v. | )   Civil Action No. |
| | ) |
| _____ | )   (If the action is pending in another district, state where: |
| *Defendant* | )                                                  ) |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:  Stuart Alan Smith
     425 Park Avenue, 27th Floor, New York, NY 10022

☑ *Testimony:*  **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action.  If you are an organization that is *not* a party in this case, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:
See the deposition topics on the attached Schedule A.

| Place: White & Case LLP | Date and Time: |
|---|---|
| 1155 Ave of the Americas | |
| New York, NY 10036 | |

The deposition will be recorded by this method:   _STENOGRAPHIC TRANSCRIPTION & VIDEOTAPED_

☑ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material:
See the documents requested on the attached Schedule A.

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:  _____

           *CLERK OF COURT*
                                                          OR

      _____          _____
        *Signature of Clerk or Deputy Clerk*                    *Attorney's signature*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*    _Gorsoan Limited and_
_Gazprombank OJSC_____ , who issues or requests this subpoena, are:
Owen C. Pell (opell@whitecase.com) and Max Shterngel (mshterngel@whitecase.com),
White & Case LLP, 1155 Avenue of the Americas, New York, NY 10036.  Telephone: 212-819-8200

AO 88A  (Rev.  06/09) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❑ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

❑ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 88A (Rev. 06/09) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information;

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

## SUBPOENA OF STUART ALAN SMITH

### SCHEDULE A

### DEFINITIONS AND INSTRUCTIONS

1.       Whenever reference is made to a person or legal entity, it includes any and all of such person's or entity's past and present affiliates, officers, directors, agents, partners, servants, employees, attorneys, representatives, consultants, accountants, investigators predecessors, successors, assigns and/or any other person or entity acting on, or purporting to act on, its behalf.

2.       The term "you," "your," "Stuart Smith," "Stuart A. Smith," "Smith," and any synonym thereof and derivatives therefrom means Stuart Alan Smith.

3.       The terms "document" and "documents" mean any and all items referred to as "documents" in Fed. R. Civ. P. 34 and as "writings" and "recordings" in Rule 1001 of the Federal Rules of Evidence.  By way of example and without limitation, the terms "document" and "documents" include the original, all drafts, and all non-identical copies, regardless of origin or location, of the following: notes, correspondence, internal communications, telegrams, cables, telexes, e-mail, ledger books, contracts, statements, memoranda, summaries of records of conversations, diaries, reports, charts, tags, stickers, labels, cartons, boxes, art work, mockup labels, films, video tapes, audio tapes, phonograph records, compact disks, digital video disks, drawings, graphs, photographs, microfilm, minutes or records of meetings, reports and/or summaries of interviews or investigations, opinions and/or reports and/or studies of experts or consultants, agreements, reports and/or studies from County personnel, legislative, administrative and/or policy documents, including but not limited to, ordinances, resolutions, administrative orders or memoranda, notebooks, letters, advertisements, promotional literature, trade letters, press releases, proxy statements, prospectuses, stock certificates, books of account,

ledgers, invoices, financial statements, purchase orders, receipts, canceled checks and any other data compilations from which information can be obtained or translated through detection devices into usable form. The term "document" shall include data stored, maintained or organized electronically, magnetically or through the use of computer equipment (including back-up tapes), translated, if necessary, into reasonably usable form.

4.      "Communication" is used in its broadest sense and includes, but is not limited to, any oral or written transmittal of information or request for information made from one person to another, whether made in person, by telephone, email, or by any other means, or a document as defined above, made for the purpose of recording a communication, idea, statement, opinion, or belief.

5.      "Reflecting," "referring to," "relating to," and "reflecting, referring and/or relating to," mean evidencing, discussing, defining, mentioning, pertaining to, consisting of, reflecting, concerning, recording, evaluating, or in any way logically or factually connected with the matter discussed or to which reference is made.

6.      "And" and "or" shall be construed in the conjunctive or disjunctive as necessary to bring within the scope of the Request all responses that might otherwise be construed as outside its scope.

7.      "Each" shall be construed to include the word "every" and "every" shall be construed to include the word "each."

8.      "Any" shall be construed to include the word "all" and "all" shall be construed to include the word "any."

9.      "Including" shall be construed to include the phrase "without limitation."

2

10. "Person" means any natural person, corporation, partnership, company, sole proprietorship, association, institute, joint venture, firm, governmental body, or other legal entity, whether privately or publicly owned or controlled, for profit or not-for-profit, or partially or fully government owned or controlled.

11. To the extent a request calls for the production of documents or things you contend are subject to a privilege or immunity from discovery, your written response to the request should so indicate, but you are requested to produce the balance of the documents or things not subject to a claim of privilege which fall within the scope of the request. Additionally, to the extent information subject to a privilege or immunity from discovery is contained within responsive documents or things, you are requested to produce a redacted version of the document or thing containing the non-privileged information with a notation on the produced document or thing indicating that it is being produced in redacted form.

12. For each document or thing requested that you object to producing on the basis of any privilege or immunity from discovery, please provide the following information:

    a.  The basis for the privilege being invoked;

    b.  The date of the document;

    c.  The title of the document (if any);

    d.  The name of the person(s) authoring the document;

    e.  The name of the person(s) to whom the document and/or any copies thereof were given or transmitted;

    f.  The present location and custodian of the document, or any copies thereof; and

    g.  The general subject matter dealt with in the document with reasonable specificity.

## ELECTRONIC DOCUMENTS

1.      Electronic Documents should be produced in a format that can be loaded into Summation 2.9.  That format is: (1) single page tiff files at 300 dpi/group IV located in a folder directory and OCR/Extracted text for every page in .txt format and residing with the matching tiff image in the designated folder; (2) data file that has a field delimiter of □ (Character 124) and Text Delimiter ^ (Character 94) and contains all metadata and data fields including, but not limited to, DOCID, EndDoc#, Bates Attach First, Bates Attach Last, To, From, CC, BCC, Date Sent, time Sent, Doc Date, Custodian, File Name, Original File Path, Email Folder Path, Attach First, Attach Last, Native Link and File Type (e.g. email, attachment, edoc); accompanied by an @I .dii load file with NO @C information populated.  The deliverable should also include native files for each edoc and attachment for which there is included in the data file a native link.  Each electronic document should be identified by a unique number and part specific prefix.

## REQUESTED DOCUMENTS

1.      Documents reflecting your knowledge of or involvement in the activities of Solferino Developments S.A. ("Solferino"), including but not limited to your service on the Board or "conseil d'admistration" of Solferino.

2.      Documents reflecting your Communications with the following Persons regarding Solferino:

(i).     Janna Bullock;
(ii).    Zoe Bullock Remmel (a.k.a. Zoya Kuznetsova); and
(iii).   Alexey Kuznetsov.

3.      Documents relating to your financial, corporate, managerial, professional or employment relationship (including any ownership and/or control, whether direct or indirect), if any, with the following entities, from January 1, 2005 through to the date of your compliance with this subpoena:

(i).     RIGroup LLC ("RIG LLC");
(ii).    RIGroup Russia OOO ("RIG Russia");
(iii).   IFC RIGroup Finance ZAO ("RIG Finance"); and
(iv).    Laziar Holdings Limited ("Laziar").

4

4.      Non-privileged Documents relating to your involvement in an arbitration proceeding between RIG LLC and Laziar, and a subsequent CPLR Article 75 proceeding in New York state court concerning, inter alia, RIG Russia and the acquisition of French hotels (the "RIG-Laziar Arbitration").

## DEPOSITION TOPICS

1.      Your involvement, if any, with Solferino and/or its Board or "conseil d'admistration" and any Communications  you have had with Janna Bullock or Zoe Bullock Remmel (a.k.a. Zoya Kuznetsova) or Alexey Kuznetsov regarding same.

2.      Your involvement in the RIG-Laziar Arbitration.

5

Exhibit 9

AO 88A  (Rev. 06/09) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

### for the

### Southern District of New York

| | |
|---|---|
| In re App. of Gorsoan Ltd. and Gazprombank OJSC | ) |
| _Plaintiff_ | ) |
| v. | )    Civil Action No. |
| | ) |
| | )    (If the action is pending in another district, state where: |
| _Defendant_ | )                                                ) |

### SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:  Zoe Bullock Remmel
     120 East 87th Street, New York, NY 10128

✔ _Testimony:_ **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization that is _not_ a party in this case, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:
See the deposition topics on the attached Schedule A.

| Place: White & Case LLP | Date and Time: |
|---|---|
| 1155 Ave of the Americas<br>New York, NY 10036 | |

The deposition will be recorded by this method:   STENOGRAPHIC TRANSCRIPTION & VIDEOTAPED

✔ _Production:_ You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material:
See the documents requested on the attached Schedule A.

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:  _____

                    _CLERK OF COURT_
                                           OR

        _____                    _____
        _Signature of Clerk or Deputy Clerk_                    _Attorney's signature_

The name, address, e-mail, and telephone number of the attorney representing _(name of party)_    Gorsoan Limited and
Gazprombank OJSC                                          , who issues or requests this subpoena, are:
Owen C. Pell (opell@whitecase.com) and Max Shterngel (mshterngel@whitecase.com),
White & Case LLP, 1155 Avenue of the Americas, New York, NY 10036.  Telephone: 212-819-8200

AO 88A  (Rev.  06/09) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❑ I served the subpoena by delivering a copy to the named individual as follows: _____

_____

_____ on *(date)* _____ ; or

❑ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 88A  (Rev. 06/09) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*

**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

**(i)** At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

**(A)** *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

**(i)** fails to allow a reasonable time to comply;

**(ii)** requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

**(iv)** subjects a person to undue burden.

**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

**(i)** disclosing a trade secret or other confidential research, development, or commercial information;

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

**(iii)** a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*

**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

**(i)** expressly make the claim; and

**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

## SUBPOENA OF ZOE BULLOCK REMMEL

## SCHEDULE A

## DEFINITIONS AND INSTRUCTIONS

1.      Whenever reference is made to a person or legal entity, it includes any and all of such person's or entity's past and present affiliates, officers, directors, agents, partners, servants, employees, attorneys, representatives, consultants, accountants, investigators predecessors, successors, assigns and/or any other person or entity acting on, or purporting to act on, its behalf.

2.      The term "you," "your," "Zoe Remmel," "Zoe Bullock" "Zoya Kuznetsova," "Zoya Kouznetsova," "Zoya Bullock," and any synonym thereof and derivatives therefrom means Zoe Bullock Remmel.

3.      The terms "document" and "documents" mean any and all items referred to as "documents" in Fed. R. Civ. P. 34 and as "writings" and "recordings" in Rule 1001 of the Federal Rules of Evidence.  By way of example and without limitation, the terms "document" and "documents" include the original, all drafts, and all non-identical copies, regardless of origin or location, of the following: notes, correspondence, internal communications, telegrams, cables, telexes, e-mail, ledger books, contracts, statements, memoranda, summaries of records of conversations, diaries, reports, charts, tags, stickers, labels, cartons, boxes, art work, mockup labels, films, video tapes, audio tapes, phonograph records, compact disks, digital video disks, drawings, graphs, photographs, microfilm, minutes or records of meetings, reports and/or summaries of interviews or investigations, opinions and/or reports and/or studies of experts or consultants, agreements, reports and/or studies from County personnel, legislative, administrative and/or policy documents, including but not limited to, ordinances, resolutions, administrative orders or memoranda, notebooks, letters, advertisements, promotional literature,

trade letters, press releases, proxy statements, prospectuses, stock certificates, books of account, ledgers, invoices, financial statements, purchase orders, receipts, canceled checks and any other data compilations from which information can be obtained or translated through detection devices into usable form.   The term "document" shall include data stored, maintained or organized electronically, magnetically or through the use of computer equipment (including back-up tapes), translated, if necessary, into reasonably usable form.

4.      "Communication" is used in its broadest sense and includes, but is not limited to, any oral or written transmittal of information or request for information made from one person to another, whether made in person, by telephone, email, or by any other means, or a document as defined above, made for the purpose of recording a communication, idea, statement, opinion, or belief.

5.      "Reflecting," "referring to," "relating to," and   "reflecting, referring and/or relating to," mean evidencing, discussing, defining, mentioning, pertaining to, consisting of, reflecting, concerning, recording, evaluating, or in any way logically or factually connected with the matter discussed or to which reference is made.

6.      "And" and "or" shall be construed in the conjunctive or disjunctive as necessary to bring within the scope of the Request all responses that might otherwise be construed as outside its scope.

7.      "Each" shall be construed to include the word "every" and "every" shall be construed to include the word "each."

8.      "Any" shall be construed to include the word "all" and "all" shall be construed to include the word "any."

9.      "Including" shall be construed to include the phrase "without limitation."

2

10.    "Person" means any natural person, corporation, partnership, company, sole proprietorship, association, institute, joint venture, firm, governmental body, or other legal entity, whether privately or publicly owned or controlled, for profit or not-for-profit, or partially or fully government owned or controlled.

11.    To the extent a request calls for the production of documents or things you contend are subject to a privilege or immunity from discovery, your written response to the request should so indicate, but you are requested to produce the balance of the documents or things not subject to a claim of privilege which fall within the scope of the request.  Additionally, to the extent information subject to a privilege or immunity from discovery is contained within responsive documents or things, you are requested to produce a redacted version of the document or thing containing the non-privileged information with a notation on the produced document or thing indicating that it is being produced in redacted form.

12.    For each document or thing requested that you object to producing on the basis of any privilege or immunity from discovery, please provide the following information:

        a.   The basis for the privilege being invoked;

        b.   The date of the document;

        c.   The title of the document (if any);

        d.   The name of the person(s) authoring the document;

        e.   The name of the person(s) to whom the document and/or any copies thereof were given or transmitted;

        f.   The present location and custodian of the document, or any copies thereof; and

        g.   The general subject matter dealt with in the document with reasonable specificity.

3

## ELECTRONIC DOCUMENTS

1.      Electronic Documents should be produced in a format that can be loaded into Summation 2.9.  That format is: (1) single page tiff files at 300 dpi/group IV located in a folder directory and OCR/Extracted text for every page in .txt format and residing with the matching tiff image in the designated folder; (2) data file that has a field delimiter of □ (Character 124) and Text Delimiter ^ (Character 94) and contains all metadata and data fields including, but not limited to, DOCID, EndDoc#, Bates Attach First, Bates Attach Last, To, From, CC, BCC, Date Sent, time Sent, Doc Date, Custodian, File Name, Original File Path, Email Folder Path, Attach First, Attach Last, Native Link and File Type (e.g. email, attachment, edoc); accompanied by an @I .dii load file with NO @C information populated.  The deliverable should also include native files for each edoc and attachment for which there is included in the data file a native link.  Each electronic document should be identified by a unique number and part specific prefix.

## REQUESTED DOCUMENTS

1.      Documents reflecting your knowledge of or involvement in the activities of Solferino Developments S.A. ("Solferino"), including but not limited to your service on the Board or "conseil d'admistration" of Solferino.

2.      Documents reflecting your Communications with the following Persons regarding Solferino:

    (i).     Janna Bullock;
    (ii).    Stuart Alan Smith; and
    (iii).   Alexey Kuznetsov.

## DEPOSITION TOPICS

1.      Your involvement, if any, with Solferino and/or its Board or "conseil d'admistration" and any Communications you have had with Janna Bullock or Stuart Alan Smith or Alexey Kuznetsov regarding same.