UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

**13 MISC 0397**

In re Application of GORSOAN LIMITED and ) Case No.
GAZPROMBANK OJSC for an Order Pursuant ) ECF CASE
to 28 U.S.C. § 1782 to Conduct Discovery for )
Use in a Foreign Proceeding, )
)
Petitioners. )
_____ )



## DECLARATION OF ALEXANDROS TSIRIDES IN SUPPORT OF APPLICATION FOR DISCOVERY PURSUANT TO 28 U.S.C. § 1782

I, Alexandros Tsirides, of office 203, Panayides Building, Griva Digheni Avenue, Limassol, Cyprus say as follows:

1. I am a lawyer and the Managing Director of Costas Tsirides & Co. LLC, a law firm regulated by the Cyprus Bar Association, at the above address and am providing this declaration (the "**Declaration**") on behalf of Gorsoan Limited ("**Gorsoan**") and Gazprombank OJSC ("**GPB**"). A copy of my curriculum vitae is attached to this Declaration as **Exhibit 1**.

2. I make this Declaration in connection with the application by Gorsoan and GPB to the U.S. District Court for the Southern District of New York under 28 U.S.C. § 1782 (the "**Section 1782 Application**") for evidence for use in a foreign proceeding in the District Court of Limassol (the "**Cypriot Court**") in Cyprus (the "**Cyprus Proceeding**").

3. I represent the Plaintiffs in the Cyprus Proceeding. This Declaration endeavours to describe the relief being sought by the Plaintiffs in the Cyprus Proceeding, and to state relevant Cypriot law as I understand it to be. Insofar as the content of this Declaration is within my personal knowledge, it is true. Insofar as it is not within my personal knowledge, it is true to the best of my knowledge, information and belief.

1



**The Parties in the Cyprus Proceedings**

4. The Plaintiffs in the Cyprus Proceeding are Gorsoan and GPB. GPB is a Russian bank and Gorsoan is a Cyprus limited liability company.

5. The Cyprus Proceeding was filed in August 2012 in the District Court of Limassol with case number 3573/2012 against Janna Bullock ("**Bullock**"), her ex-husband Alexey Kuznetsov ("**Kuznetsov**") and 28 other defendants. The Cyprus Proceeding is a civil suit in which Gorsoan and GPB are claiming from Bullock and others approximately US$22,000,000 in damages for fraud.

6. I attach as **Exhibit 2** a copy of the Writ of Summons ("**Summons**") in the Cyprus Proceeding filed on 3 August 2012, in the Greek language together with a translation into English performed by me. Appendix A to the Summons lists all of the defendants besides Bullock, numbered (2) to (30).

7. Defendants (2) to (15) listed in the Summons are alleged to be the co-conspirators in Bullock's fraud. Defendants (16) to (30) have been included for the purposes of obtaining third-party discovery, known in Cyprus (and in the United Kingdom) as *Norwich Pharmacal* relief. The claims against Defendant (6) have been withdrawn as it became known that Defendant (6) was a service provider company controlled and/or owned by Defendants (16) to (19).

8. Defendant (10) is Solferino Development S.A. ("**Solferino**"), a Luxembourg corporation.

**Claims made by Gorsoan and GPB in the Cyprus Proceeding**

9. Paragraph 1 of the Summons states that the Plaintiffs claim from Defendants (1)-(15):

    *"...the amount of US$20,967,324, alternatively EUR16,947,384 as damages for fraud, conspiracy to defraud, defrauding creditors, unlawful means conspiracy, procuring breach of contract, unlawful interference, causing damage by unlawful means, dishonest assistance in breach of trust or fiduciary duty"*

2



Paragraph 3 of the Summons seeks interest on all amounts found to be due.

10. In the Cyprus Proceeding, Gorsoan and GPB seek from Defendants (16)-(30) discovery and production of documents. No damages claims are advanced against Defendants (16)-(30). In particular, paragraph 2 of the Summons states that the Plaintiffs claim,

*"Against Defendants 16 – 30, orders to (a) produce an information disclosure affidavit, and/or (b) deliver copies of the documents under their possession, power or control (including, without restriction, the documents under the possession control or power of their employees), relating to:*

*Defendants 1 – 15,*

*Defendants' 1 – 15 associates, and/or co-offenders in the torts committed by Defendants 1 – 15, including, without restriction, Mr. Dmitry Kotlyarenko, and Mr. Valery Nosov,*

*the beneficiaries, directors, officers, representatives, and/or owners of the Defendants 1 – 15, and of their co-offenders."*

**The Worldwide Freezing Order**

11. On 10 August 2012, Gorsoan and GPB filed an ex parte application (the "**Freezing and Disclosure Application**") seeking interim orders as follows:

   10.1   an order freezing all the assets of Defendants (1) to (15) (including Bullock) anywhere in the world up to the value of US$26.344.765,

   10.2   an order that Defendants (1) to (15) disclose by affidavit all of their assets exceeding €10.000,00 in value and attaching supporting documents,

   10.3   orders upon Defendants (16) to (30) to disclose (and produce) documents that are in their possession and are related to Defendants (1) to (15) or that are related to companies owned or controlled directly or indirectly by Defendants (1) to (15).

12. On 14 August 2012, the District Court of Limassol issued worldwide freezing orders (each an "**Interim Freezing Order**") against Defendants (1) to (15) as requested by



Gorsoan and GPB in the Freezing and Disclosure Application. I attach as **Exhibit 3** a copy of the Interim Freezing Order in the Greek language together with an English translation that I have performed.

13. Regarding the disclosure orders requested by Gorsoan and GPB, the court decided that it was not necessary to issue them *ex parte* and reserved its position to reconsider them at an *inter partes* hearing.

14. On 16 August 2012, the District Court of Limassol granted Gorsoan and GPB permission to serve all the material court documents then filed in the Cyprus Proceeding (including the Summons, the Freezing and Disclosure Application, and the Interim Freezing Order) on all foreign defendants outside of Cyprus. Service of the Interim Freezing Order on Bullock was effected on 17 September 2012.

15. I attach as **Exhibit 4** a copy of the Affidavit of Service attesting to service of the Interim Freezing Order on Bullock in Manhattan, New York.

16. All Defendants in the Cyprus Proceeding (including Bullock) have appeared through counsel, with the exception of Defendant (2), Kuznetsov. Since Kuznetsov has not appeared, the Cypriot Court finalised the Interim Freezing Order against Kuznetsov and also issued a disclosure order against him.

17. All other Defendants (including Bullock) filed objections to Gorsoan's GPB's and Freezing and Disclosure Application and to the maintenance of the Interim Freezing Order.

**The Sirotkin Affidavit**

18. The Freezing and Disclosure Application was supported by an affidavit (the "**Sirotkin Affidavit**") sworn by **Vitaly** Evgenevich Sirotkin ("Sirotkin"), a GPB employee.

19. The Sirotkin Affidavit describes in considerable detail (and with scores of supporting exhibits) Gorsoan's and GPB's claims against the Defendants in the Cyprus Proceeding, which in summary are as follows.

4

20. GPB alleges that between 2005 and 2007 it invested substantial sums (around US$23,000,000) in bonds (the "**Bonds**") issued by companies affiliated with the Moscow Region government (the "**Affiliated Companies**"). In total US$550,000,000 was invested in the Bonds by numerous parties. At the time, Kuznetsov and Valery Nosov (a former associate of Bullock's and Kuznetsov's, hereinafter "**Nosov**") were members of the Moscow Region government—Kuznetsov was the Minister of Finance, and Nosov was his deputy.

21. The stated purpose for the issuance of the Bonds was to finance construction projects in the Moscow Region (the "**Mortgage Programme**"), for example construction projects to create affordable housing for families. The Mortgage Programme was a failure and the Affiliated Companies were unable to pay off back the bondholders their capital and interest and are currently in liquidation.

22. Following investigations it was discovered that the issuance of the Bonds and the use of the funds generated through their issuance were part of a series of fraudulent schemes devised by (a) Bullock, (b) her then-husband, Kuznetsov, (c) Nosov, (d) and Mr. Dmitry Kotlyarenko (an associate of Ms. Bullock, hereinafter "**Kotyarenko**") with the connivance and cooperation of various other persons known and unknown.

23. In particular, it is alleged that Bullock, Kuznetsov, Nosov and Kotlyarenko devised and implemented a scheme to defraud the buyers of the Bonds by persuading them to invest in the Bonds and then diverting the funds raised by the Bonds for their own benefit using a number of fraudulent schemes. These fraudulent schemes were devised and implemented between 2006 and 2008. They involved the use of a number of offshore corporate vehicles which were ultimately owned or controlled by Bullock and her co-conspirators. Defendants (3)–(15) in Action 3573 are some (though not all) of those offshore corporate vehicles.

24. According to the Sirotkin Affidavit, a key player in many of the fraudulent schemes was OOO RIGroup Russia ("**RIG Russia**"), which at the time was owned and controlled by Bullock (through RIG LLC), Kuznetsov, Kotlyarenko and Nosov. The broad pattern of those fraudulent schemes, as stated in the Sirotkin Affidavit, was that funds raised



through the Bonds would be transferred to RIG Russia or a related Russian company either by way of loan or for some sham purpose and then eventually to offshore companies in foreign jurisdictions such as Cyprus and the British Virgin Islands through various channels such as loans, promissory notes, assignment and set-off documentary agreements, and through apparent sales of worthless companies at substantial prices. The funds would then be used for the benefit of Bullock and the others; for example they were used to buy real estate in Europe (such as in London and France) or other luxury items (such as a yacht).

25. The investor in the Bonds was GPB. Pursuant to an Assignment Agreement and an Addendum dated 12 April 2010 and 16 July 2012, respectively, GPB assigned to Gorsoan all its rights connected with the purchase by GPB of the Bonds, including all its legal rights relating to the issuance of the Bonds and the fraud perpetrated.

26. Despite their best efforts, GPB and Gorsoan have thus far been able to recover approximately only US$2,000,000.00 from the Affiliated Companies and (excluding interest and legal costs) have suffered damage in the region of US$22,000,000.

**The Inter Partes Hearing**

27. Following the filing of Bullock's objections on 8 October 2012 and some further evidentiary and procedural hearings, the Interim Freezing Order and the Freezing and Disclosure Application were set for hearing on 5 November 2012, before her honour Judge Stamatiou, President of the District Court of Limassol.

28. On 3 March 2013, the Cypriot Court ruled on the Freezing and Disclosure Application, ordering the continuation of the Interim Freezing Order.

29. The Cypriot Court found in favour of Gorsoan and GPB, granting all the orders applied for in the Freezing and Disclosure Application against Defendants (1)–(5), (7)–(19) and (23)–(30), and putting the Interim Freezing Order into effect until the final determination in the Cyprus Proceeding.



30. I attach as **Exhibit 5** a copy, in Greek together with an English translation I prepared, of the order issued by the Court on 6 March 2013 (the "**Freezing and Disclosure Order**") by which the Interim Freezing Order was extended for the duration of the Cyprus Proceeding and the disclosure orders were issued. Service of the Freezing and Disclosure Order on Bullock was effected on 24 April 2013.

31. Defendants (1), (3), (4), (5) and (7)–(15) have appealed the decision of the Court and the appeal is now pending. The appeal does not affect the validity of the issued orders.

**The Set Aside Application**

32. On 5 December 2012, Defendants (1), (3), (4), (5) and (7)-(15) filed an application that the case against them be set a stayed or set aside on the purported basis of the Cypriot Court's lack of jurisdiction and alleged procedural irregularities (the "**Set Aside Application**").

33. Gorsoan and GPB filed their opposition to the Set Aside Application and the Set Aside Application was argued in the Cypriot Court on 3 October 2013 before her honour Judge Psara, President of the District Court. On the hearing date, the parties made written submissions and the Court scheduled a supplemental hearing on the Set Aside Application for 25 October 2013, when briefing and argument on the Set Aside Application was finally concluded.

34. On 5 November 2013, Judge Psara of the Cypriot Court issued a judgment denying the Set Aside Application (the "**November 2013 Decision**"). I attach as **Exhibit 6** a copy of the November 2013 Decision in the Greek language together with a translation into English performed by professional translators in Cyprus, namely I-Lingua Translation Services.

35. In the November 2013 Decision, the Cypriot Court concluded that it has jurisdiction over the dispute, that the service of process on all defendants was done properly and in accordance with applicable regulations, and that there are no procedural irregularities. Bullock and the other defendants who filed the Set Aside Application have not appealed the November 2013 Decision.

7



**Non-Compliance with the Freezing Order by Janna Bullock and other Defendants**

36. Bullock and Defendants (2), (3), (4), (5) and (7)–(15) in the Cyprus Proceeding have failed to comply with the Freezing and Disclosure Order issued against them in March 2013. See Exhibit 5, paragraph 2.

**Third-Party Defendants' Compliance with the Freezing and Disclosure Order**

36a. Most of the third-party defendants (i.e. Defendants (16) to (30)) have complied with their disclosure obligations under the Freezing and Disclosure Order. For example, documents were produced by one or more of the third-party defendants describing trust structures created for Bullock involving at least three trusts: a "Golden Venture Trust," a "Purple Trust," and an "Azul Trust." A copy of a document obtained by the Plaintiffs through the course of third-party disclosure that illustrates these trust structures is attached as **Exhibit 7**.

36b. Furthermore, through the third-party disclosure that has been obtained, the Plaintiffs have learned of the following entities that Bullock and her co-conspirators may have used to perpetuate the alleged fraud:

   (i).   Polintic Trading Limited;
   (ii).  Trabol Holdings Ltd.;
   (iii). Monli Holdings Ltd.;
   (iv).  Imperial Field Enterprises Ltd.;
   (v).   Ammopia Management Limited;
   (vi).  Skeveor Enterprises Ltd.;
   (vii). Terminus Trading Limited;
   (viii). Menetes Enterprises Limited;
   (ix).  Hosbern Finance Limited;
   (x).   Adminico Nominees Limited;
   (xi).  Maicon Investments Limited;
   (xii). Vixenbeidge Limited;
   (xiii). Jarment Investments Limited (or Jarmen Investments Limited);
   (xiv). Rution Management Limited;
   (xv).  Southwark Overseas Limited;
   (xvi). Danfold Holdings Limited;
   (xvii). Jaze Art Foundation Inc.
   (xviii). 54 East 64th Street LLC;
   (xix). 9 East 67th Street Realty LLC;
   (xx).  Malfort Business Inc.;



 (xxi). Hotrast Consulting Limited;
 (xxii). Barnsdale Intenational Limited;
 (xxiii). Leiko S.A.;
 (xxiv). Napton Investments Limited;
 (xxv). Lahugral Limited;
 (xxvi). Lysanflor Limited;
 (xxvii). Celederia Investments Limited;
 (xxviii). Gaildorf Limited;
 (xxix). Linden Investments Limited;
 (xxx). The Westbury Fund Limited;
 (xxxi). Flodemer International Limited;
 (xxxii). Vartberg Limited;
 (xxxiii). Trot Trading Limited;
 (xxxiv). Perla Developments Limited;
 (xxxv). Topola Investments Limited;
 (xxxvi). Royal Winner Trading Limied;
 (xxxvii). Morris Invest Group Limited;
 (xxxviii). WestLogistics B.V.; and
 (xxxix). Retrex International Limited.

**Judicial Review of Orders Issued by the District Court of Limassol**

37. An unsuccessful litigant can appeal from a judgment of the District Court of Limassol to the Supreme Court of Cyprus as of right, i.e., no permission is required. As decisions of the District Court of Limassol contain full reasoning on both factual and legal findings, a litigant can appeal against both findings of fact and findings of law. It is possible to adduce further evidence before the Supreme Court, but such instances are very rare. Appeals are almost invariably reviews of the first instance decision.

38. The right of appeal is considered an important safeguard in Cyprus against erroneous first instance decisions. A corollary to the unrestricted right of appeal is that unless the unsuccessful litigant can show exceptional circumstances, the appeal does not operate as a stay of execution of the first instance judgment.

**The Information Sought By Gorsoan and GPB**

39. Among the allegations of the Plaintiffs in the Cyprus Proceeding is that Bullock has used various companies controlled and/or ultimately owned by her to divert and hide assets that she, together with her co-conspirators, defrauded the Plaintiffs of.



40. According to the Sirotkin Affidavit (para. 388), "Solferino and the French Defendants [i.e. Defendants (11)-(15)] participated in the fraud as corporate fraud vehicles used to receive the money." Further, according to the Sirotkin Affidavit (para. 263):

> *"Solferino was established on 20 September 2006 in Luxembourg. The members of the board (conseil d'admistration) of Solferino are Ms Janna Bullock, Ms Zoya Kouznetsova (according to publicly available information, Ms Bullock's daughter), and Mr Stuart Alan Smith (according to publicly available information, a New York attorney who represents Ms Bullock and RIG LLC)."*

Thus, the three Board members of Solferino (a Luxembourg company) are all, upon belief, in New York: Bullock, her attorney Stuart Alan Smith (**"Smith"**) and her daughter Zoe Remmel (**"Remmel,"** formerly Zoya Kuznetsova). Bullock, Smith and Remmel likely possess relevant documents and knowledge about the activities of Solferino and its affiliates in connection with the fraud alleged in the Cyprus Proceeding.

We have received information that as of 08 February 2013, Solferino entered into a voluntary liquidation following a decision of its sole shareholder, Laziar Holdings Limited (Defendant (3) in the Cyprus Proceedings – hereinafter, "Laziar"). As a result of the liquidation of Solferino, its assets were transferred to Laziar, which constitutes a violation of both the Interim Freezing Order and the Freezing and Disclosure Order. We have received further information that Laziar transferred the shares of SAS Societe Des Hotels D'altitude (Defendant (15) in the Cyprus Proceedings, a French company owned by Solferino prior to its liquidation – hereinafter, "SAS D'altitude") to RIG LLC.

SAS D'altitude owns assets, including real estate, through four subsidiaries: SARL Pralong, SARL Crystal, SCI Chateau du Puy Robert and EURL Societe de Exploitation de l' Hotel Chateau du Puy Robert (Defendants (11) to (14) in the Cyprus Proceeding).

41. The Sirotkin Affidavit (para. 334) states:



> "Ms Bullock . . . asserts that she is the owner of RIG LLC. RIG LLC appears to have been the true owner of the shares in Laziar, the company which received monies from RIG Russia to finance the purchase of a company owning real estate in France, as part of the Third Transaction. RIG LLC appears to share an address in New York with the address listed in the U.S. trademark registration for "Janna Bullock"."

As the corporate parent of numerous corporate defendants in the Cyprus Proceeding, RIG LLC thus likely possesses documents and knowledge of great relevance to the fraud claims in the Cyprus Proceeding.

42. The Sirotkin Affidavit (paras. 272-276) states:

> "I understand that on or around 8 March 2012, RIG LLC and Laziar executed an arbitration agreement in relation to a dispute regarding the loan (described above) from Laziar to SAS d' Altitude subsequently assigned to RIG LLC.
>
> On 11 April 2012, RIG LLC and Laziar appeared before sole arbitrator Daniel Gilden and an arbitral award was issued on 16 April 2012 (Exhibit 162).
>
> According to the arbitral award the EUR 34.11 million "loan" granted in 2007 by RIG Russia to Laziar was not really a "loan" 'but was in fact the proceeds of a stock redemption of [RIG Russia's] shares, such funds belonging to and to be applied on behalf of [RIG LLC].'
>
> I believe that this was a sham arbitration as both the claimant, RIG LLC and the defendant, Laziar are controlled by Ms Bullock (as has been explained above).
>
> On 19 April 2012 RIG LLC, filed a petition (to which Laziar stipulated) to have the Supreme Court of the State of New York confirm the award, which it did on 1 June 2012. (Exhibit 162)."

Having reviewed the above-referenced Sirotkin Affidavit exhibits related to this arbitration proceeding (and the subsequent petition to confirm the arbitral award), I am aware that RIG LLC was represented in those proceedings by Stuart Alan Smith (the same Smith who served on the Board of Solferino). Given that the Sirotkin Affidavit



describes these proceedings as a "sham arbitration," Smith may have knowledge and/or documents that are relevant to the fraud claims in the Cyprus Proceeding.

43. RIG LLC, Smith and Remmel are non-parties in the Cyprus Proceeding.

44. The discovery that Gorsoan and GPB seek from Bullock, RIG LLC, Smith and Remmel in this Section 1782 Proceeding may reveal additional assets or entities controlled by Bullock, or individual co-conspirators in the alleged fraud, that are relevant to the claims in the Cyprus Proceeding, and also may reveal the methods used for such fraud.

45. Neither Cypriot law nor the rules of the Cypriot Court forbid the use in the Cyprus Proceeding of the relevant information that Gorsoan seeks in this Section 1782 Proceeding.

I have executed this Declaration under penalty of perjury under the laws of the United States of America, 25 U.S.C. § 1746, this 26th day of November 2013.

_____
ALEXANDROS TSIRIDES