# Exhibit 6

**AT DISTRICT COURT OF LIMASSOL**

**BEFORE:** T. Psara-Miltiadou, P.D.C

**No of Action 3573/2012**

Between:

1. GORSOAN LIMITED
2. GAZPROMABANK OJSC

**Plaintiffs**

And

1. JANNA BULLOCK
2. ALEXEY KUZNETSOV
3. LAZIAR HOLDINGS LIMITED
4. NOVA PROVA ENGINEERING LIMITED
5. NOGION HOLDINGS LIMITED
6. NAKODA LIMITED
7. ALCORK LIMITED
8. HITNELL LIMITED
9. ELMWOOD VENTURES LIMITED
10. SOLFERINO DEVELOPMENT S.A.
11. SARL PRALONG
12. SARL CRYSTAL
13. SCI CHATEAU DU PUY ROBERT
14. EURL SOCIETE D'EXPLOITATION DE L'HOTEL CHATEAU DU PUY ROBERT
15. SAS SOCIETE DES HOTELS D'ALTITUDE
16. C.P. PALEMA LIMITED
17. C.P. PALEMA SERVICES LTD
18. CYPROMAN SERVICES LIMITED
19. CHARALAMPOS PAPAS OTHER PAMPOS PAPAS
20. ZOULIAN MANAGEMENT LTD

21. ZOULIAN LIMITED

22. ELENI KINANI

23. MARIA ATZINI

24. GIANNA ANTONIOU

25. AFRODITI DIMITRIOU

26. GEORGIA MICHAEL

27. CHRISTIANA CHRISTOU

28. PANICOS SYMEOU

29. CYPRUS POPULAR BANK PUBLIC CO LIMITED

30. HELLENIC BANK PUBLIC COMPANY LIMITED

**Defendants**

-------------------------------------

**APPLICATION TO BE BY SUMMONS OF DATE 5.12.2012 BY Janna Bullock from USA, Defendant 1, Laziar Holdings Ltd from Limassol, Defendant 3, Nova Prova Engineering Ltd from Limassol, Defendant 4, Nogion Holdings Ltd from Limassol, Defendant 5, Alcock Ltd from British Virgin Islands, Defendant 7, Hitnell Ltd from British Virgin Islands, Defendant 8, Elmwood Ventures Ltd from British Virgin Islands, Defendant 9, Solferino Development SA from Luxembourg, Defendant 10, SARL PRALONG from France, Defendant 11, SARL CRYSTAL from France, Defendant 12, SCI CHATEAU DU PUY ROBERT from France, Defendant 13, EURL SOCIETE D'EXPLOITATION DE L'HOTEL CHATEAU DU PUY ROBERT from France, Defendant 14 and SAS SOCIETE DES HOTELS D' ALTITUDE from France, Defendant 15.**

**5th of November 2013**

For Applicants: Mr Ach. Demetriades (Mr Fieros shall deliver the decision)

For Respondents: Mr A. Tsirides

**INTERIM JUDGMENT**

    By the present application all of the above mentioned Applicants-Defendants request the cancellation and set aside of the service of the Writ of Summons and/or Notice of the

Writ of Summons and/or of the Interim Order of date 14.08.2012 to the Defendants-Applicants and of the Order of date 16.08.2012 for service of the Writ of Summons and/or Notice of the Writ of Summons and/or of the Interim Order of date 14.08.2012.

This Application is based on the Civil Procedure Rules O.5, R.9 and 10, O.6, R.1 to 9, O.16, R.9, O.48, R. 1-4, 7, 8 (1) – (4) and 13 and O.64, R.1 and 2, O. 48, R. 2, 3, 4, 6 and 7, O.59, R.3, 7, 10, 12, 13 and 35, on the articles 21, 31, 32, 45 and 47 of the Courts Law 14/60 as amended, to the Civil Procedure Law Cap. 6 as amended, and especially the articles 3 and 7, to the Civil Offences Law as amended and especially in the articles 34, 36 and 68, to the Contracts Law, Cap. 149 as amended and especially in the article 25, to the Rule of the European Parliament and Council numbered 1393/07 dated 13th of November 2007 for the service and disclosure to the country members judicial and extrajudicial acts to civil and commercial cases, generally in the articles 1-4, 14 and 15 especially, to the Ratifying Law 40/1982 on the Hague Convention on the foreign service judicial or other documents in civil and commercial cases, generally on the European Convention of Human Rights Ratifying Law of 1962 and of the Article 6 especially and on the Articles 30, 169 and 179 of the Convention and on the practices and inherent powers of the Court and on the general principles of the Law.

The above application is based on the affidavit by Mrs N. Iacovou, lawyer working for the law firm of the Applicants, while there is a reference to an affidavit by Mr Klerides dated 8.10.12 which is filed in the Court's file.

Pursuant to the positions of the Applicants what is mentioned below is important:

**Proceeding Background**

On the 3.08.2012 the Plaintiffs/ Respondents registered the Petition numbered 3573/12 with Writ of Summons of type O.2 R.1, with which claim remuneration against the Defendants 1-15, inter alia, for several so-called torts. It should be noted that in the present Writ of Summons was noted that: "NOT FOR SERVICE OUTSIDE THE JURISDICTION WITHOUT THE PERMISSION OF COURT".

Subsequently on the 10.08.2012 they register an ex parte application for a prohibitive order supported by the Affidavit of Vitaliy Evgenyevich Sirotkin dated 10.08.2012 (Hereinafter referred as "Affidavit Sirotkin"), by which, inter alia, the above Defendants/Applicants would be prevented from estranging and/or decrease their property up to a specific sum. On the 14.08.2012 the requested order was issued before a judge of the District Court of Limassol.

This same day the Plaintiffs/Respondents have registered an ex parte Application for service of the Writ of Summons and/or the Notice and/or the interim Order of date 14.08.2012 outside the jurisdiction in relation to the Defendants 1, 2, 7-15. The present Application was supported by the Affidavit made by Eleni Apostolidou (hereinafter referred as Affidavit Apostolidou). On the 16.8.2012 the Court issued an order of service of the Writ of Summons and/or the Notice and or the interim Order dated 14.08.2012 outside the jurisdiction as the Application of the Defendants/ Respondents. Another similar application is mentioned here below – in relation with the service abroad- of date 3.9.2012.

On the 8.10.2012 the Applicants/ Defendants have registered application for permission to submit a note of appearance under protest and also they have registered a set aside Application of the service of Writ of Summons and the Notice of Writ of Summons and/or the Interim Order of date 14.8.2012 to the Defendants- Applicants, of the Order of date 16.8.2012 for service of the Writ of Summons and/or the Notice of the Writ of Summons and/or the Interim Order of date 14.08.2012, of the Interim Order of date 14.8.2012. On the 23.10.2012 the Court issued a related Order, pursuant to which the Applicants registered a note of appearance under protest for all of the above Defendant/ Applicants on the 30.10.2012.

In terms of this proceeding, a hearing also took place, with regards to the interim remedies of freezing worldwide, against the Defendants 1-15 remedies aiming to the disclosure to a number of the Defendants (see decision taken by the Judge Mrs K. Stamatiou of date 6.3.2013).

**Reasons supporting the petitions**

The Applicants request the cancelation and/or set aside of the service of the Writ of Summons and/or the Notice of the Writ of Summons and/or the Interim Order of date 14.8.2012 for the reason, inter alia, that the service was not made pursuant to the Court's Order of date 16.8.2012 and/or the Law, the relevant European Rules and/or the International Conventions.

In relation to the all of the above mentioned, from the documents of this case derives that: While in relation with the Defendant 1 and 2, for which a substituted service for the service to the Defendant 1 was ordered, the Order of date 16.8.2012, and also the subordinated Order of date 5.09.2012, provide for the service to be made through the Central Authority of USA pursuant to the Hague Convention, but the claiming service was finally achieved through the mailing services and to be precise through FEDEX, as it is derived from the Court's file.

It is important to note that, according to the Applicants, the advocate Eleni Apostolidou in her Affidavit with which supported the petition by the Plaintiffs/ Respondents for service outside jurisdiction she had explained to the Court, as she was informed by the advocated of the Plaintiffs in USA that the service outside jurisdiction in relation to the Defendant 1 is regulated by the article 5 (a) of the Hague Convention and it is especially mentioned to the non-implemented of the article 10 (a) of the same convention which provides the possibility of service of judicial documents through mailing services. Still speaking according to the Applicants as explained above, the service through FEDEX services does not consist of a suitable service.

Furthermore, in relation to the service of the above mentioned documents to the Applicants/Defendants 7-9, the service was made to another address different from this noted in the Order of date 16.8.2012 as it is derived by the Court's file.

They still remain loyal to their position that the application for sealing the Writ of Summons for the Defendants outside jurisdiction contrasts the Civil Procedure Rules. The issued Order is unsatisfactory because even if there are Defendants in the Writ of Summons both inside and outside jurisdiction is possible to issue a Summons without permission,

however, for the Summons served outside jurisdiction there is the obligation that the Plaintiff to be referred for taking "a permission of a parallel Summons for service outside jurisdiction".

Moreover, they claim that the Order for service is unsatisfactory because the Application is also unsatisfactory since there is no adequate definition and clear appeal of these legal provisions concerning the claimed civil torts. The present irregularity is deemed crucial since it affects the issuing of the order to an ex-parte application, where their petition shall consist of the substantive legal basis pursuant to which the Court shall deem if there is a satisfactory base for the petition to be and arguable case with chances of succeeding. Additionally the above omission consists of a violation of O. 48 R.1 of the Civil Procedure Rule pursuant which "Every application to the Registrar will have to... and be referred to the special article of the Law..."

Generally speaking the Respondents/ Plaintiffs did not fulfil and/or were not referred to the Affidavit Sirotkin. However, in this affidavit the Plaintiffs did not disclosed or did not adequately explained that the claimed offenses can create a conductive right against the Applicants/ Defendants pursuant either to the Cypriot or even importantly to the Russian Law, which seems to be the implemented law in the present case pursuant the disclosed facts. The relation of the Applicants/ Defendants with the claimed civil offenses is not yet disclosed and this fact makes the Court's task more difficult regarding its decision on the possibility that this application shall be successful. Therefore, this Order is deemed insecure. Similarly, all of the above mentioned consist of an omission of a complete and truthful disclosure of essential facts.

Furthermore, the Applicants claim that the Court lacks of jurisdiction to trial the present Writ of Summons and/or the Notice of the Writ of Summons and the interim Order of date 14.8.2012. To be precise, the claims under the Writ of Summons are done only by the Plaintiffs 1 to who the claimed conductive rights have been registered by the Plaintiffs 2. Conclusively, this registration consists of the base of legalisation of the Plaintiffs 1 as to the above numbered and titled application. However, based on Exhibit 3 of the Affidavit Sirotkin, titled Additional Agreement nr 1 to the Agreement nr 1 for the Registration of the Rights of Claim of the 12th of April 2010 and of date 16th of July 2012- the addendum to the article 1.1 of the Agreement is deemed important and which is the following: "Along with

registration of the Rights of Claim the transferee shall register to the Addressee in whole all the claims in relation to the rights of claim of any type (including the without influencing Claims for fraud, conspiracy, civil offence, unjust enrichment and claims pursuant to the law of equity). Consequently, the present agreement was achieved without consideration and if this was governed by the Cypriot law would have been invalid.

Certainly in the aforementioned agreement (Article 7.2) is stated that it is governed and interpreted pursuant to the laws of the Russian Federation. There is no evidence by the Plaintiffs concerning the Russian Law for this matter, fact that consists of an omission on their behalf. If considered that the Cypriot Law was not different that the Russian one, then this additional agreement is invalid and consequently the Plaintiffs are not legalised to the rise of this petition, the Applicants state.

Additionally and in relation with the matter of lack of jurisdiction of the Court they claim that the Plaintiffs did not include to this petition specific people who seem to be directly connected with the claimed civil offenses and who do not reside in the Republic whilst they chose to include the Applicants/ Defendants for whom they repeat that there is no evidence directly connecting them with the claimed offenses.

The Plaintiffs failed and omitted to prove or explain that the claimed offences are connected to the Applicants. Any relation of the Plaintiffs to the Defendants is so distant that even in absence of the real-issuers Defendants, cannot neither compose a conductive right against them and even more nor to establish a safe arguable case. The Plaintiffs do not have any conductive right against the Defendants/ Applicants because of the facts that any such right have to be disclosed firstly to the liquidators of the issuers of the securities, which are absent in this procedure.

In relation to the above mentioned omission they add that under the title Essential (Key) Defendants, in paragraphs 319-351 of the Affidavit Sirotkin, the names of five natural persons that do not reside in the Republic and which are not included in the Petition and are disclosed but there is no explanation why this did not happen. More precisely, the first person, Mr Valery Nosov, is in custody in Russia and this is registered as the reason for not being included as a Defendant. The reason for which he was not added as a Defendant is because if he was added as one the connection of Russia with this case would have been even

stronger and thus the Defendants would have another reason to present why the Court do not have jurisdiction to deal with this case. This is the case for the third Defendant, Mr Kotliarenco. Concerning the second one, Mrs Janna Bullock, which is the Defendant 1, there is no explanation concerning why this petition was not registered in New York of USA where she lives, even if the address provided in the Writ of Summons is not her resident. In relation with the fourth one, Mr Kuznetsov, which is the Defendant 2 (but he does not appear) it is stated that his present resident is unknown to Mr Sirotkin but despite this fact in this Writ of Summons an address un USA is provided concerning why the petition was not registered in the USA. Mrs L. Bezdel mentioned inter alia in paragraphs 52 and 53 of the Affidavit Sirotkin is neither stated as an essential Defendant nor she is included as a Defendant.

### Appeal

The Plaintiffs object to the above application providing a similar legal base with the application, but they additionally evoke the E.P 44/2001, articles 1-6.

The reasons of appeal are the following:

1. The service of the Writ of Summons and/or of the notice and of the interim order of date 14.08.2012 is just and complies with the Law.
2. Permission for scaling the writ of summons is not necessary.
3. The application of service outside jurisdiction did not include the correct legal base.
4. There was no concealing of essential facts in the application for service outside jurisdiction.
5. All the requirements were fulfilled for service outside jurisdiction.
6. The Court had and has full power.
7. The service of Writ of Summons and/or the notice and the interim order of date 14.8.2012 were correctly delivered to all the Defendants.
8. The Defendants were promptly informed about the proceedings and had the chance to present their positions.
9. The Defendants registered an appeal to the application made by the Plaintiffs 1 and cannot and/or are not permitted to proceed to the present application.
10. The District Court has no power and/or jurisdiction to cancel an order because of irregularity in the application.

11. Any irregularity can be corrected with the order 64.

Further to the affidavit of Mrs Apostolidou, which accompanies the appeal the following derives:

In paragraphs 7 and 8 of the affidavit by Mrs Iacovidou there is a claim that the service to the defendant 1 have been delivered through Fedex and that this is incorrect since it should be delivered through the Central Authorities based on the article 5 (1) of the Hague Convention. The Plaintiffs state that the informing that Mrs Iacovou has received is incorrect. The service to the Defendant 2 does not concern the same since the application is not delivered by him. With regard to the Defendant 1 the service of all the documents has been delivered through the Central Authorities of the two countries.

In the Court's file an affidavit by Mrs Elena Apostolidou of date 24.9.2012 was submitted and which confirmed the correct service through the Central Authorities and in the present affidavit is attached as Exhibit A the copy of the affidavit service delivered by an authorised person to deliver these kinds of documents in New York. Then the original affidavit of service by the authorised person for service in New York is registered in the Court's file and is set before the Court and this person confirms that he delivered to the Defendant 1 pursuant to the order of date 5.9.2012.

Based on all of the above mentioned the position appearing in paragraphs 7 and 8 of the affidavit Iacovou is incorrect since the service to the Defendant 1 has been delivered pursuant to the orders of the Court.

Now, concerning the service to the Defendants 7, 8 and 9 that rises in paragraph 9 of the affidavit Iacovou was delivered to the registered office of each company. The Order of date 16.8.2012 states that the service to the Defendants 7, 8 and 9 will have to be delivered to their registered offices. The reference to an address is incidental since according to the information the Plaintiffs received that period of time the registered office was situated to the address indicated on the order. This is confirmed by the Exhibits 2, 3 and 4 which accompanied the Affidavit Apostolidou, of date 14.8.2012 to support her application for permission for service abroad. However, when the person who delivered the service in British Virgin Islands (BVI) visited this office he was told that this office was not any more the registered office of the

Defendants 7, 8 and 9. He was informed that this office was now the registered office Icaza Gonzalez-Ruiz & Aleman (BVI) Trust Limited, 2nd Floor, Vanterpool Plaza, Road Town, Tortola, British Virgin Islands. He then visited the registered office of the Defendants 7, 8 and 9 and he delivered the judicial documents. The affidavit of J. Faulkner is attached as Exhibit 2, who delivered the judicial documents to the registered office of the Defendants 7, 8 and 9 and who confirms that their registered office at the time of the service was Icaza Gonzalez-Ruiz & Aleman (BVI) Trust Limited, 2nd Floor, Vanterpool Plaza, Road Town, Tortola, British Virgin Islands where the services were delivered. Furthermore, he confirms that this specific office accepted and received the documents as the registered office of the Defendants 7, 8 and 9.

Consequently, the Respondents conclude that the services to the Defendants 7, 8 and 9 were delivered to the registered office of the Defendants 7, 8 and 9 pursuant to the order of the court of date 16.8.2012. The reference to the order in this specific address shall not prevent the correct service to the correct registered office, and the reference will have to be deemed incident since in a different case the order will not have a reason of existence. The important fact is that the documents were delivered to the registered office the time of service pursuant to the order of the Court.

Concerning the paragraph 11 in which in which a matter of permission for sealing the summons arises is incorrect. In the Affidavit Iacovou appears the claim that before the service outside jurisdiction the permission for sealing a parallel summons shall be received. This is not the case since the Civil Procedure Rules do not provide the existence of a parallel summons. The summons was originally the one that has been sealed when registered. In any case it is admitted that no permission was needed to seal during registration because of the existence of defendants inside jurisdiction.

Concerning paragraphs 12 and 13 of Affidavit Iacovou, where there is the claim that the arguable of the case was never proved and also the suitability for service outside jurisdiction was also not proved the Defendants reply that this position is incorrect. In the application for a permission of service outside jurisdiction the affidavit Sirotkin of date 10.8.2012 was adopted; affidavit which was submitted to support the application for issuing interim orders. The content of this affidavit shows that there is a solid arguable case against all of the defendants including the Applicants. To be precise, this affidavit shows several real

and essential matters and claims between the Plaintiffs and the Defendants which, for the reasons exposed in this affidavit, is deemed fit to be adjudicated before this Court.

In the Affidavit Sirotkin the petition basis against the Defendants is described in details. Concerning the matter of Russian law, this consists of a matter of real evidence and in lack of a disclosure of such evidence it is presumed that this is the same as the Cypriot law. The Plaintiffs deem that they presented before the Court all of the necessary evidence by which the existence of a solid, prima facie, case is composed and it has good chances to be successful against the Defendants.

As regards para. 19 to 22 of the Iakovou deposition, it is claimed that the Court has no jurisdiction in hearing the case owing to the assignment agreement attached to the Sirotkin deposition as Exhibit 3. In the first place, provided that the argument of the Defendants as to the absence of any consideration is accurate, which the Plaintiffs do not accept, this does not affect the obligations of the material Defendants. The validity or non-validity of an agreement concerns the contracted parties and not any third parties, which may not use the absence of consideration as a defence argument.  The agreements by and between the Defendants constitute an assignment and therefore, no consideration is required in any case, regardless of the above. The parties have agreed consideration regardless of the above and in spite of the fact that no consideration is required on the grounds of the first agreement which is attached to the Sirotkin deposition as Exhibit 2. The purpose of the Amendment (Exhibit 3) was merely to clarify a point of uncertainty in the first agreement. The clarification of the point of uncertainty constitutes consideration for both parties, since the obligations thereof are clarified. It is well established in the case law that consideration need not be monetary.

In any case and regardless of the above, the action against the Defendants has been filed and brought against them by both Plaintiffs. The argument that the demands under the writ of summons are enacted by Plaintiff 1 only is erroneous.

As regards para. 23 to 32 of the Iakovou deposition, the matter of jurisdiction is brought up again, but this time from a different perspective. Firstly, a testimony involving the Defendants with the civil torts and the grounds of the action on which the Plaintiffs

based their request for interim orders has come to light. This testimony is included in the Sirotkin deposition and is explained in detail.

As regards the non-inclusion of persons as defendants, this does not affect the Court jurisdiction on the Defendants tried before the Court. Pursuant to Council Regulation (EC) No. 44/2001, the Court holds jurisdiction of which it may not be released.

As far as para. 33 of the Iakovou deposition is concerned, this remains erroneous. The material Defendants located in Cyprus are Defendants 3, 4 and 5. Their involvement as material Defendants is evidenced in para. 23, 76, 88-95, 258-303 and 132-136 of the Sirotkin deposition. Consequently, the Courts of Cyprus hold jurisdiction over them pursuant to Council Regulation (EC) No. 44/2001 and, by extension, holds also jurisdiction over the remainder of the Defendants under the same Council Regulation.

<u>The pleadings</u>

The knowledgeable advocates, through their reasoned pleadings, have touched upon all aforementioned matters by citing a plethora of arguments grounded in the case law. In addition, a ruling of a US Court was filed upon agreement within the context of the hearing of the Petition, which the knowledgeable advocates deemed indirectly related to the contested matters leaving, thus, the matter to the judgement of the Court, which should decide whether and in what manner it affects the contested matters included in this Petition.

Findings and conclusions by the Court

- • Claim for erroneous service and other irregularities.

  According to the Court file, it is true and accurate that the services on Defendants 1 and 2 were based on the orders dated 16/08/2012 and 05/09/2012 under the Hague Convention through the competent authorities of Cyprus and the USA. This is evidenced in the relevant service report included in the Court

file (see also the deposition of Ms El. Apostolidou dated 24/04/2012 and Exhibits A and B of the same deposition, which verify the said services). According to these documents, the service was performed in accordance with the Court orders dated 16/08/2012 and 05/09/2012.

As regards the service on Defendants 7, 8 and 9, the Court file shows that it has been performed at the registered office of each company. Any discrepancies in the management thereof are irrelevant, provided that it is the registered office of these companies. The Petitioners do not seem to support a contrary argument. I believe that any discrepancy between the management of the actual office where the service took place and the person named as the manager in the order is not crucial, especially because the said Defendants have indeed been notified. Any other perception of the situation would be pedantic. At this point, it would be useful to refer to the Fragkeskou vs. Grigoriou case (2000) 1(C) Supreme Court Judgement No. 1765 where it was stated that "the principal, yet reasonable given the circumstances, question in any case of substituting the manner of service is whether the proposed manner of service is likely, if not certain, to bring the writ of summons to the attention of the defendant (see The Annual Practice, 1960, Vol. 1, para. 133-134)".

If it is proved that an irregularity has been committed, I believe that it is of such nature that it certainly does not affect the essence of the procedure and pursuant to Order 64, it is an irregularity that does not even require a remedy, since no damage seems to be sustained (see **Pat Joneska** vs. Xenia Dimitriou et al. (1998) 1(C) Supreme Court Judgement No. 1526).

In my opinion, the recent ruling of the Supreme Court in the Alpha Bank Cyprus Ltd vs. Sisenh Dau case (Civil Appeal No. 23/13 dated 13/09/2013 provides helpful guidance; although the judgement concerned a service under Council Regulation (EC) No. 1393/07, it offers general useful remarks as to the series of irregularities that occurred.

I hereby cite some excerpts of this judgement:

"... It is a pedantic proposition that contravenes not only the spirit of Council Regulation 1393/2007/EC, but our own Civil Procedure Rules, too. What is of importance is that both the writ of summons and the notice which constituted the documents initiating the procedure, became known to the appellees."

......................................................................................

"Therefore, in the event of substitution of the manner of service under Council Regulation

*1393/2007*, Order *48*. Rule 13 is particularly crucial depending on whether the irregularity is related to a default of the Defendant. In this case, no such interrelation exists. In our judgement, the omission ascertained could have been remedied pursuant to Order 64 and under the spirit of Council Regulation 1393/2007 and the manners provided for in Part 2 of the Regulation.... It was then in the discretion of the Appellants to request that the Court grant the appropriate remedy pursuant to the Civil Procedure Rules (see the related *Dasaki Entertainment Co. Ltd* vs. the Church of Panagia Chryseleousi of Strovolos, Cyprus (No. 2) (2009) 1, Supreme Court Judgement No. 356 case and the *Olympia Designs (Properties) Limited vs. Unique UK Inc. (2010) 1*B Supreme Court Judgement No. *1395)*. In this case, a submission of a petition for further remedial measures is not necessary, since the ex parte application has now become known to the Appellees and in practice, it has been remedied ipso facto."

......................................................................................

"Nevertheless, in case the Appellees did not appear in a timely manner and a judgement was issued against them owing to such default thereof, the default of the Appellants to include a translation of the order might have acquired an entirely different meaning.

......................................................................................

However, in this case, there was no default on the part of the Appellees, who appeared before the Court, even if they did so under protest. Therefore, we believe that this default could have been remedied for the same reasons mentioned alongside the belated service of a faithful translation of the order to the Appellees."

......................................................................................

"In our judgement, the part of the seven judgements at first instance concerning the nullification of the service on default-related grounds as to the national law is erroneous, because any default could have been remedied given the circumstances of the particular cases pursuant to the spirit of Council Regulation 1393/2007/EC. In spite of the multiple issues found as to the manner in which the service took place, according to the documents served, the Appellees have not been misled, since they appeared before the Court on time. In addition, the Appellees have not specified the nature of the alleged deception thereof, but most importantly, the impact of any potential deception thereon. Consequently, we would not render the service null and void, unless the Court of Justice of the European Union rules that the service of the standard report is required in every service of court documents under Council Regulation 1393/2007/EC and that any omission to serve the report cannot be remedied and thus, constitutes a ground of nullification thereof."

In conclusion, the grounds of this petition are hereby rejected.

- <u>No leave for sealing of the writ of summons served on the Defendants outside jurisdiction.</u>

I have not been convinced by the Petitioners that the **Larticon Co vs. Detergenta Ltd case** (2004) 1(B) Supreme Court Judgement No. 1121 is not applicable. Neither have I been convinced that the argument on "a concurrent writ" is well-founded, since this is not provided for in our legislation.

I have examined the respective arguments in detail by referring to the relevant case law.

It would be useful to cite an essential excerpt of the **Larticon** case, which both knowledgeable advocates interpreted in a different manner.

Page 1129 of the **Larticon** case reads as follows:

"... As shown in the title of the Action, the first appellee is a company which is located in the industrial zone of Dali, Cyprus, while the second appellee is a company situated in Düsseldorf, Germany. The filing of the writ of summons was accompanied by a note above the title of the action which read: "Not to be served on Defendant 2 outside jurisdiction without the relevant leave of the Court". The Court of First Instance ruled that obtaining an leave for sealing the writ of summons prior to the filing thereof due to the parties being located outside jurisdiction was not necessary pursuant to the provisions of Order *6(1)(h)*, provided that the writ of summons lists a defendant located within the jurisdiction. Order *6(1)(h)* provides that: *"Subject to section 15 of the Courts of Justice Law, Cap. 11, service out of the jurisdiction of a writ of summons or notice of a writ of summons may be allowed by the Court or a Judge whenever............ (h) Any person out of Cyprus is a necessary or proper party to an action properly brought against some other person duly served in Cyprus."*

... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... .....

Consequently, the writ of summons was issued rightly and remains in force." The appellee argues that the aforementioned conclusion is erroneous, because under Order 2 Rule 2 of the Civil Procedure Rules of Cyprus, the Appellant should have obtained the leave of the Court prior to filing the Action.

The above approach of the Court of First Instance is accurate. The Court of First Instance dealt with the arisen claim appropriately and we do not believe that our intervention is required in any way.

Having said that, it is safe to draw the following conclusions:

Under any circumstances should it be deemed necessary to obtain a prior leave for sealing the writ of summons to be served on a Defendant outside jurisdiction, provided that there exists another Defendant within the jurisdiction.

The above has been clearly expressed by D. Kramvis in the **Niki Christoforou Cosmetics Ltd vs.** Stylianou et al. case (2005) 1 Supreme Court Judgement No. 273 where page 279 reads verbatim:

> "The time of filing of the Action is the exact time when the court document is delivered to the Register to be filed and receives a number. In the case in question, the Action was filed and received a number immediately, because one of the Defendants is a Cypriot citizen. The submission of the request for leave for sealing the writ of summons prior to filing it owing to Defendant 2 being situated outside jurisdiction was not necessary, since the Action is also brought against a Defendant situated within the Court jurisdiction. See *Larticon Co. vs. Detergenta Developments Ltd* (2004) 1 Supreme Court Judgement No. *1121*. Hence, in our opinion, it is not reasonable that the Defendants outside jurisdiction be subject to a different treatment than others or than Defendants who are listed in the same writ and are situated within the Court jurisdiction."

Since the writ of summons is brought against Defendants, of whom at least one person resides or is headquartered in Cyprus, while other Defendants are situated outside Cyprus, the provisions of Order 6.1(h) are applicable, under which a writ of summons or a notice of a writ of summons outside jurisdiction

may be served on any person outside Cyprus who is a necessary or proper party to an action, which was rightly brought against another person residing in Cyprus.

In **Annual Practice** above, p. 146 in relation to O. 2 r. 4, this provision should be read alongside subparagraph (g) of the English O. 11 r. 1 is not applicable.

It concludes as follows:

*«In such cases the writ is issued without leave, and the plaintiff, having served the writ on the defendant within the jurisdiction, applies for leave to issue a concurrent writ for the service on the defendant out of the jurisdiction, as stated, supra, O. 6, r. 2, (n) "Concurrent Writ" etc.»*

In such cases, this Order does not apply to action where the party outside jurisdiction happens to be a necessary or proper party and the writ of summons has been served on the party within the jurisdiction. In such cases, the writ of summons may be issued without leave and the Plaintiff, after serving the writ on the Defendant within the jurisdiction, addresses the Court and applies for leave to seal or serve the writ or issue a concurrent writ of summons to be served on the Defendant situated outside the jurisdiction (**Halbury's Laws of England**, 3rd Ed. Vol. 30 para. 588).

This special provision is not found in our own legislation, so, although it could be argued that this course of action is more accurate, in reality the Plaintiffs, through their request that the writ of summons be served abroad, included this remedy, even if they did not apply for leave to seal or issue a concurrent writ. In fact, their application included all relevant rules and it also referred to the particulars of the case, so that the Court permit the service outside the jurisdiction as well as determine the most accurate manner for the service of the writ.

Therefore, I believe that no default or at least no fundamentally invalid action appears in the manner in which the Plaintiffs acted.

## • <u>Alleged defects of the application for leave to serve</u>

The applicants claim that the issuance of the order is irregular, because the application does not refer to the specific article of the law in which it is grounded. This, however, is not accurate. The application itself specifies the rules in which it is grounded. According to the Court file, this application is grounded in the Civil Procedure Rules O. 5 r. 9 and 10, O. 5A, O.6, O.48 r. 1, 2, 8(1)α.1 α.2. (e) 12 and 13, O. 64 r.1 and

2, in Regulation (EC) No. 1393/2007, Articles 14 and 15, in Law 40/1982 Articles 1, 2 and 3, in the Hague Convention dated 15.11.1965 concerning service outside the jurisdiction ……...»

Consequently, this arguments seems groundless. In addition, the argument of the applicants that the specific civil torts are not mentioned is not accurate, therefore the testimony is insufficient. What is of importance pursuant to applicable law is that the application include the <u>provisions applicable to the application</u>, that is, the provisions on the service and not the provisions pertaining to the grounds of the action nor should it include a detailed account of the legal grounds.

Accordingly, the Ntinos Michailidis vs. Christos Pourgouridis case (2001) 1(B) Supreme Court Judgement No. 1263 is applicable.

- <u>Claim as to incomplete and dishonest revelation – concealment of material facts – non-fulfilment of the requirements for service outside the jurisdiction – non-existence of Court jurisdiction - the judgement of the US Court and the significance thereof</u>

Paragraphs 14 to 18 of the Iakovou deposition provide various claims focused on the fulfilment of the requirements for leave for service outside the jurisdiction and particularly, on the arguability of the case and the appropriateness of the service.

Mr Dimitriadis has analysed these matters in his pleading thoroughly, especially in p. 19-22. He particularly pointed out that the question of the Russian law is a matter of an actual testimony, for which there exists no testimony. Mr Dimitriadis stresses that the burden of proof has been and remains on the person seeking service of the writ outside the jurisdiction and this verifies the argument of the applicants that the Defendants have not proceeded with a complete revelation of the facts nor have they provided a sufficient testimony supporting the arguable cause and the appropriateness of the writ of summons to be served outside the jurisdiction. In

contrast, it is evident through the procedure that was followed and is still pending in the US Court that the Russian law acknowledges the exclusive jurisdiction of the Russian commercial courts over such torts as the contested ones mentioned in this Action.

Additionally the erudite advocate of the Applicants also submitted an English case law which seems to enhance the tendency that overrule or wishes to set exceptions in the principle evoked by the Plaintiffs that in lack of evidence of foreign law then the local law is implemented. Pursuant to the English law, it is set that when there is no evidence of foreign law then the English law is not always implemented, namely in this case the Cypriot law. (See textbook **Dicey, Morris and Collins, The Conflict of Laws,** 14th Edition, par. 9-025, where a quotation is cited from the relevant decision **Shaker v. Al-Bedrawi and others** (2002) EWCA Civ. 1452).

In response to this case law Mr Tsirides cited a very recent case by **Mr Justice Flaux** of date 3.10.2013, No.2012, Folio 1136 in which the approach suggested by Mr Demetriades is not adopted.

I have carefully examined the corresponding positions since I have studied the relevant pundits the two parties have cited.

As it is well explained the Defendants being outside jurisdiction are necessary parties in action in which the defendants inside Court's jurisdiction are also included so that is why the permission for sealing the writ of summons in not necessary.

In the application for permission for service outside jurisdiction, Eleni Apostolidou adopted the Affidavit Sirotkin of date 10.8.2012 and was registered to support the application for issuing the interim orders.

The content of the present affidavit of date 10.8.2012 shows that there is a solid, arguable case against all of the Defendants including the Applicants. Specifically, the present affidavit shows some real and essential facts and claims between the Plaintiffs and Defendants for which, for reasons that are exposed in this affidavit, is fit to be adjudicated by this Court.

In the Affidavit Sirotkin are adequately examined – I deem – all the action's basis against the Defendants. In view of article 32 these basis were deemed that they fulfil the two first requirements that correspond to the arguable case that matters in the judged case; provided that currently the Court is sure that this is an arguable case.

I deem that currently this is the case. Concerning the matter of Russian law and concerning the principles that the two parties allege I have to state that the legal authority alleged by the Plaintiffs in lack of evidence of foreign law that it is presumed that that it the same as the Cypriot law I am not yet convinced by the case law that this principle is contradicted.

It cannot be ignored that the Court with its decision of date 6.3.2013, in view of the article 32 of Law 14/60 has dealt with quite a few of the risen matters and took a decision accordingly.

Furthermore, there is the claim that the Court has no power to hear the case because of the allocation agreement attached as Exhibit 3 in the Affidavit Sirotkin, but without this fact affecting the obligations of the Defendants. Firstly is in power the fact that the validity or not of an agreement concern all the involved parties and not any other third person which cannot propound as defence the lack of consideration. (See **Chitty on Contracts**, - Volume I, paragraphs 19.027).

The Respondents correctly state that the action against the Defendants have been registered against them from both the Plaintiffs. The Court is not yet convinced to deem that the one Plaintiff is "typical" and "without any enforceable right". Their claims are common and the rest of the examination of this case touches the essence of the matter under judgment during the hearing.

The international jurisdiction of the Court based on the regulation E.P. 44/01 originates from the capacity of some of the Defendants as residents of the country-members. It is also assumed that this legal action is directed against several Defendants that reside in Cyprus.

In relation with the matter of forum conveniens it is well known that the Court cannot deny any jurisdiction based on the legal principle of **Owusu v. Jackson** Case C-281/02 [2005] ECR I-1383. The European Court deemed that the article 2 of the Brussels Treaty is implemented even if when the parties are from the same country-member. He also decided that the Brussels Treaty prevent the court of the country-member to deny any jurisdiction on the base that the other country shall be the more appropriate one.

Despite the fact that the Brussels Treaty have been replaced by the regulation 44/2001, the principle set in **Owusu** continues to be implemented and see **Private International law,** 14th Version of Cheshire, North & Fawcett in page 325. Indeed this principle set in **Owusu** is also implemented when the claiming more suitable jurisdiction is of a country - non-member as in this case where there is the claim that the forum conveniens is Russia.

In this case the Courts of Cyprus have power based on the article 2 of regulation 44/2001 since the Defendants 3, 4 and 5 are Cypriot companies and also the other Defendants are from other countries-members. Consequently, the Court cannot deny jurisdiction based on the legal principle of **Owusu.**

It is though observed that the party of the Applicants do not expressed the position that the regulation 44/01 is not implemented.

Now, as regards to the rest of the Defendants (except possibly the Defendant 1 who does not reside in European Union), the Cypriot Court has full power pursuant to the article 6.1 since they are considered necessary parties.

In the textbook **Cheshire & North** above, it is referred that the principle set for the case **Owusu** is extended in addition to the article 2 of the regulation to cover the jurisdiction based on article 6. In page 326 the following is mentioned:

*"Admittedly the wording of special jurisdiction under articles 5, 6 and 7 and Sections 3, 4 and 5 of the Regulation is less obviously mandatory that the wording of Article 2. Nonetheless, there is no hint in the wording of Article 5, 6 and 7 and Sections 3, 4 and 5 that the principles laid down in these provisions can be derogated from. Owusu has been applied*

*by GLOSTER J where jurisdiction was based on Article 6 (1). In her view it would equally apply whenever there is no jurisdiction under the Regulation".*

In the case **Viking Line Abp v. (1) The International Transport Workers' Federation, (2) The Finnish Seamen's Union** (2005) EWHC 1222 the principle set for **Owusu** in power pursuant to the article 6.1 is implemented, namely the same power that the Plaintiffs evoke in this case concerning the Essential Defendants set outside jurisdiction.

Based on all of the above mentioned, the claim that Russia or USA or other country is the most suitable jurisdiction does not seem to be correct. In view of the legal principles set in **Owusu** and **Viking Line Abp** which are implemented in the present case I agree with the Respondents that there is no reason to analyse how many or who of the Defendants reside where and how many of the defendants could be added in the trial proceeding. Neither the analysing concerning the country in which the facts took place had any essential result. The Court has power pursuant to the regulation 44/2001 and the circumstances currently do not advocate for the disclaimer of jurisdiction.

Now, even if the Defendant 1 wished to be deemed that the E.P. 44/2001 as well as the principles of **Owusu** are not implemented in her case because she is not resident of USA, it would not be correct for the court to suspend the proceeding regarding the this defendant only for reasons forum conveniens from the moment that the proceeding against the rest of the defendants will continue in Cyprus since the Cypriot Court has the jurisdiction. It is true that if the Court decided that it does not consist of the suitable forum to hear the case only against the Defendant 1 then this would have led to an illogical result. This would cause parallel proceedings in different courts with possible conflicting decisions and multiple judicial and legal fees. (See **AG of Zambia v. Meer Care & Desai** (2005) EWHC 2101).

After all it would be absurd in a proceeding like this, that already was judged for various Defendants, the substance of the interim freezing order but also the issuing of orders of type Norwich, on the base of the principle existence of jurisdiction and also the necessity of disclosure of facts a big number of Defendants who their actions and acts seem to be relevant to be removed from setting of the claiming torts.

Concerning the decision of USA of date 7.6.2013 which was submitted under agreement and has been appealed, I observe that in this case the suitability of Cyprus as due jurisdiction was not examined. In my point of view this is enough in order for the decision by the American court not to have any importance for this action.

For the reasons I have already explained I deem that the application have to be overruled with expenses for the benefit of the Respondents- Plaintiffs, as they shall be calculated by the Registrar and be proved by the Court and which shall be paid in the end of the action.

(Sign.)------------------------------

T. Psara- Miltiadou, P.D.C

True Copy,

The Registrar,

6

**ΣΤΟ ΕΠΑΡΧΙΑΚΟ ΔΙΚΑΣΤΗΡΙΟ ΛΕΜΕΣΟΥ**

**ΕΝΩΠΙΟΝ:** Τ. Ψαρά-Μιλτιάδου, Π.Ε.Δ.

**Αρ. Αγωγής 3573/2012**

Μεταξύ:

1. GORSOAN LIMITED
2. GAZPROMABANK OJSC

**Εναγόντων**

και

1. JANNA BULLOCK
2. ALEXEY KUZNETSOV
3. LAZIAR HOLDINGS LIMITED
4. NOVA PROVA ENGINEERING LIMITED
5. NOGION HOLDINGS LIMITED
6. NAKODA LIMITED
7. ALCORK LIMITED
8. HITNELL LIMITED
9. ELMWOOD VENTURES LIMITED
10. SOLFERINO DEVELOPMENT S.A.
11. SARL PRALONG
12. SARL CRYSTAL
13. SCI CHATEAU DU PUY ROBERT
14. EURL SOCIETE D'EXPLOITATION DE L' HOTEL CHATEAU DU PUY ROBERT
15. SAS SOCIETE DES HOTELS D' ALTITUDE
16. C.P. PALEMA LIMITED
17. C.P. PALEMA SERVICES LIMITED
18. CYPROMAN SERVICES LIMITED
19. ΧΑΡΑΛΑΜΠΟΥ ΠΑΠΑ ΑΛΛΩΣ ΠΑΜΠΟΣ ΠΑΠΑΣ
20. ZOULIAN MANAGEMENT LIMITED
21. ZOULIAN LIMITED
22. ΕΛΕΝΗΣ ΚΙΝΑΝΗ
23. ΜΑΡΙΑΣ ΑΤΖΙΝΗ
24. ΓΙΑΝΝΑΣ ΑΝΤΩΝΙΟΥ
25. ΑΦΡΟΔΙΤΗΣ ΔΗΜΗΤΡΙΟΥ
26. ΓΕΩΡΓΙΑΣ ΜΙΧΑΗΛ
27. ΧΡΙΣΤΙΑΝΑΣ ΧΡΙΣΤΟΥ
28. ΠΑΝΙΚΟΥ ΣΥΜΕΟΥ
29. CYPRUS POPULAR BANK PUBLIC CO LIMITED
30. HELLENIC BANK PUBLIC COMPANY LIMITED

**Εναγομένων**

---------------------------

2

**ΑΙΤΗΣΗ ΔΙΑ ΚΛΗΣΕΩΣ ΗΜΕΡ. 5.12.2012 ΑΠΟ Janna Bullock εκ ΗΠΑ, Εναγομένης 1, Laziar Holdings Ltd εκ Λεμεσού, Εναγομένης 3, Nova Prova Engineering Ltd εκ Λεμεσού, Εναγομένης 4, Nogion Holdings Ltd εκ Λεμεσού, Εναγομένης 5, Alcock Ltd εκ Βρεττανικών Παρθένων Νήσων, Εναγομένης 7,Hitnell Ltd εκ Βρεττανικών Παρθένων Νήσων, Εναγομένης 8, Elmwood Ventures Ltd εκ Βρεττανικών Παρθένων Νήσων, Εναγομένης 9, Solferino Development SA εκ Λουξεμβρούργου, Εναγομένης 10, SARL PRALONG εκ Γαλλίας, Εναγομένης 11, SARL CRYSTAL εκ Γαλλίας, Εναγομένης 12, SCI CHATEAU DU PUY ROBERT εκ Γαλλίας, Εναγομένης 13, EURL SOCIETE D' EXPLOITATION DE L' HOTEL CHATEAU DU PUY ROBERT εκ Γαλλίας, Εναγομένης 14 και SAS SOCIETE DES HOTELS D' ALTITUDE εκ Γαλλίας, Εναγομένης 15**

**5 Νοεμβρίου 2013**

Για Αιτητές: κ. Αχ. Δημητριάδης (για την εκφώνηση της απόφασης κ. Μ. Φιέρος)

Για Καθ' ων η Αίτηση: κ. Α. Τσιρίδης

**ΕΝΔΙΑΜΕΣΗ  ΑΠΟΦΑΣΗ**

Με την παρούσα αίτηση οι πιο πάνω Αιτητές-Εναγόμενοι ζητούν ακύρωση και παραμερισμό της επίδοσης του Κλητηρίου Εντάλματος και/ή της Ειδοποίησης του Κλητηρίου Εντάλματος και/ή του Προσωρινού Διατάγματος ημερομηνίας 14.8.2012 στους Εναγόμενους-Αιτητές  και του Διατάγματος ημερομηνίας 16.8.2012 για επίδοση του Κλητηρίου Εντάλματος και/ή της Ειδοποίησης του Κλητηρίου Εντάλματος και/ή του Προσωρινού Διατάγματος ημερομηνίας 14.8.2012.

Η Αίτηση βασίζεται στους περί Πολιτικής Δικονομίας Θεσμούς Δ.5, θθ.9 και 10, Δ.6, θθ.1 έως 9, Δ.16, θ.9, Δ.48, θθ.1-4, 7,8(1)-(4) και 13 και Δ.64, θθ.1 και 2, Δ.48, θ.θ. 2,3,4,6 και 7 , Δ.59, θ.3, 7, 10, 12, 13 και 35, επί των άρθρων 21, 31, 32, 45 και 47 του Περί Δικαστηρίων Νόμου 14/60 όπως έχει τροποποιηθεί, στον Περί Πολιτικής Δικονομίας Νόμο Κεφ. 6 όπως έχει τροποποιηθεί, και ειδικά τα άρθρα 3 και 7, στον περί Αστικών Αδικημάτων Νόμο όπως έχει τροποποιηθεί και ειδικά στα άρθρα 34, 36 και 68, στον περί Συμβάσεων Νόμο, κεφ. 149 όπως έχει τροποποιηθεί και ειδικά στο άρθρο 25, στον Κανονισμό (ΕΚ) αριθμ. 1393/07 του Ευρωπαϊκού Κοινοβουλίου και του Συμβουλίου της 13ης Νοεμβρίου 2007 περί της επιδόσεως και κοινοποιήσεως στα κράτη μέλη δικαστικών και εξωδίκων πράξεων σε αστικές ή

3

εμπορικές υποθέσεις, γενικά και στα άρθρα 1-4, 14 και 15 ειδικά, στον Κυρωτικό νόμο 40/1982 περί της Συμβάσεως της Χάγης περί της εν τη αλλοδαπή επίδοση δικαστικών ή άλλων εγγράφων σε αστικές και εμπορικές υποθέσεις, στον περί της Ευρωπαϊκής Σύμβασης Ανθρωπίνων Δικαιωμάτων Κυρωτικό Νόμο του 1962 γενικά και του Άρθρου 6 ειδικά και επί των Άρθρων 30, 169 και 179 του Συντάγματος και επί των πρακτικών και των συμφυών εξουσιών του Δικαστηρίου και επί των γενικών αρχών του δικαίου.

Η πιο πάνω αίτηση στηρίζεται στην ένορκη δήλωση της κας Ν. Ιακώβου, δικηγόρου στο γραφείο των Αιτητών, ενώ γίνεται παραπομπή σε ένορκη δήλωση του κ. Ν. Κληρίδη ημερομηνίας 8.10.2012 η οποία βρίσκεται στο φάκελο του Δικαστηρίου.

Σύμφωνα με τις θέσεις των Αιτητών είναι σημαντικά τα ακόλουθα:

**Το ιστορικό της διαδικασίας**
Στις 3.8.2012 οι Ενάγοντες/Καθ' ων η Αίτηση καταχώρησαν την Αγωγή με αριθμό 3573/12 με Κλητήριο Ένταλμα τύπου Δ.2 Θ.1, με την οποία αξιώνουν αποζημιώσεις εναντίον των Εναγομένων 1-15, μεταξύ άλλων, για διάφορες επικαλούμενες αδικοπραξίες. Ας σημειωθεί ότι στο εν λόγω Κλητήριο ετέθη η σημείωση «ΟΧΙ ΓΙΑ ΕΠΙΔΟΣΗ ΕΚΤΟΣ ΔΙΚΑΙΟΔΟΣΙΑΣ ΧΩΡΙΣ ΑΔΕΙΑ ΤΟΥ ΔΙΚΑΣΤΗΡΙΟΥ».

Ακολούθως στις 10.8.2012 καταχώρησαν μονομερή αίτηση για απαγορευτικό διάταγμα που υποστηρίζεται από την Ένορκο Δήλωση του Vitaliy Evgenyevich Sirotkin ημερομηνίας 10.8.2012 (Εφεξής 'Ε.Δ. Σιρότκιν'), δια του οποίου, μεταξύ άλλων, θα εμποδίζονταν οι πιο πάνω Εναγόμενοι/Αιτητές να αποξενώσουν και/ή να μειώσουν την περιουσία τους μέχρι συγκεκριμένου ποσού. Στις 14.8.2012 το αιτούμενο διάταγμα εξεδόθη υπό του δικάζοντος Επαρχιακού Δικαστηρίου Λεμεσού.

Την ίδια μέρα οι Ενάγοντες/Καθ' ων η Αίτηση καταχώρησαν μονομερή Αίτηση για επίδοση του Κλητηρίου Εντάλματος και/ή της Ειδοποίησης και/ή του ενδιάμεσου Διατάγματος ημερομηνίας 14.8.2012 εκτός δικαιοδοσίας σε σχέση με τους Εναγόμενους 1, 2, 7-15. Η εν λόγω Αίτηση υποστηριζόταν από την ένορκη δήλωση της δικηγόρου Ελένης Αποστολίδου (εφεξής Ε.Δ. Αποστολίδου). Στις 16.8.2012 το

4

Δικαστήριο εξέδωσε διάταγμα επίδοσης του Κλητηρίου Εντάλματος και/ή της Ειδοποίησης και του ενδιάμεσου Διατάγματος ημερομηνίας 14.8.2012 εκτός δικαιοδοσίας ως η Αίτηση των Εναγόντων/Καθ'ων η Αίτηση.  Ακολουθεί άλλη παρεμφερής αίτηση – σε σχέση με την επίδοση στο εξωτερικό – ημερομηνίας 3.9.2012.

Στις 8.10.2012 οι Αιτητές/Εναγόμενοι καταχώρησαν αίτηση για άδεια καταχώρησης εμφάνισης υπό διαμαρτυρία καθώς και Αίτηση παραμερισμού της επίδοσης του Κλητηρίου Εντάλματος και της Ειδοποίησης Κλητηρίου Εντάλματος και/ή του Προσωρινού Διατάγματος ημερομηνίας 14.8.2012 στους Εναγομένους-Αιτητές,του Διατάγματος ημερομηνίας 16.8.2012 για επίδοση του Κλητηρίου Εντάλματος και/ή της Ειδοποίησης Κλητηρίου Εντάλματος και/ή του Προσωρινού Διατάγματος ημερομηνίας 14.8.2012, του Προσωρινού Διατάγματος ημερομηνίας 14.8.2012. Στις 23.10.2012 το Δικαστήριο εξέδωσε σχετικό Διάταγμα, δυνάμει του οποίου οι Αιτητές καταχώρησαν εμφάνιση υπό διαμαρτυρία για τους πιο πάνω Εναγόμενους/Αιτητές στις 30.10.2012.

Στα πλαίσια της διαδικασίας επίσης έγινε ακροαματική διαδικασία αναφορικά με τις ενδιάμεσες θεραπείες παγοποίησης ανά το παγκόσμιο εναντίον των Εναγόμενων 1 – 15 και για αποκάλυψη για αρκετούς από τους Εναγόμενους (Βλ. απόφαση της αδελφού Δικαστού κας Κ.Σταματίου ημερ. 6.3.2013).

**<u>Λόγοι που στηρίζουν τα αιτήματα</u>**

Οι Αιτητές αιτούνται την ακύρωση και/ή παραμερισμό της επίδοσης του Κλητηρίου Εντάλματος και/ή της Ειδοποίησης Κλητηρίου Εντάλματος και/ή του Προσωρινού Διατάγματος ημερομηνίας 14.8.2012 για τον, μεταξύ άλλων, λόγο ότι η επίδοση δεν έγινε σύμφωνα με το Διάταγμα του Δικαστηρίου ημερομηνίας 16.8.2012 και/ή το Νόμο, τους σχετικούς Ευρωπαϊκούς Κανονισμούς και/ή τις Διεθνείς Συμβάσεις.

Σε σχέση με το πιο πάνω,  από τα έγγραφα της υπόθεσης έχουν σημασία τα εξής: Ενώ σε σχέση με την Εναγόμενη 1 και τον Εναγόμενο 2, για τον οποίο διατάχθηκε υποκατάστατη επίδοση δια της επίδοσης στην Εναγόμενη 1, το Διάταγμα ημερομηνίας 16.8.2012, καθώς και το μεταγενέστερο Διάταγμα ημερομηνίας 5.9.2012, προβλέπει η επίδοση να γίνει μέσω της Κεντρικής Αρχής των ΗΠΑ βάσει

5

της Συνθήκης της Χάγης, η κατ' ισχυρισμό επίδοση τελικά έγινε μέσω υπηρεσιών ταχυδρομείου, συγκεκριμένα μέσω FEDEX, όπως φαίνεται στο φάκελο του Δικαστηρίου.

Είναι σημαντικό, κατά τους Αιτητές, να σημειωθεί ότι η Δικηγόρος Ελένη Αποστολίδου στην Ένορκη Δήλωση που υποστήριζε την αίτηση των Εναγόντων/Καθ' ων η Αίτηση για επίδοση εκτός δικαιοδοσίας είχε εξηγήσει στο Δικαστήριο ότι, ως η ενημέρωση που έλαβε από τους δικηγόρους των Εναγόντων στις ΗΠΑ, η επίδοση εκτός δικαιοδοσίας σε σχέση με την Εναγόμενη 1 ρυθμίζεται από το άρθρο 5(α) της Συνθήρης της Χάγης και ειδικά αναφέρθηκε στο μη εφαρμόσιμο του άρθρου 10(α) της ίδιας συνθήκης το οποίο προβλέπει  την ενδεχόμενη δυνατότητα επίδοσης δικαστικών εγγράφων μέσω υπηρεσιών ταχυδρομείου. Πάντα από την πλευρά των Αιτητών ως εκ της πιο πάνω επεξήγησης, η επίδοση μέσω υπηρεσιών FEDEX, δεν συνιστά κατάλληλη επίδοση.

Περαιτέρω σε σχέση με την επίδοση των προαναφερόμενων εγγράφων στους Αιτητές/Εναγόμενους 7-9 η επίδοση έχει γίνει σε διεύθυνση άλλη από αυτή που σημειώνεται στο Διάταγμα ημερομηνίας 16.8.2012, όπως φαίνεται και στο φάκελο του Δικαστηρίου.

Ακόμα είναι η θέση τους ότι η αίτηση για σφράγιση του Κλητηρίου Εντάλματος για τους Εναγομένους εκτός δικαιοδοσίας είναι αντίθετη με τους Θεσμούς Πολιτικής Δικονομίας. Το εκδοθέν Διάταγμα πάσχει γιατί ακόμα και όταν υπάρχουν στο Κλητήριο Εναγόμενοι τόσο εντός όσο και εκτός δικαιοδοσίας είναι μεν δυνατόν να εκδοθεί Κλητήριο χωρίς άδεια, ωστόσο για το Κλητήριο  που θα επιδοθεί εκτός δικαιοδοσίας, υπάρχει υποχρέωση ο Ενάγοντας να αποταθεί για «άδεια παράλληλου Κλητηρίου για επίδοση εκτός δικαιοδοσίας».

Επιπρόσθετα, ισχυρίζονται ότι το Διάταγμα για επίδοση πάσχει γιατί η ίδια η Αίτηση πάσχει από το γεγονός ότι δεν υπάρχει επαρκής προσδιορισμός και σαφής επίκληση των νομικών διατάξεων εκείνων που αφορούν τα επικαλούμενα αστικά αδικήματα. Η εν λόγω παρατυπία κρίνεται καθοριστική αφού επηρεάζει την έκδοση διατάγματος σε μονομερή αίτηση, όπου η επίκλησή τους θα αποτελούσε την νομική και ουσιαστική βάση για να κρίνει το Δικαστήριο αν υπάρχει καλή αιτία αγωγής, συζητήσιμη υπόθεση με πιθανότητες επιτυχίας.  Εξάλλου η πιο πάνω παράλειψη

6

συνιστά παραβίαση της Δ. 48 Θ.1 των Θεσμών Πολιτικής Δικονομίας δυνάμει της οποίας « Κάθε αίτηση στον Πρωτοκολλητή θα πρέπει … και να αναφέρεται στο ειδικό άρθρο του Νόμου…»

Γενικά οι Καθ' ων η Αίτηση/Ενάγοντες δεν εκπλήρωσαν και/ή δεν εκπλήρωσαν επαρκώς την υποχρέωσή τους να αποδείξουν το συζητήσιμο της υπόθεσης και την καταλληλότητας για επίδοση εκτός δικαιοδοσίας.

Σε σχέση με το συζητήσιμο της υπόθεσης οι Ενάγοντες/Καθ' ων η Αίτηση έχουν παραπέμψει στην Ε.Δ. Σιρότκιν. Ωστόσο στην εν λόγω ένορκη δήλωση οι Ενάγοντες δεν έχουν παρουσιάσει ή δεν έχουν εξηγήσει επαρκώς πως τα επικαλούμενα αστικά αδικήματα μπορούν να δημιουργήσουν αγώγιμο δικαίωμα έναντι των Αιτητών /Εναγομένων δυνάμει είτε του Κυπριακού ή ακόμα πιο σημαντικά του Ρωσικού δικαίου, το οποίο φαίνεται να είναι το εφαρμοστέο δίκαιο στην παρούσα υπόθεση δυνάμει των παρουσιασθέντων γεγονότων.   Δεν έχει ακόμα παρουσιαστεί η σχέση των Αιτητών/Εναγομένων με τα επικαλούμενα αστικά αδικήματα και αυτό καθιστά δύσκολο το έργο του Δικαστηρίου να αποφασίσει επί της πιθανότητας επιτυχίας της αγωγής.  Ως εκ τούτου το Διάταγμα καθίσταται ακροσφαλές.  Ομοίως τα πιο πάνω συνιστούν επίσης παράλειψη πλήρους και ειλικρινούς αποκάλυψης των ουσιωδών γεγονότων.

Ακόμα οι Αιτητές ισχυρίζονται ότι το Δικαστήριο στερείται δικαιοδοσίας εκδίκασης του εν λόγω Κλητηρίου Εντάλματος και/ή της Ειδοποίησης του Κλητηρίου και του ενδιάμεσου Διατάγματος ημερομηνίας 14.8.2012. Συγκεκριμένα, οι απαιτήσεις κάτω από το Κλητήριο Ένταλμα γίνονται μόνο από τους Ενάγοντες 1 στους οποίους έχουν εκχωρηθεί τα ισχυριζόμενα αγώγιμα δικαιώματα από τους Ενάγοντες 2. Συμπερασματικά, η εκχώρησή αυτή είναι η βάση της νομιμοποίησης των Εναγόντων 1 στην υπό τον πιο πάνω τίτλο και αριθμό αγωγή. Ωστόσο, με βάση το Τεκμήριο 3 της ΕΔ Σίροτκιν, με το τίτλο Επιπρόσθετη Συμφωνία αρ. 1 στη Συμφωνία αρ. 1 για την Εκχώρηση των Δικαιωμάτων Απαίτησης της 12 Απριλίου 2010 και με ημερομηνία 16 Ιουλίου 2012 - είναι σημαντική η προσθήκη στο άρθρο 1.1 της Συμφωνίας, η οποία έχει ως ακολούθως  σε μετάφραση:   «Μαζί με την εκχώρηση των Δικαιωμάτων Απαίτησης ο εκδοχέας θα εκχωρήσει στον Αποδέκτη εις ολόκληρον όλα τα δικαιώματα (απαιτήσεις) σχετικά με τα δικαιώματα απαίτησης οποιουδήποτε είδους (περιλαμβανομένου χωρίς επηρεασμό Απαιτήσεις για απάτη,

συνομωσία, αστικό αδίκημα, αθέμιτο πλουτισμό και απαιτήσεις σύμφωνα με το δίκαιο της επιείκειας).  Συνεπώς,  η εν λόγω συμφωνία έγινε χωρίς αντιπαροχή και εάν αυτό διέπετο από τον Κυπριακό Νόμο θα ήταν άκυρη.

Βέβαια στη προαναφερόμενη συμφωνία (Άρθρο 7.2) αναφέρεται ότι διέπεται και ερμηνεύεται σύμφωνα με τους νόμους της Ρωσικής Ομοσπονδίας.  Δεν υπάρχει όμως οποιαδήποτε μαρτυρία από τους Ενάγοντες για το Ρωσικό νόμο για το θέμα αυτό, πράγμα το οποίο συνιστά παράλειψη εκ μέρους τους.  Αν θεωρείτο ότι ο Κυπριακός νόμος δεν ήταν διαφορετικός από τον Ρωσικό, τότε η εν λόγω επιπρόσθετη συμφωνία είναι άκυρη και έτσι οι Ενάγοντες 1 δεν νομιμοποιούνται στην έγερση της αγωγής αυτής συνεχίζουν τον συλλογισμό τους οι Αιτητές.

Επιπρόσθετα και σχετικά με το θέμα της έλλειψης δικαιοδοσίας του Δικαστηρίου ισχυρίζονται ότι οι Ενάγοντες δεν συμπεριέλαβαν στην Αγωγή συγκεκριμένα πρόσωπα τα οποία φαίνονται να συνδέονται άμεσα με τα επικαλούμενα αστικά αδικήματα και τα οποία δεν διαμένουν στην Δημοκρατία ενώ επιλέγουν να συμπεριλάβουν τους Αιτητές/Εναγόμενους για τους οποίους επαναλαμβάνουν ότι  δεν έχει παρουσιαστεί μαρτυρία που να τους συνδέει άμεσα με τα επικαλούμενα αστικά αδικήματα.

Οι Ενάγοντες έχουν αποτύχει και παραλείψει να αποδείξουν ή να εξηγήσουν πως τα επικαλούμενα αδικήματα συνδέονται με τους Αιτητές. Η όποια σχέση των Εναγόντων με τους Εναγομένους είναι τόσο απομακρυσμένη που μάλιστα, εν τη απουσία των εκδοτών-πραγματικών Εναγομένων, δεν μπορεί να στοιχειοθετήσει αγώγιμο δικαίωμα έναντι αυτών και ακόμα περισσότερο ούτε να θεμελιώσει καλή συζητήσιμη υπόθεση. Οι Ενάγοντες δεν έχουν αγώγιμο δικαίωμα εναντίον των Εναγομένων/Αιτητών διότι οποιονδήποτε τέτοιο δικαίωμα περνά πρώτα από τους εκκαθαριστές των εκδοτών των χρεογράφων, οι οποίοι είναι ανύπαρκτοι σ' αυτή την διαδικασία».

Σε σχέση με την πιο πάνω ισχυριζόμενη παράλειψη προσθέτουν ότι κάτω από τον τίτλο Ουσιαστικοί Εναγόμενοι, παράγραφοι 319-351 της ΕΔ Σίροτκιν, παρατίθενται τα ονόματα πέντε φυσικών προσώπων τα οποία δεν διαμένουν στη Δημοκρατία και τα οποία δεν έχουν περιληφθεί στην Αγωγή και δεν έχουν δοθεί

εξηγήσεις γιατί αυτό δεν συνέβη. Συγκεκριμένα το πρώτο πρόσωπο, ο κ. Βαλέρυ Νόσοβ, είναι υπό κράτηση στη Ρωσία και αυτό καταγράφεται ως ο λόγος για να μην συμπεριληφθεί ως Εναγόμενος.  Ο λόγος για τον οποίο δεν έχει προστεθεί ως Εναγόμενος είναι διότι αν προστίθετο η σύνδεση της Ρωσίας με την υπόθεση αυτή θα ήταν ακόμα δυνατότερη και έτσι οι Εναγόμενοι θα είχαν ακόμη ένα λόγο να δείξουν γιατί το παρόν Δικαστήριο δεν έχει δικαιοδοσία να επιληφθεί της αγωγής αυτής.  Το ίδιο ισχύει για το τρίτο, τον κ. Κατλιαρένκο. Όσον αφορά τον δεύτερο, την κα Τζάννα Μπούλοκ, η οποία είναι η Εναγόμενη 1, δεν υπάρχει οποιαδήποτε εξήγηση όσον αφορά το γιατί η αγωγή αυτή δεν κατεχωρήθη στην Νέα Υόρκη των ΗΠΑ όπου κατοικεί, παρόλο που η διεύθυνση που έχει δοθεί στο Κλητήριο Ένταλμα δεν είναι η κατοικία της.  Σε σχέση με τον τέταρτο, τον κ. ο Κουζνέτσοβ, ο οποίος είναι ο Εναγόμενος 2 (αλλά δεν εμφανίζεται) δηλώνεται ότι η παρούσα κατοικία του είναι άγνωστη στον κύριο Σίροτκιν αλλά παρόλα ταύτα στο Κλητήριο Ένταλμα δίδεται μια διεύθυνση στις ΗΠΑ η οποία είναι η ίδια με εκείνη της Εναγομένης 1.  Ξανά καμιά εξήγηση δεν δίδεται όσον αφορά το γιατί η αγωγή δεν καταχωρήθηκε στις ΗΠΑ.  Η κα Λ. Μπέζντελ που αναφέρεται μεταξύ άλλων στις παραγράφους 52 και 53 της ΕΔ Σίροτκιν δεν αναφέρεται ως ουσιαστικός Εναγόμενος ούτε και έχει περιληφθεί ως Εναγόμενη.

### Η ένσταση

Οι Ενάγοντες ενίστανται στην πιο πάνω αίτηση με παραπλήσια νομική βάση με την αίτηση, επιπλέον όμως επικαλούνται τον Ε.Κ 44/2001, άρθρα 1-6.

Οι λόγοι ένστασης έχουν ως εξής:

1. Η επίδοση του Κλητήριου Εντάλματος και/ή της ειδοποίησης και του ενδιάμεσου διατάγματος ημερομηνίας 14.8.2012 είναι ορθή και σύμφωνη με το Νόμο.

2. Δεν χρειαζόταν άδεια για σφράγιση του κλητηρίου εντάλματος

3. Η αίτηση για επίδοση εκτός δικαιοδοσίας περιλάμβανε την ορθή νομική βάση

4. Δεν υπήρξε οποιαδήποτε απόκρυψη ουσιωδών γεγονότων στην αίτηση για επίδοση εκτός δικαιοδοσίας

5. Πληρούνταν όλες οι προϋποθέσεις για επίδοση εκτός δικαιοδοσίας.

9

6. Το Δικαστήριο είχε και έχει  πλήρη δικαιοδοσία

7. Η επίδοση του Κλητήριου Εντάλματος και/ή της ειδοποίησης και του ενδιάμεσου διατάγματος ημερομηνίας 14.8.2012 έγινε ορθά σε όλους τους Εναγόμενους

8. Οι Εναγόμενοι έλαβαν γνώση των διαδικασιών έγκαιρα και είχαν την ευκαιρία να παρουσιάσουν τις θέσεις τους.

9. Οι Εναγόμενοι καταχώρησαν ένσταση στην αίτηση των Εναγόντων ημερομηνίας 1 και κωλύονται και/ή δεν δικαιούνται να προβούν στην παρούσα αίτηση.

10.     Το Επαρχιακό Δικαστήριο δεν έχει εξουσία και/ή δικαιοδοσία να ακυρώσει διάταγμα λόγο παρατυπίας στην αίτηση.

11.     Οποιαδήποτε παρατυπία διορθώνεται με την διαταγή 64.

        Περαιτέρω διά της ενόρκου δηλώσεως της κας Αποστολίδου, η οποία συνοδεύει την ένσταση, προκύπτουν τα ακόλουθα:

        Στις παραγράφους 7 και 8 της ένορκης δήλωσης της κας  Ιακωβίδου υπάρχει ισχυρισμός ότι η επίδοση στην εναγομένη 1 έχει γίνει μέσω Fedex και πως αυτή είναι λανθασμένη αφού θα έπρεπε να γίνει μέσω των Κεντρικών Αρχών με βάση το άρθρο 5(1) της Συνθήκης της Χάγης. Η πληροφόρηση που έχει η κα Ιακώβου είναι λανθασμένη απαντούν οι Ενάγοντες. Η επίδοση προς τον Εναγόμενο 2 δεν αφορά αφού η αίτηση δεν γίνεται από αυτόν. Όσον αφορά την Εναγόμενη 1 η επίδοση όλων των εγγράφων έχει γίνει μέσω των Κεντρικών Αρχών των δύο χωρών.

        Έχει καταχωρηθεί στο φάκελο του Δικαστηρίου σχετική ένορκη δήλωση της κας Ελ. Αποστολίδου ημερομηνίας 24.9.2012 με την οποία επιβεβαίωνε την ορθή επίδοση μέσω των Κεντρικών Αρχών και επισυνάπτεται ως Τεκμήριο Α στην εν λόγω ένορκο δήλωση αντίγραφο της ενόρκου δήλωση επίδοση που έγινε από επιδότη της Νέας Υόρκης. Στην συνέχεια κατατέθηκε στο φάκελο του Δικαστηρίου και βρίσκεται ενώπιον του Δικαστηρίου η πρωτότυπη ένορκη δήλωση επίδοσης του επιδότη της Νέας Υόρκης ο οποίος επιβεβαιώνει ότι επέδωσε στην Εναγομένη 1 σύμφωνα με το διάταγμα ημερομηνίας 5.9.2012.

Με βάση τα πιο πάνω η θέση που προβάλλεται στις παραγράφους 7 και 8 της Ε.Δ. Ιακώβου είναι λανθασμένη αφού η επίδοση προς την Εναγόμενη 1 έχει γίνει σύμφωνα με τα διατάγματα του Δικαστηρίου.

Όσον αφορά την επίδοση που έχει γίνει στους Εναγόμενους 7, 8 και 9 και εγείρεται στην παράγραφο 9 της Ε.Δ. Ιακώβου, αυτή έχει γίνει στο εγγεγραμμένο γραφείο της κάθε εταιρείας. Το Διάταγμα ημερομηνίας 16.8.2012 αναφέρει ρητά ότι η επίδοση στους Εναγόμενους 7, 8 και 9 θα πρέπει να γίνει στα εγγεγραμμένα τους γραφεία. Η αναφορά σε διεύθυνση είναι παρεμπίπτουσα αφού σύμφωνα με την πληροφόρηση που είχαν οι Ενάγοντες εκείνη την περίοδο το εγγεγραμμένο γραφείο βρισκόταν στην συγκεκριμένη διεύθυνση που αναγράφεται στο διάταγμα. Αυτό επιβεβαιώνεται από τα Τεκμήρια 2, 3 και 4 που συνόδευαν την Ε.Δ Αποστολίδου, ημερομηνίας 14.8.2012 προς υποστήριξη της αίτηση για άδεια επίδοσης στο εξωτερικό. Όταν, όμως το πρόσωπο που διενέργησε την επίδοση στις Βρετανικές Παρθένους Νήσους ('ΒΠΝ') επισκέφθηκε το συγκεκριμένο γραφείο του εξήγησαν ότι δεν ήταν πλέον το εγγεγραμμένο γραφείο των Εναγομένων 7, 8 και 9. Τους πληροφόρησαν ότι το εγγεγραμμένο γραφείο ήταν των Icaza Gonzalez-Ruiz & Aleman (BVI) Trust Limited, 2nd Floor, Vanterpool Plaza, Road Town, Tortola, British Virgin Islands. Τότε επισκέφθηκε το εγγεγραμμένο γραφείο των Εναγομένων 7, 8 και 9 και επέδωσε τα δικαστικά έγγραφα. Επισυνάπτεται δε ως Τεκμήριο 2 ένορκη δήλωση του J. Faulkner, ο οποίος προέβηκε στην επίδοση των δικαστικών εγγράφων στο εγγεγραμμένο γραφείο των Εναγομένων 7, 8 και 9 ο οποίος επιβεβαιώνει ότι το εγγεγραμμένο γραφείο των Εναγομένων 7, 8 και 9 την στιγμή της επίδοσης ήταν το Icaza Gonzalez-Ruiz & Aleman (BVI) Trust Limited, 2nd Floor, Vanterpool Plaza, Road Town, Tortola, British Virgin Islands όπως και έγιναν οι επιδόσεις. Επιπρόσθετα επιβεβαιώνει ότι το συγκεκριμένο γραφείο αποδέχτηκε και παρέλαβε τα έγγραφα υπό την ιδιότητα του ως εγγεγραμμένο γραφείο των Εναγομένων 7 , 8 και 9.

Συνεπακόλουθα, καταλήγει η πλευρά των Καθ' ων η Αίτηση, οι επιδόσεις στους Εναγόμενους 7, 8 και 9 έγιναν στο εγγεγραμμένο γραφείο των Εναγομένων 7, 8 και 9 σύμφωνα με το διάταγμα του δικαστηρίου ημερομηνίας 16.8.2012. Η αναφορά στο διάταγμα σε συγκεκριμένη διεύθυνση δεν θα πρέπει να εμποδίσει την ορθή επίδοση στο ορθό εγγεγραμμένο γραφείο, η αναφορά θα πρέπει να θεωρηθεί

παρεμπίπτουσα αφού σε διαφορετική περίπτωση το διάταγμα δεν θα έχει νόημα. Το σημαντικό είναι ότι τα έγγραφα επιδόθηκαν στο εγγεγραμμένο γραφείο την στιγμή της επίδοσης σύμφωνα με το διάταγμα του Δικαστηρίου.

Όσον αφορά την παράγραφο 11 η οποία εγείρει θέμα άδειας για σφράγιση του κλητηρίου αυτή είναι λανθασμένη. Στην Ε.Δ. Ιακώβου προβάλλεται ο ισχυρισμός ότι προτού προηγηθεί η επίδοση εκτός δικαιοδοσίας θα πρέπει να ληφθεί άδεια για σφράγιση παράλληλου κλητηρίου. Αυτό δεν ευσταθεί αφού οι Θεσμοί Πολιτική Δικονομίας δεν προβλέπουν την ύπαρξη παράλληλου κλητηρίου. Το κλητήριο είναι ένα και είχε ήδη σφραγισθεί με την καταχώρηση του. Είναι, εν πάση περιπτώσει παραδεκτό ότι δεν χρειαζόταν άδεια για σφράγιση κατά την καταχώρηση λόγω της ύπαρξης εναγομένων εντός της δικαιοδοσίας.

Όσον αφορά τις παραγράφους 12 και 13 της Ε.Δ. Ιακώβου, στις οποίες προβάλλεται ισχυρισμός ότι η αίτηση για επίδοση στο εξωτερικό πάσχει για το λόγο ότι δεν γίνεται σαφής προσδιορισμός και σαφής επίκληση των νομικών διατάξεων. Η θέση αυτή είναι λανθασμένη, η αίτηση αναφέρει ρητά ότι βασίζεται στις ορθές νομοθετικές πρόνοιες για σκοπούς άδειας για επίδοση εκτός δικαιοδοσίας.

Όσον αφορά τις παραγράφους 14 με 18 της Ε.Δ. Ιακώβου, σε αυτές προβάλλεται ο ισχυρισμός ότι δεν αποδείχτηκε το συζητήσιμο της υπόθεσης και η καταλληλότητα για επίδοση εκτός δικαιοδοσίας και πάλι οι Ενάγοντες απαντούν ότι η θέση αυτή δεν ευσταθεί. Στην αίτηση για άδεια επίδοσης εκτός της δικαιοδοσίας είχε υιοθετήσει η ένορκη δήλωση Sirotkin ημερομηνίας 10.8.2012 που είχε κατατεθεί προς υποστήριξη της αίτησης για έκδοση ενδιάμεσων διαταγμάτων. Το περιεχόμενο της εν λόγω ένορκης δήλωσης δείχνει ότι υπάρχει καλή συζητήσιμη υπόθεση εναντίον όλων των εναγομένων συμπεριλαμβανομένων των Αιτητών. Συγκεκριμένα, η εν λόγω ένορκη δήλωση καταδεικνύει διάφορα πραγματικά και ουσιαστικά ζητήματα και απαιτήσεις μεταξύ των Εναγόντων και των Εναγόμενων τα οποία, για λόγους που εκτίθενται στην συγκεκριμένη ένορκο δήλωση, είναι εύλογο όπως εκδικαστούν από αυτό το Δικαστήριο.

Στην Ε.Δ Sirotkin αναλύονται με λεπτομέρεια οι βάσεις αγωγής εναντίον των Εναγομένων. Όσον αφορά το θέμα του Ρωσικού δικαίου, αυτό αποτελεί θέμα

12

πραγματικής μαρτυρίας και στην απουσία προσκόμισης τέτοιας μαρτυρίας τεκμαίρεται ότι είναι το ίδιο με το Κυπριακό δίκαιο. Οι Ενάγοντες θεωρούν ότι παρουσίασαν και το Δικαστήριο είχε ενώπιον του όλη την αναγκαία μαρτυρίας με την οποία στοιχειοθετείται η ύπαρξη καλής εκ πρώτης όψεως υπόθεσης και καλές πιθανότητες επιτυχίας εναντίον των Εναγομένων.

Όσον αφορά τις παραγράφους 19 μέχρι 22 της Ε.Δ. Ιακώβου, γίνεται ισχυρισμός ότι το Δικαστήριο δεν έχει δικαιοδοσία να ακούσει την υπόθεση λόγω της συμφωνίας εκχώρησης που επισυνάπτεται ως Τεκμήριο 3 στην ένορκο δήλωση Sirotkin. Καταρχάς και υπό την προϋπόθεση, την οποία δεν αποδέχονται οι ενάγοντες, ότι το επιχείρημα των Εναγομένων ότι δεν υπάρχει αντιπαροχή είναι ορθό, το γεγονός αυτό δεν επηρεάζει τις υποχρεώσεις των Ουσιαστικών Εναγομένων. Η εγκυρότητα ή μη μίας συμφωνίας αφορά τους συμβεβλημένα μέρη και όχι οποιοδήποτε τρίτο πρόσωπο το οποίο δεν μπορεί να προβάλει ως υπεράσπιση την απουσία αντιπαροχής. Ανεξάρτητα από το πιο πάνω οι συμφωνίες μεταξύ των Εναγόντων αποτελούν ανάθεση και συνεπακόλουθα δεν χρειάζονται αντιπαροχή εν πάση περίπτωση. Ανεξάρτητα από το πιο πάνω και παρά το ότι δεν χρειάζεται αντιπαροχή τα μέρη έχουν συμφωνήσει σε αντιπαροχή με βάση τη πρώτη συμφωνία Τεκμήριο 2 στην ένορκη δήλωση κ. Sirotkin. Η τροποποίηση, τεκμήριο 3, απλά σκοπό είχε να διευκρίνηση μία ασάφεια στην πρώτη συμφωνία. Η διευκρίνηση στην ασάφεια αποτελεί αντιπαροχή και για τα δύο μέρη αφού διευκρινίζονται οι υποχρεώσεις τους. Είναι καλά νομολογημένο ότι η αντιπαροχή δεν χρειάζεται να είναι χρηματική.

Εν πάση περίπτωση και ανεξάρτητα από τα πιο πάνω, η αγωγή εναντίον των Εναγομένων έχει καταχωρηθεί εναντίον τους και από τους δυο Ενάγοντες. Είναι λανθασμένη θέση ότι οι απαιτήσεις κάτω από το κλητήριο γίνονται μόνο από τον Ενάγοντα 1.

Όσον αφορά τις παραγράφους 23 μέχρι 32 της Ε.Δ. Ιακώβου και πάλι ασχολείται με το θέμα της δικαιοδοσίας αλλά υπό διαφορετικό πρίσμα. Κατά πρώτο, έχει παρουσιαστεί μαρτυρία που εμπλέκει τους Εναγομένους με τα αστικά αδικήματα και με τις βάσεις αγωγής στις οποίες στηρίχθηκαν οι Ενάγοντες για να

ζητήσουν την έκδοση των ενδιάμεσων διαταγμάτων. Η μαρτυρία αυτή βρίσκεται στην ένορκη δήλωση Sirotkin και αναλύεται με λεπτομέρεια.

Όσον αφορά την μη συμπερίληψη προσώπων ως εναγομένων αυτό δεν επηρεάζει τη δικαιοδοσία του Δικαστηρίου επί των Εναγομένων που έχει ενώπιον του. Το Δικαστήριο έχει δικαιοδοσία με βάση τον Ευρωπαϊκό κανονισμό 44/2001 και δεν μπορεί να αποποιηθεί της δικαιοδοσίας αυτής.

Όσον αφορά την παράγραφο 33 της Ε.Δ. Ιακώβου αυτή είναι και πάλι λανθασμένη. Οι ουσιαστικοί Εναγόμενοι που βρίσκονται στην Κύπρο είναι οι Εναγόμενοι 3, 4 και 5. Η εμπλοκή τους ως ουσιαστικών Εναγομένων φαίνεται από τις παραγράφους 23, 76, 88-95, 258-303 και 132-136 της ενόρκου δήλωσης Sirotkin. Συνεπακόλουθα τα Κυπριακά Δικαστήριο έχουν δικαιοδοσίας με βάση τον κανονισμό 44/2001 και κατ' επέκταση έχουν δικαιοδοσία επί των υπόλοιπων Εναγομένων και πάλι με βάση τον κανονισμό 44/2001.

### Οι αγορεύσεις

Οι ευπαίδευτοι συνήγοροι διά των εμπεριστατωμένων αγορεύσεων τους ασχολήθηκαν με όλα τα πιο πάνω θέματα παραθέτοντας πλούσια νομολογία. Επίσης στα πλαίσια της ακροαματικής διαδικασίας της αίτησης κατατέθηκε εκ συμφώνου απόφαση Αμερικάνικου Δικαστηρίου την οποία οι ευπαίδευτοι συνήγοροι θεώρησαν ως έμμεσα σχετική με τα επίδικα θέματα αφήνοντας ωστόσο το θέμα να κριθεί από το Δικαστήριο, αν δηλαδή όντως επηρεάζει και πως τα επίδικα θέματα της παρούσας αίτησης.

### Συμπεράσματα και κατάληξη του Δικαστηρίου

- #### Ισχυρισμός για κακή επίδοση και για άλλες παρατυπίες

Βρίσκω ότι με βάση το φάκελο του Δικαστηρίου το όντι οι επιδόσεις στους Εναγόμενους 1 και 2 έγιναν με βάση τα διατάγματα ημερομηνίας 16.8.2012, και 5.9.2012 στα πλαίσια της συνθήκης της Χάγης μέσω των αρμόδιων Αρχών της Κύπρου και την ΗΠΑ. Η σχετική βεβαίωση επίδοσης στο φάκελο του Δικαστηρίου έτσι καταδεικνύει (βλ. και Ένορκη Δήλωση της κας Ελ. Αποστολίδου ημερομηνίας 24.4.2012 και Τεκμ.Α και Β επί της ίδιας Ένορκης Δήλωσης όπου βεβαιώνονται οι εν

14

λόγω επιδόσεις).   Αυτά τα έγγραφα δείχνουν ότι η επίδοση έγινε σύμφωνα με τα διατάγματα του Δικαστηρίου ημερομηνίας 16.8.2012 και 5.9.2012.

Αναφορικά τώρα με την επίδοση στους Εναγόμενους 7, 8 και 9 και πάλι καταδεικνύεται από το φάκελο του Δικαστηρίου ότι έχει συντελεσθεί στο εγγεγραμμένο γραφείο της κάθε εταιρείας.  Η όποια διαφορά στη διεύθυνση δεν έχει σημασία αρκεί να πρόκειται για το εγγεγραμμένο γραφείο των εταιρειών αυτών.  Δεν φαίνεται να είναι η θέση των Αιτητών ότι δεν είναι έτσι τα πράγματα.  Η όποια διαφορά διεύθυνσης του πραγματικού γραφείου επίδοσης και του αναφερόμενου ως διευθυντή στο διάταγμα δεν είναι – κρίνω – θεμελιακό ειδικά στη βάση ότι οι περί ου ο λόγος Εναγόμενοι έχουν όντως ειδοποιηθεί.   Οποιαδήποτε άλλη αντίληψη του πράγματος θα ήταν τεχνοκρατική. Είναι χρήσιμη η αναφορά εν προκειμένω στην υπόθεση **Φραγκέσκου ν. Γρηγορίου** (2000) 1(Γ) Α.Α.Δ. 1765 όπου τέθηκε ότι "το κύριο ερώτημα σε κάθε περίπτωση υποκατάστατης επίδοσης, όπως η λογική του πράγματος επιβάλλει, είναι **κατά πόσο ο προσφερόμενος τρόπος θα θέσει, κατά λογική προοπτική, αν όχι βεβαιότητα, το κλητήριο υπόψη του εναγομένου** (βλ. **The Annual Practice**, 1960, Vol. 1, παραγ. 133-134)".

Και αν ήθελε φανεί ότι υπήρξε κάποια παρατυπία στην επίδοση, κρίνω ότι είναι τέτοιας μορφής που δεν αγγίζει σίγουρα την ρίζα της διαδικασίας και κατά την Δ.64 είναι μια παρατυπία που δεν χρήζει καν διόρθωσης, αφού καμιά βλάβη δεν φαίνεται να προκαλείται (βλ. **Pat Joneska v.  Ξένια Δημητρίου κ.α.** (1998) 1(Γ) Α.Α.Δ. 1526).

Χρήσιμη καθοδήγηση, κρίνω, προσφέρει η πρόσφατη απόφαση του Ανωτάτου Δικαστηρίου στην υπόθεση **Alpha Bank Cyprus Ltd v. Sisenh Dau** (Π.Ε. 23/13, ημερομηνίας 13.9.2013, η οποία αν και αφορούσε μόνο επίδοση με βάση τον Ε.Κ. 1393/07, προβαίνει σε γενικότερα χρήσιμα σχόλια ως προς σειρά παρατυπιών που παρουσιάσθηκαν.

Παραθέτω κάποια αποσπάσματα της απόφασης αυτής:

*«…. Πρόκειται για τυπολατρική εισήγηση που έρχεται σε αντίθεση, όχι μόνο με το όλο πνεύμα του Κανονισμού 1393/2007/ΕΚ, αλλά και με τους δικούς μας*

*Διαδικαστικούς Κανονισμούς Πολιτικής Δικονομίας. Σημασία έχει ότι τόσο το κλητήριο, όσο και η ειδοποίηση που αποτελούσαν τα εναρκτήρια έγγραφα της διαδικασίας, περιήλθαν σε γνώση των εφεσιβλήτων.»*

........................................................................................................

*«Επομένως στις περιπτώσεις υποκατάστατης επίδοσης δυνάμει του Καν. 1393/2007, η Δ. 48. Θ. 13 αποκτά ιδιαίτερη δυναμική, ανάλογα με το αν η παράλειψη διασυνδέεται με ερημοδικία του εναγομένου. Στην προκειμένη περίπτωση δεν υπάρχει τέτοια διασύνδεση. Κατά την κρίση μας, η διαπιστούμενη παράλειψη ήταν θεραπεύσιμη, δυνάμει της Δ. 64 και σύμφωνα με το πνεύμα του Καν. 1393/2007 και τους τρόπους που προβλέπονται στο Τμήμα 2 του Κανονισμού.... Εναπόκειτο πλέον στους Εφεσείοντες να αιτηθούν από το δικαστήριο την κατάλληλη θεραπεία δυνάμει των Θεσμών Πολιτικής Δικονομίας (βλ. σχ. Dasaki Entertainment Co. Ltd v. Ιερού Ναού Παναγίας Χρυσελεούσης Στροβόλου (Αρ.2) (2009) 1 ΑΑΔ 356 και Olympia Designs (Properties) Limited v. Unique UK Inc. (2010) 1Β ΑΑΔ 1395). Στην προκειμένη περίπτωση δεν τίθεται θέμα υποβολής αίτησης για περαιτέρω θεραπεία, αφού η μονομερής αίτηση έχει πλέον περιέλθει εις γνώσιν των Εφεσιβλήτων και στην πράξη έχει αυτοθεραπευτεί.»*

........................................................................................................

*«Βέβαια σε περίπτωση που οι Εφεσίβλητοι δεν εμφανίζονταν εγκαίρως και λόγω της παράλειψης τους εκδίδετο απόφαση εναντίον τους, τότε η παράλειψη των Εφεσειόντων να συμπεριλάβουν και μετάφραση του διατάγματος, ενδεχομένως να αποκτούσε εντελώς διαφορετική διάσταση.*

........................................................................................................

*Όμως στην προκειμένη περίπτωση οι Εφεσίβλητοι δεν ερημοδίκησαν, αλλά εμφανίστηκαν ενώπιον του δικαστηρίου, έστω και υπό διαμαρτυρία. Για αυτό θεωρούμε ότι και η συγκεκριμένη παράλειψη θα μπορούσε να θεραπευθεί για τους ίδιους λόγους που έχουμε αναφέρει, με την εκ των υστέρων αποστολή πιστής μετάφρασης του διατάγματος στους Εφεσιβλήτους.»*

........................................................................................................

*«Κατά την κρίση μας τα μέρος των επτά πρωτόδικων αποφάσεων που αφορά στην ακύρωση της επίδοσης για λόγους που άπτονται παραλείψεων σε σχέση με το εθνικό δίκαιο, είναι εσφαλμένο, καθότι οι όποιες παραλείψεις θα μπορούσαν υπό τις περιστάσεις των συγκεκριμένων υποθέσεων να θεραπευθούν, σύμφωνα με το πνεύμα που καθορίζει ο ΕΚ 1393/2007. Παρά τα πολλαπλά προβλήματα που εντοπίστηκαν στον τρόπο που έγινε η επίδοση δεν προκύπτει από τα έγγραφα που αποστάληκαν για επίδοση πραγματική παραπλάνηση των Εφεσιβλήτων, αφού αυτοί εμφανίστηκαν εγκαίρως ενώπιον του Δικαστηρίου. Πέραν τούτου, οι Εφεσίβλητοι δεν προσδιόρισαν τη φύση της κατ' ισχυρισμό παραπλάνησης τους, αλλά και πιο σημαντικά τις επιπτώσεις σ' αυτούς από οποιαδήποτε πιθανή παραπλάνηση. Επομένως, δεν θα ακυρώναμε την επίδοση εκτός αν κριθεί από το ΔΕΕ ότι η επίδοση της τυποποιημένης βεβαίωσης είναι αναγκαία σε κάθε περίπτωση επίδοσης εγγράφων δυνάμει του ΕΚ 1393/2007 και ότι τυχόν παράλειψη επίδοσης της δεν είναι θεραπεύσιμη και συνιστά λόγο ακυρότητας της επίδοσης.»*

16

Είναι λοιπόν η κατάληξη ότι ο λόγος αυτός της αίτησης δεν μπορεί να πετύχει.

- **Μη ύπαρξη άδειας για σφράγιση του κλητηρίου εντάλματος για τους εκτός δικαιοδοσίας εναγομένους**

Δεν έχω πεισθεί από τους Αιτητές ότι στην  κρινόμενη περίπτωση δεν ισχύει η **Larticon Co v. Detergenta Ltd**  (2004) 1(Β) Α.Α.Δ. 1121.  Δεν έχω περαιτέρω πεισθεί ότι έχει βάση ο ισχυρισμός «περί παράλληλου κλητηρίου» (Concurrent writ) αφού κάτι τέτοιο δεν προνοείται στους δικούς μας θεσμούς.

Έχω   μελετήσει της αντίστοιχες θέσεις   με   προσοχή και με   αναφορά στην προσφερθείσα νομολογία.

Είναι χρήσιμο να παρατεθεί ουσιώδες απόσπασμα  από την **Larticon** η οποία απασχόλησε  και  τους  δύο  ευπαίδευτους  συνήγορους  με  διαφορετική  ερμηνευτική διάθεση.

Στη σελίδα 1129 της **Larticon** αναφέρονται τα ακόλουθα:

> «….. Όπως φαίνεται από τον τίτλο της αγωγής η α' εφεσίβλητη είναι εταιρεία που έχει διεύθυνση στη βιομηχανική περιοχή Ιδαλίου, ενώ η β' εφεσίβλητη είναι εταιρεία που έχει διεύθυνση στο Dusseldorf, Γερμανίας.  Η καταχώριση του κλητηρίου εντάλματος έγινε με τη σημείωση πάνω από τον τίτλο της αγωγής «Όχι για επίδοση εκτός δικαιοδοσίας στους εναγόμενους 2 χωρίς τη σχετική άδεια του Δικαστηρίου».  Το πρωτόδικο Δικαστήριο αποφάνθηκε ότι η λήψη άδειας για τη σφράγιση του κλητηρίου εντάλματος πριν από την καταχώριση του λόγω της ύπαρξης διαδίκων εκτός δικαιοδοσίας δεν ήταν αναγκαία, σύμφωνα με τις πρόνοιες της Δ. 6(1)(h), εφόσο στο κλητήριο ένταλμα εμφανίζεται εναγόμενος εντός της δικαιοδοσίας.  Η Δ. 6(1)(h) προνοεί ότι: "Subject to section 15 of the Courts of Justice Law, Cap. 11, service out of the jurisdiction of a writ of summons or notice of a writ of summons **may be allowed by the Court or a Judge whenever………… (h) Any person out of Cyprus is a necessary or proper party to an action properly brought against some other person duly served in Cyprus.**"
>
> …………………………………………………………………………………..
>
>  Επομένως το κλητήριο καλώς εκδόθηκε και παραμένει σε ισχύ»  Είναι η θέση της εφεσίβλητης ότι το πιο πάνω συμπέρασμα είναι λανθασμένο γιατί σύμφωνα με τη Διαταγή 2, θεσμός 2 των Κυπριακών Θεσμών Πολιτικής Δικονομίας, η εφεσείουσα θα έπρεπε να εξασφαλίσει την άδεια του Δικαστηρίου πριν από την καταχώριση της αγωγής.

*Η πιο πάνω προσέγγιση του πρωτόδικου Δικαστηρίου είναι ορθή. Το πρωτόδικο Δικαστήριο αντιμετώπισε σωστά το σημείο που είχε εγερθεί και δεν νομίζουμε ότι συντρέχει οποιοσδήποτε λόγος επέμβασης μας.»*

Έχοντας κατά νου όλα τα πιο πάνω μπορώ μ' ασφάλεια να καταλήξω στα ακόλουθα:

Με κανένα τρόπο δεν μπορεί να θεωρηθεί ότι χρειάζεται προηγούμενη της αγωγής άδεια για σφράγιση του κλητηρίου για εναγόμενο εκτός δικαιοδοσίας εφ' όσον υπάρχει συνεναγόμενος εντός της δικαιοδοσίας.

Σαφώς έχει κριθεί και έχει διατυπωθεί το πιο πάνω από τον Κραμβή Δ. στην υπόθεση **Niki Christoforou Cosmetics Ltd v. Στυλιανού κ.ά.** (2005) 1 ΑΑΔ 273 όπου στη σελίδα 279 επί λέξει αναφέρει:

> *«Ο χρόνος καταχώρησης της αγωγής δεν είναι άλλος από το χρόνο που το δικόγραφο παραδίδεται στο πρωτοκολλητείο για καταχώρηση και παίρνει αριθμό. Στην περίπτωση που εξετάζουμε, η αγωγή καταχωρήθηκε και πήρε αμέσως αριθμό επειδή ο ένας από τους εναγόμενους είναι Κύπριος. Η υποβολή αίτησης της λήψη άδειας για τη σφράγιση του κλητηρίου εντάλματος πριν από την καταχώρηση του λόγω της ύπαρξης των εναγομένων 2 που βρίσκονται εκτός δικαιοδοσίας δεν ήταν αναγκαία εφόσον η αγωγή στρέφεται και εναντίον εναγομένου εντός της δικαιοδοσίας του δικαστηρίου. Βλ. **Larticon Co. v. Detergenta Developments Ltd** (2004) 1 ΑΑΔ 1121. Συνεπώς δεν είναι κατά την άποψη μας λογικό οι εναγόμενοι που βρίσκονται εκτός δικαιοδοσίας να τυγχάνουν διαφορετικής μεταχείρισης από άλλους ή της εναγόμενους επί του ιδίου κλητηρίου που βρίσκονται εντός της δικαιοδοσίας του δικαστηρίου.»*

Εφ' όσον στο κλητήριο ένταλμα εμφανίζονται εναγόμενοι από τους οποίους ένας τουλάχιστον διαμένει ή εδρεύει στην Κύπρο ενώ άλλος ή άλλοι βρίσκονται εκτός Κύπρου, τότε τυγχάνουν εφαρμογής και οι πρόνοιες της Δ. 6.1(h), σύμφωνα με την οποία επίδοση εκτός δικαιοδοσίας κλητηρίου ή ειδοποίησης κλητηρίου, μπορεί να επιτραπεί οποτεδήποτε πρόσωπο εκτός Κύπρου είναι αναγκαίος ή κατάλληλος διάδικος σε αγωγή η οποία ορθά κινήθηκε εναντίον κάποιου άλλου προσώπου το οποίο διαμένει στην Κύπρο.

Στο **Annual Practice** ανωτέρω, σελ. 146, σε σχέση με το Ο. 2 r. 4 αυτή η πρόνοια θα πρέπει να διαβάζεται μαζί με την υποπαράγραφο (g) της Αγγλικής Ο. 11 r. 1.

18

Και καταλήγει ως εξής:

*«In such cases the writ is issued without leave, and the plaintiff, having served the writ on the defendant within the jurisdiction, applies for leave to issue a concurrent writ for the service on the defendant out of the jurisdiction, as stated, supra, O. 6, r. 2, (n) "Concurrent Writ" etc.»*

Σε τέτοια περίπτωση η διαταγή αυτή εφαρμόζεται σε αγωγές όπου ο διάδικος εκτός δικαιοδοσίας τυγχάνει αναγκαίος ή κατάλληλος διάδικος και το κλητήριο έχει επιδοθεί στο διάδικο εντός δικαιοδοσίας.  Κατ' αυτό τον τρόπο το κλητήριο μπορεί να εκδοθεί χωρίς άδεια και ο ενάγων αφού επιδώσει το κλητήριο στον εναγόμενο διάδικο εντός της δικαιοδοσίας, τότε αποτείνεται και ζητά άδεια σφράγισης ή άδεια επίδοσης ή έκδοσης παράλληλου κλητηρίου για επίδοση στον εναγόμενο  ο οποίος βρίσκεται εκτός της δικαιοδοσίας  (**Halbury's Laws of England**, 3rd Ed. Vol. 30 para 588).

Αυτή η ειδική πρόνοια δεν υπάρχει στους δικούς μας θεσμούς, οπότε αν και θα μπορούσε να διατυπωθεί η άποψη ότι είναι ορθότερο να ακολουθηθεί αυτή η πορεία κατ' αναλογία ωστόσο στην πραγματικότητα οι Ενάγοντες διά της αίτησης τους για επίδοση στο εξωτερικό  περιέλαβαν αυτή την θεραπεία, έστω και αν δεν ζήτησαν τυπικά άδεια "για σφράγιση" ή άδεια «για παράλληλο writ».  Ακριβώς η αίτηση τους περιλάμβανε  όλους τους σχετικούς θεσμούς αλλά και γινόταν αναφορά στα δεδομένα της υπόθεσης ώστε  το Δικαστήριο αφενός και πρωταρχικά να επιτρέψει την επίδοση εκτός της δικαιοδοσίας αλλά και αφετέρου να καθορίσει το σωστότερο τρόπο επίδοσης.

Οπότε κρίνω ότι δεν υπάρχει ο,τιδήποτε μεμπτό ή τουλάχιστον θεμελιακά άκυρο στον τρόπο που λειτούργησαν οι Ενάγοντες.

- **Προβαλλόμενα ελαττώματα της Αίτησης για άδεια για επίδοση**

Οι Αιτητές ισχυρίζονται ότι η έκδοση του διατάγματος είναι παράτυπη επειδή στην αίτηση δεν γίνεται αναφορά στο ειδικό άρθρο του νόμου που στηρίζεται.  Αυτό δεν είναι σωστό. Από την ίδια την ίδια την αίτηση προσδιορίζονται οι θεσμοί που αποτελούν τη βάση της αίτησης.  Προκύπτει από το φάκελο του Δικαστηρίου ότι η αίτηση αυτή βασίζεται στους Θεσμούς Πολιτικής Δικονομίας Δ.5 θ.θ 9 και 10, Δ.5Α,

Δ.6, Δ.48 θθ1, 2, 8(1)α.1 α.2. (e) 12 και 13, Δ. 64 θ.θ 1 και 2, στον ευρωπαϊκό κανονισμό 1393/2007 άρθρα 14 και 15, στο νόμο 40/1982 άρθρα 1, 2 και 3, στην συνθήκη της Χάγης ημερομηνίας 15.11.1965 για επίδοση εκτός δικαιοδοσίας ........»

Οπότε και ο λόγος αυτός δεν φαίνεται να έχει έρεισμα. Επίσης δεν είναι ορθό αυτό που εισηγείται η πλευρά των Αιτητών ότι δεν αναφέρονται τα συγκεκριμένα αστικά αδικήματα, οπότε και η μαρτυρία είναι ανεπαρκής. Εκείνο που έχει σημασία κατά τύπον είναι να υπάρχουν στο σώμα της αίτησης οι **<u>διατάξεις που αφορούν το αίτημα</u>**, δηλαδή οι διατάξεις επί της επίδοσης και όχι οι διατάξεις που αφορούν τη βάση αγωγής αλλά και ούτε εις βάθος αποκάλυψη αυτής της βάσης.

Κατ' αναλογία ισχύει η υπόθεση **Ντίνου Μιχαηλίδη ν. Χρήστου Πουργουρίδη** (2001) 1(B) Α.Α.Δ. 1263.

- **<u>Ισχυρισμός για μη πλήρη και ειλικρινή αποκάλυψη – ισχυρισμός για απόκρυψη ουσιωδών γεγονότων – μη πλήρωση των προϋποθέσεων για επίδοση εκτός δικαιοδοσίας – μη ύπαρξη δικαιοδοσίας του Δικαστηρίου – η απόφαση του Αμερικάνικου Δικαστηρίου και η σημασία του</u>**

Στις παραγράφους 14 έως 18 της Ε.Δ. Ιακώβου προβάλλονται διάφοροι ισχυρισμοί που περιστρέφονται γύρω από το θέμα ικανοποίησης των προϋποθέσεων για άδεια επίδοσης εκτός δικαιοδοσίας και συγκεκριμένα το συζητήσιμο της υπόθεσης και την καταλληλότητα για επίδοση.

Ο κ. Δημητριάδης στην αγόρευση του, ειδικά στις σελ.19 – 22 ανέλυσε επιμελώς τα θέματα αυτά. Ειδικά τόνισε ότι το θέμα του ρωσικού δικαίου είναι ζήτημα πραγματικής μαρτυρίας για το οποίο παρατηρείται απουσία μαρτυρίας. Επιμένει ο κ. Δημητριάδης ότι το βάρος απόδειξης υπήρχε και παραμένει στους ώμους του επιδιώκοντος επίδοση εκτός δικαιοδοσίας και ως εκ τούτου επιβεβαιώνεται η θέση των Αιτητών–Εναγομένων ότι οι Καθ΄ων η Αίτηση δεν έχουν προβεί σε πλήρη αποκάλυψη και δεν έχουν αποκαλύψει επαρκή μαρτυρία που να υποστηρίζει το συζητήσιμο της υπόθεσης και την καταλληλότητα επίδοσής της εκτός δικαιοδοσίας. Αντίθετα και μέσα από την διαδικασία που ακολουθήθηκε και ακόμα εκκρεμεί στο Δικαστήριο των Η.Π.Α

20

φαίνεται ότι το ρωσικό δίκαιο αναγνωρίζει αποκλειστική δικαιοδοσία στα ρωσικά εμπορικά δικαστήρια για αδικήματα όπως τα επικαλούμενα στην παρούσα αγωγή.

Πρόσθετα ο ευπαίδευτος συνήγορος των Αιτητών παρέθεσε και αγγλική νομολογία που φαίνεται να ενισχύει την τάση που ανατρέπει ή θέλει να θέσει εξαιρέσεις στην αρχή που επικαλούνται οι Ενάγοντες ότι στην απουσία μαρτυρίας αλλοδαπού δικαίου εφαρμόζεται το εγχώριο δίκαιο. Σύμφωνα με το αγγλικό δίκαιο έχει νομολογηθεί ότι στην απουσία μαρτυρίας αλλοδαπού δικαίου δεν εφαρμόζεται πάντα το αγγλικό, δηλαδή εν προκειμένω το Κυπριακό. (Βλ. Το σύγγραμμα **Dicey, Morris and Collins, The Conflict of Laws,** 14$^{η}$ Έκδοση, παρα. 9-025, όπου παρατίθεται απόσπασμα από την σχετική απόφαση **Shaker v. Al-Bedrawi and others** (2002) EWCA Civ. 1452).

Σε απάντηση αυτής της νομολογίας ο κ. Τσιρίδης παράθεσε πολύ πρόσφατη υπόθεση του **Mr Justice Flaux,** ημερομηνίας 3.10.2013,  No.2012, Folio 1136 στην οποία και δεν υιοθετείται η προσέγγιση που εισηγείται ο κ. Δημητριάδης.

Έχω εξετάσει τις αντίστοιχες θέσεις με προσοχή αφού έχω μελετήσει τις σχετικές αυθεντίες που οι δυο πλευρές παρέθεσαν.

Όπως έχει εξηγηθεί οι Εναγόμενοι που βρίσκονται εκτός δικαιοδοσίας είναι αναγκαίοι διάδικοι σε αγωγή στην οποία συμπεριλαμβάνονται και εναγόμενοι εντός της δικαιοδοσίας του Δικαστηρίου, γι' αυτό εξάλλου δεν χρειάστηκε η άδεια για σφράγιση του κλητηρίου εντάλματος.

Στην αίτηση για άδεια επίδοσης εκτός της δικαιοδοσίας η Ελ. Αποστολίδου υιοθέτησε την Ε.Δ. Sirotkin ημερομηνίας 10.8.2012 που είχε κατατεθεί προς υποστήριξη της αίτησης για έκδοση ενδιάμεσων διαταγμάτων.

Το περιεχόμενο της εν λόγω ένορκης δήλωσης ημερομηνίας 10.8.2012 δεικνύει ότι υπάρχει καλή συζητήσιμη υπόθεση εναντίον όλων των εναγομένων συμπεριλαμβανομένων των Αιτητών. Συγκεκριμένα, η εν λόγω ένορκη δήλωση φανερώνει ικανοποιητικά διάφορα πραγματικά και ουσιαστικά ζητήματα και απαιτήσεις μεταξύ των Εναγόντων και των Εναγόμενων τα οποία, για λόγους που

εκτίθενται στην συγκεκριμένη ένορκη δήλωση, είναι εύλογο όπως εκδικαστούν από αυτό το Δικαστήριο.

Στην ένορκη δήλωση Sirotkin αναλύονται – κρίνω – με επάρκεια οι βάσεις αγωγής εναντίον των Εναγομένων.  Και υπό το πρίσμα του άρθρου 32 οι βάσεις αυτές κρίθηκαν ότι πληρούν τις δύο πρώτες προϋποθέσεις που αντιστοιχούν με την συζητήσιμη υπόθεση που έχει σημασία στην κρινόμενη υπόθεση.  Αρκεί στην παρούσα φάση το Δικαστήριο να ικανοποιηθεί ότι έχει καταδειχθεί συζητήσιμη υπόθεση.

Κρίνω ότι αυτό εν προκειμένω καταδεικνύεται.  Αναφορικά με το θέμα του Ρωσικού δικαίου και στις αρχές που προβάλλουν οι δυο πλευρές έχω να παρατηρήσω ότι η νομική αρχή που προβάλλουν οι Ενάγοντες ότι στην απουσία μαρτυρίας ξένου δικαίου τεκμαίρεται ότι είναι το ίδιο με το Κυπριακό δεν έχω πεισθεί από την προσφερθείσα νομολογία ότι αυτή η αρχή έχει αναιρεθεί.

Δεν μπορεί να αγνοηθεί ακόμη ότι το Δικαστήριο δια της απόφασης ημερομηνίας 6.3.2013, έστω και υπό το πρίσμα του άρθρου 32 του Νόμου 14/60, επιλήφθηκε αρκετά από τα εγειρόμενα θέματα και αποφάσισε σχετικά.

Περαιτέρω γίνεται ισχυρισμός ότι το Δικαστήριο δεν έχει δικαιοδοσία να ακούσει την υπόθεση λόγω της συμφωνίας εκχώρησης που επισυνάπτεται ως Τεκμήριο 3 στην Ε.Δ Sirotkin, χωρίς όμως το γεγονός να επηρεάζει τις υποχρεώσεις των Εναγομένων. Κατ'  αρχήν μπορεί να ισχύσει ότι η εγκυρότητα ή μη μίας συμφωνίας αφορά συμβεβλημένα μέρη και όχι οποιοδήποτε τρίτο πρόσωπο το οποίο δεν μπορεί να προβάλει ως υπεράσπιση την απουσία αντιπαροχής. (Βλ. **Chitty on Contracts,** Volume I, παράγραφος 19.027).

Είναι ορθό, εξάλλου αυτό που επισημαίνεται από τους Καθ' ων η Αίτηση, ότι η αγωγή εναντίον των Εναγομένων έχει καταχωρηθεί εναντίον τους και από τους δυο Ενάγοντες. Το Δικαστήριο δεν έχει πεισθεί να θεωρήσει ότι ο ένας Ενάγοντας είναι 'τυπικός' ή 'χωρίς αγώγιμο δικαίωμα'.  Οι απαιτήσεις τους είναι κοινές και η λοιπή αξιολόγηση του θέματος αγγίζει την ουσία του πράγματος που θα κριθεί στην ακρόαση.

22

Η διεθνής δικαιοδοσία του Δικαστηρίου με βάση το Ε.Κ. 44/01 πηγάζει από την ίδια την ιδιότητα κάποιων εκ των Εναγομένων ως κατοίκων κρατών μελών. Είναι επίσης δεδομένο ότι η αγωγή στρέφεται εναντίον αρκετών Εναγομένων που διαμένουν στην Κύπρο.

Σε σχέση με το θέμα του forum conveniens είναι γνωστό ότι  Δικαστήριο δεν μπορεί να αρνηθεί δικαιοδοσία με βάση την νομική αρχή της **Owusu v. Jackson** Case C-281/02 [2005] ECR I-1383. Το Ευρωπαϊκό Δικαστήριο  έκρινε ότι το άρθρο 2 της Συνθήκης των Βρυξελλών εφαρμόζεται ακόμη και όταν οι διάδικοι είναι από το ίδιο κράτος-μέλος. Αποφάσισε ακόμη ότι η συνθήκη των Βρυξελλών εμποδίζει δικαστήριο κράτους-μέλους να αρνηθεί δικαιοδοσία στην βάση ότι άλλο κράτος θα ήταν πιο κατάλληλο.

Παρά το ότι η συνθήκη των Βρυξελλών έχει αντικατασταθεί από τον κανονισμό 44/2001, η αρχή που τέθηκε στην **Owusu** συνεχίζει να έχει εφαρμογή και βλ. **Private International law**, 14η Έκδοση των Cheshire, North & Fawcett στην σελίδα 325).  Μάλιστα η αρχή που τέθηκε στην **Owusu** εφαρμόζεται ακόμη και όταν η κατ' ισχυρισμό καταλληλότερη δικαιοδοσία είναι κράτους – μη μέλους, όπως στην παρούσα περίπτωση, όπου γίνεται ισχυρισμός ότι το forum conveniens είναι η Ρωσία.

Στην παρούσα περίπτωση τα Δικαστήριο της Κύπρου έχουν δικαιοδοσία με βάση το άρθρο 2 του κανονισμού 44/2001 αφού οι Εναγόμενοι 3, 4 και 5 είναι Κυπριακές εταιρείες αλλά και άλλοι Εναγόμενοι από άλλες χώρες-μέλη. Συνεπώς το Δικαστήριο δεν μπορεί να αρνηθεί δικαιοδοσία με βάση την νομική αρχή της **Owusu**.

Παρατηρείται πάντως ότι η πλευρά των Αιτητών δεν εξέφρασε την θέση ότι ο Κ.44/01 δεν τυγχάνει εφαρμογής.

Όσον αφορά τους υπόλοιπους εναγόμενους (πλην πιθανόν της Εναγομένης 1 που δεν έχει την κατοικία της στην Ευρωπαϊκή Ένωση), το Κυπριακό Δικαστήριο έχει δικαιοδοσία με βάση το άρθρο 6.1 αφού θεωρούνται ως αναγκαίοι διάδικοι.

Στο σύγγραμμα **Cheshire & North**, ανωτέρω, αναφέρεται ότι η αρχή που τέθηκε στην υπόθεση **Owusu** επεκτείνεται πέραν του άρθρου 2 του κανονισμού για να καλύψει και την δικαιοδοσία με βάση το άρθρο 6. Στην σελίδα 326 αναφέρεται:

> *"Admittedly the wording of special jurisdiction under articles 5, 6 and 7 and Sections 3, 4 and 5 of the Regulation is less obviously mandatory that the wording of Article 2. Nonetheless, there is no hint in the wording of Article 5, 6 and 7 and Sections 3, 4 and 5 that the principles laid down in these provisions can be derogated from. Owusu has been applied by GLOSTER J where jurisdiction was based on Article 6(1). In her view it would equally apply whenever there is jurisdiction under the Regulation"*

Στην υπόθεση **Viking Line Abp v. (1)The International Transport Workers' Federation, (2) The Finnish Seamen's Union** (2005) EWHC 1222 εφαρμόστηκε η αρχή που τέθηκε στην **Owusu** σε δικαιοδοσία με βάση το άρθρο 6.1 δηλαδή την ίδια δικαιοδοσία που οι Ενάγοντες επικαλούνται στην παρούσα υπόθεση όσον αφορά τους Ουσιαστικούς Εναγόμενους που βρίσκονται εκτός δικαιοδοσίας.

Στη βάση των πιο πάνω, ο ισχυρισμός ότι η Ρωσία ή η ΗΠΑ ή άλλη χώρα είναι η καταλληλότερη δικαιοδοσία δεν φαίνεται να στοιχειοθετείται. Ενόψει των νομικών αρχών που τέθηκαν στην **Owusu** και την **Viking Line Abp** οι οποίες εφαρμόζονται στην παρούσα υπόθεση συμφωνώ με τους Καθ' ων η Αίτηση ότι δεν υπάρχει λόγος να αναλυθεί πόσοι ή ποιοι εναγόμενοι διαμένουν που ή πόσοι εναγόμενοι θα μπορούσαν να προστεθούν στην επίδικη διαδικασία. Ούτε και η ανάλυση όσον αφορά τη χώρα στην οποία διαδραματίστηκαν τα γεγονότα έχει οποιοδήποτε ουσιαστικό αποτέλεσμα. Το Δικαστήριο έχει δικαιοδοσία με βάση το κανονισμό 44/2001 και οι περιστάσεις εν προκειμένω δεν συνηγορούν υπέρ της αποποίησης δικαιοδοσίας.

Αναφορικά με την Εναγόμενη 1, ακόμα και αν ήθελε θεωρηθεί ότι δεν εφαρμόζεται ο ΕΚ 44/2001 και οι αρχές της **Owusu** σε αυτή διότι είναι κάτοικος των Η.Π.Α., δεν θα ήταν ορθό για το δικαστήριο να αναστείλει τη διαδικασία αναφορικά με την εναγόμενη αυτή μόνο για λόγους forum conveniens από τη στιγμή που η διαδικασία εναντίον των υπολοίπων εναγομένων θα συνεχίσει στην Κύπρο εφόσον το Κυπριακό Δικαστήριο έχει δικαιοδοσία. Όντως θα προκαλείτο ένα παράλογο αποτέλεσμα αν το Δικαστήριο αποφάσιζε ότι δεν είναι το κατάλληλο forum να

24

εκδικάσει την υπόθεση μόνον εναντίον της Εναγομένης 1.   Αυτό θα προκαλούσε παράλληλες διαδικασίες σε διαφορετικά δικαστήρια με πιθανές συγκρουόμενες αποφάσεις και πολλαπλά δικαστικά και δικηγορικά έξοδα. (Βλ. **AG of Zambia v. Meer Care & Desai** (2005) EWHC 2102).

Άλλωστε θα ήταν παράλογο σε μια διαδικασία που ήδη κρίθηκε για διάφορους Εναγομένους το βάσιμο του ενδιαμέσου διατάγματος παγοποίησης αλλά και η έκδοση διαταγμάτων τύπου Norwich, στη βάση ακριβώς της κατ' αρχήν ύπαρξης δικαιοδοσίας αλλά και αναγκαιότητας της αποκάλυψης στοιχείων να αφαιρεθεί από το σκηνικό των ισχυριζόμενων αδικοπραξιών ένας μεγάλος αριθμός Εναγομένων που οι πράξεις ή οι ενέργειες του φαίνονται σχετικές.

Αναφορικά με την απόφαση των ΗΠΑ ημερομηνίας 7.6.2013 που κατατέθηκε εκ συμφώνου και έχει εφεσιβληθεί, παρατηρώ ότι σ'  αυτή δεν εξετάσθηκε η καταλληλότητα της Κύπρου ως δέουσας δικαιοδοσίας.  Αυτό είναι αρκετό, κατά την κρίση μου, για να μην έχει εν τέλει σημασία για την παρούσα αγωγή το τι αποφάσισε το Αμερικάνικο Δικαστήριο.

Για τους λόγους που έχω εξηγήσει κρίνω ότι η αίτηση πρέπει να απορριφθεί και απορρίπτεται με έξοδα υπέρ των Καθ'  ων η Αίτηση-Εναγόντων, όπως θα υπολογιστούν από τον Πρωτοκολλητή και εγκριθούν από το Δικαστήριο και τα οποία να πληρωθούν στο τέλος της αγωγής.

(Υπ.) …………………………………
Τ. Ψαρά-Μιλτιάδου, Π.Ε.Δ.

Πιστό Αντίγραφο,


Πρωτοκολλητής
ΕΠ
Subject:  Civil / Other Actions / Interim
Αναφορά:  Αίτηση για ακύρωση κλητηρίου εκτός δικαιοδοσίας και/ή επίδοσης του