UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Application of GORSOAN LIMITED and GAZPROMBANK OJSC for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding,<br><br>Petitioners. | Case No. 1:13-mc-00397<br>ECF CASE |

**MEMORANDUM OF LAW OF GORSOAN LIMITED AND GAZPROMBANK OJSC IN OPPOSITION TO MOTION TO VACATE THE DISCOVERY ORDER AND QUASH THE SUBPOENAS**

WHITE & CASE LLP
1155 Avenue of the Americas
New York, New York 10036-2787
Telephone: (212) 819-8200
Facsimile: (212) 354-8113

*Attorneys for Petitioners Gorsoan Limited and Gazprombank OJSC*

**TABLE OF CONTENTS**

Page

**PRELIMINARY STATEMENT** ................................................................................................ 1

**ARGUMENT** .............................................................................................................................. 3

I. **NO VALID BASIS IS OFFERED FOR QUASHING SUBPOENAS SERVED PURSUANT TO THIS COURT'S SECTION 1782 DISCOVERY ORDER** ........... 3

    a. *The Motion Concedes That All of the Statutory Elements Needed for Section 1782 Discovery Are Present* ....................................................................... 3

    b. *There Is No Requirement That Foreign Discovery Be Exhausted Before Section 1782 Discovery Can Be Ordered* .................................................... 4

    c. *Bullock Has Ignored Cypriot Court Orders, and Her Appeal of Those Orders Is Irrelevant to Section 1782* ......................................................................... 6

    d. *Movants Have Failed To Carry Their Burden of Demonstrating the Non-Receptivity of the Limassol District Court* ................................................... 8

    e. *The Subpoenas Seek Discrete Categories of Evidence Directly Relevant to Petitioners' Claims in the Cypriot Court* ................................................... 10

II. **THE MOTION REPEATS IRRELEVANT AND UNSUPPORTED ALLEGATIONS FROM AN ACTION ALREADY DISMISSED** .......................... 12

    a. *Bullock and RIG LLC Cannot Relitigate Here Claims Already Dismissed by Judge Furman* ....................................................................................... 12

    b. *The Section 1782 Application Is Proper on Its Face* .................................. 13

III. **THERE IS NO BASIS FOR "RECIPROCAL" DISCOVERY WHEN BULLOCK HAS FLOUTED CYPRUS DISCOVERY ORDERS AND CHOSEN NOT TO PURSUE DISCOVERY THERE** ............................................. 14

IV. **MOVANTS HAVE NOT ATTEMPTED TO MEET AND CONFER ON THE SCOPE OF THE SUBPOENAS AND ANY VALID CONFIDENTIALITY CONCERNS COULD BE MET BY AN APPROPRIATE ORDER** ....................... 15

**CONCLUSION** ........................................................................................................................ 16

NEWYORK 9092094

**TABLE OF AUTHORITIES**

**CASES**

Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chtd. Intl (USA) Ltd., 785 F. Supp. 2d 434 (S.D.N.Y. 2011) ............................................................................................................... 13

Brandi-Dohrn v. IKB Deutsche Industriebank AG, 673 F.3d 76 (2d Cir. 2012) ....................... 3, 4, 7

In re Application of Bank of Cyprus Public Co. Ltd., 2:10-mc-00294 (D.N.J. Jan. 13, 2011) ......... 9

In re Application of Euromepa S.A., 51 F.3d 1095 (2d Cir. 1995) ................................................. 7

In re Application of iManagement Svcs. Ltd., No. 05-mc-89, 2005 WL 1959702
    (E.D.N.Y. Aug. 16, 2005) ....................................................................................................... 5, 15

In re Application of Malev Hungarian Airlines, 964 F.2d 97 (2d Cir. 1992) ................................... 5

In re Application of Servicio Pan Americano de Proteccion, C.A., 354 F. Supp. 2d 269
    (S.D.N.Y. 2004) ............................................................................................................................ 7

In re Auto-Guadeloupe Investissement S.A., No. 12-mc-221, 2012 U.S. Dist. LEXIS 147379
    (S.D.N.Y. Oct. 10, 2012) ............................................................................................................. 7

In re Chevron Corp., 749 F. Supp.2d 141 (S.D.N.Y. 2010) ........................................................ 11

In re Consorcio Minero, No. 11-mc-354, 2012 WL 1059916 (S.D.N.Y. 2012) ........................... 15

In re Esses, 101 F.3d 873 (2d Cir. 1996) ............................................................................. 7, 8, 10

In re Godfrey, 526 F. Supp. 2d 481 (S.D.N.Y. 2007) ................................................................. 11

In re Gushlak, No. 11-mc-218, 2011 WL 3651268 (E.D.N.Y. Aug. 17, 2011),
    aff'd 486 Fed. Appx. 215 (2d Cir. 2012) .............................................................................. 3, 5, 7

In re Kreke Immobilien KG, No. 13-mc-110, 2013 WL 5966916 (S.D.N.Y. Nov. 8, 2013) ........... 11

In re Levy, 249 F.R.D. 96 (S.D.N.Y. 2008) .............................................................................. 8, 13

In re Metallgesellschaft, 121 F.3d 77 (2d Cir. 1997) ..................................................................... 4

In re Microsoft Corp., 428 F. Supp. 2d 188 (S.D.N.Y. 2006) ................................................ 5, 8, 11

In re Sarrio, S.A., 119 F.3d 143 (2d Cir. 1997) .......................................................................... 11

Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241 (2004) ...................................... passim

RIGroup LLC v. Trefonisco Mgmt. Ltd., No. 12-cv-3721, 2013 WL 2458855 (S.D.N.Y. June 7, 2013) ..............................................................................................12, 13

Schmitz v. Bernstein, 376 F.3d 79 (2d Cir. 2004) ........................................................5, 8

Weber v. Finker, 554 F.3d 1379 (11th Cir. 2009) ..............................................................9

## STATUTES AND RULES

28 U.S.C. § 1782 ................................................................................................... passim

## MISCELLANEOUS

Conclusions and Recommendations of the Special Commission on the Practical Operation of The Hague Apostille, Evidence and Service Conventions, Oct 28-Nov 4, 2003 ¶ 29, *available at* http://www.hcch.net/upload/wop/lse_concl_e.pdf ..........................................................9

NEWYORK 9092094

Petitioners Gorsoan Limited ("Gorsoan") and Gazprombank OJSC ("GPB") respectfully submit this memorandum of law in opposition to the motion ("Motion") of Janna Bullock ("Bullock"), RIGroup LLC ("RIG LLC"), Stuart Smith ("Smith") and Zoe Bullock Remmel ("Remmel" and collectively with Bullock, RIG LLC and Smith, the "Movants") for an order vacating this Court's order granting Petitioners discovery via subpoenas served upon Movants under 28 U.S.C. § 1782 (the "Section 1782 Discovery Order"). The First Supplemental Declaration of Alexandros Tsirides filed herewith is referred to as "Supp. Tsirides Decl."[1]

**PRELIMINARY STATEMENT**

The Motion presents no valid reason for vacating the Section 1782 Discovery Order. *First*, the Motion concedes that all of the statutory elements for discovery under 28 U.S.C. § 1782 ("Section 1782") are present as to all Movants. *Second*, the discretionary considerations identified by the Supreme Court in Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 264-65 (2004), all favor enforcing the Section 1782 Discovery Order. Contrary to Movants' arguments, Section 1782, by its terms, is designed to aid foreign tribunals *and litigant*s in obtaining evidence for use in foreign proceedings, and contains no requirement that discovery efforts in the foreign proceedings first be exhausted (or, indeed, even initiated). Movants fail to carry *their* burden on the issue of the foreign tribunal's receptivity, offering no "authoritative proof" that the District Court of Limassol (the "Cyprus Court") would reject evidence obtained under this Court's Section 1782 Discovery Order. Nor does the Motion point to any "proof

---

[1] Petitioners' Memorandum of Law filed in support of their application under Section 1782 (Dkt. No. 2), the Declaration of Owen C. Pell ("Pell Declaration" or "Pell Decl.") dated November 26, 2013 together with all exhibits thereto (Dkt. No. 3), and the Declaration of Alexandros Tsirides (Tsirides Declaration or "Tsirides Decl.") dated November 26, 2013 together with all exhibits thereto (Dkt. No. 4) are incorporated herein by reference. Citations to the Memorandum of Law filed in support of the Motion shall be referred to as "MOL" and the declarations filed with the Motion shall be referred to as "Bullock Declaration" or "Bullock Decl." and "Demetriades Declaration" or "Demetriades Decl."

1

gathering limits" or policies in Cyprus (a common law jurisdiction) that would be frustrated by the discovery sought under Section 1782.

The subpoena served on Bullock seeks information available in this District that goes directly to the claims asserted against her and others in the Cyprus Proceeding (as defined in the Section 1782 Discovery Order), including discovery that the Cyprus Court has already ordered Bullock to provide—orders that Bullock has defied and that remain in force despite her appeals in Cyprus. Nor have Movants RIG LLC, Smith or Bullock put forward any basis to quash carefully drawn subpoenas seeking pertinent information based on uncontested submissions in the Cyprus Proceeding.

Lacking meritorious grounds for resisting discovery under Section 1782, the Motion, including the accompanying Bullock Declaration, instead recycles failed allegations against Petitioners already rejected in a separate action that this Court dismissed last year—which failed allegations bear no relevance to this Section 1782 proceeding.

*Third*, given that Bullock has refused to comply with discovery orders by the Cyprus Court and has never even sought discovery in the Cyprus Proceeding, there is no basis for allowing her to use these proceedings suddenly to request "reciprocal" discovery. Indeed, to grant that request would be to reward Bullock's defiance of the Cyprus Court, something none of the cases allowing reciprocal discovery condone. Similarly, it is telling that in the month since the subpoenas in this action were served, none of the Movants even has attempted to meet and confer with Petitioners nor taken any steps to define any alleged confidentiality concerns, and the Motion does not even explain why any such concerns, even if valid, could not be addressed by an appropriate order under the Federal Rules. Accordingly, the Motion should be denied.

## ARGUMENT

I. **NO VALID BASIS IS OFFERED FOR QUASHING SUBPOENAS SERVED PURSUANT TO THIS COURT'S SECTION 1782 DISCOVERY ORDER.**

The Motion provides no reason to disturb the Section 1782 Discovery Order. Indeed, Movants concede all the statutory elements and all of the Intel discretionary factors favor granting the requested discovery for use in the Cyprus Proceeding.

> *a. The Motion Concedes That All of the Statutory Elements Needed for Section 1782 Discovery Are Present.*

Discovery under Section 1782 is authorized where the following statutory elements are present: "(1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a foreign proceeding before a foreign tribunal, and (3) the application is made by a foreign or international tribunal or any interested person." Brandi-Dohrn v. IKB Deutsche Industriebank AG, 673 F.3d 76, 80 (2d Cir. 2012).

The Motion nowhere argues that these statutory requirements are lacking. See MOL at 4. Bullock, Smith and Remmel are all found in Manhattan (where they were served), and RIG LLC, a Delaware company, has its principal place of business in New York City. See Pell Decl. ¶¶ 2-6, Pell Ex. 2, at 3. Petitioners seek discovery for use in the Cyprus Proceeding—plainly a foreign proceeding before a foreign tribunal. Gorsoan and GPB are each "interested persons" under Section 1782 insofar as they are plaintiffs in the Cyprus Proceeding. The Motion thus concedes that the Court had the statutory authority for the Section 1782 Discovery Order. Cf. In re Gushlak, 486 Fed. Appx. 215, 218 (2d Cir. 2012).

3

> **b. There Is No Requirement That Foreign Discovery Be Exhausted Before Section 1782 Discovery Can Be Ordered.**

In Intel, the Supreme Court identified several non-exhaustive factors for courts to consider when exercising their discretion under Section 1782 after determining that discovery could be authorized under the statute: (i) whether the person from whom discovery is sought is a participant in the foreign proceeding, (ii) the receptivity of the foreign tribunal to discovery assistance from a U.S. court, (iii) whether the discovery request conceals an attempt to circumvent foreign proof-gathering restrictions, and (iv) whether the request is unduly intrusive or burdensome.  See 542 U.S. at 264-65.  The Second Circuit has also instructed that "district courts must exercise their discretion under § 1782 in light of the twin aims of the statute: 'providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts.'"  Brandi-Dohrn, 673 F.3d at 81 (quoting In re Metallgesellschaft, 121 F.3d 77, 79 (2d Cir. 1997)).  Not only is there no support for Movants' position, if adopted, it would *undermine* both of these objectives.

The Motion argues that discovery should not proceed here because the "Cyprus court[] can attend to discovery pursuant to long-established Cypriot procedural rules" and can order parties there to produce evidence.  See MOL at 7.  Movants also argue that discovery is "entirely premature" because so-called "claims-related" discovery has not yet been ordered in the Cyprus Proceeding.[2]  Id. at 8-9.  They further urge that the subpoenas be quashed "because they are wholly duplicative of discovery . . . that *may* take place in connection with the ongoing Cyprus Proceedings."  Id. at 10 (emphasis added).

---

[2] The Motion attempts to distinguish between "claims-based" and "asset-based" discovery, even though Movants' Cypriot counsel offers no authority on this point.  Petitioners' Cypriot counsel has refuted this and does not "know of any such formal distinction recognized or enforced under Cypriot law."  Supp. Tsirides Decl. ¶ 4.

4

All these arguments fly in the face of Second Circuit authority that rejects the idea that "interested persons" must first exhaust foreign discovery before using Section 1782. Indeed, both before and after Intel, courts in the Second Circuit expressly rejected any "exhaustion requirement." See In re Application of Malev Hungarian Airlines, 964 F.2d 97, 100 (2d Cir. 1992) ("We find nothing in the text of 28 U.S.C. § 1782 which would support a quasi-exhaustion requirement[.]"); In re Application of iManagement Svcs. Ltd., No. 05-mc-89, 2005 WL 1959702, at *5 (E.D.N.Y. Aug. 16, 2005) ("§ 1782 does not contain an exhaustion requirement that would impose upon an applicant a duty to first seek the requested discovery from the foreign court"); In re Gushlak, No. 11-mc-218, 2011 WL 3651268, at *5 (E.D.N.Y. Aug. 17, 2011) ("[T]he possibility that the Grand Court will rule on discovery requests similar to the ones at issue here does not weigh against granting. Requiring Petitioner to wait for the outcome of the Grand Court's discovery proceedings would amount to enforcing such an "exhaustion" requirement."), aff'd 486 Fed. Appx. 215 (2d Cir. 2012).[3]

That the Supreme Court in Intel made clear that Section 1782 can be used even when a foreign proceeding is "within reasonable contemplation" but has not yet been commenced, 542 U.S. at 249, makes Movants' arguments untenable. As such, the Second Circuit has cautioned that conditioning Section 1782 on exhaustion "would undermine the polic[ies] of improving procedures for assistance to foreign and international tribunals . . . [and] of prompting foreign courts to act similarly based on our own generous example." In re Malev, 964 F.2d at 100.

---

[3] Neither In re Microsoft Corp., 428 F. Supp. 2d 188 (S.D.N.Y. 2006) nor Schmitz v. Bernstein, 376 F.3d 79 (2d Cir. 2004) can help Movants because both turned on the courts' awareness of an "express objection [to Section 1782 discovery] by the foreign court where the underlying proceeding is pending," Microsoft, 428 F. Supp. 2d at 194—and not on any failure by petitioners to exhaust foreign discovery options. Here, in any event, the Cyprus Court has not objected at all to the Section 1782 application here. See Supp. Tsirides Decl. ¶ 12.

### c. *Bullock Has Ignored Cypriot Court Orders, and Her Appeal of Those Orders Is Irrelevant to Section 1782.*

While contending that certain kinds of discovery has not yet taken place in Cyprus, Movants cannot avoid acknowledging that the Cyprus Court has ordered Bullock and other defendants to provide substantial discovery.  See MOL at 8 (referring to the "Freezing and Disclosure Order entered by the Cypriot court on March 6, 2013").  There is no question that Bullock has defied those orders, and now the Motion argues that these orders are not enforceable pending Bullock's appeal.  See id.  As an initial matter, this argument is irrelevant because Section 1782 discovery never hinged on discovery moving ahead in Cyprus.  In any event, Cypriot law is definitive that Bullock's appeal does not stay the discovery orders against her.  See Supp. Tsirides Decl. ¶¶ 5-7.

The Cyprus Court issued a Freezing and Disclosure Order on March 6, 2013, commanding Bullock and other defendants, among other things, to "disclose all their assets exceeding €10,000 anywhere in the world."  Supp. Tsirides Decl. ¶ 3, Tsirides Ex. 1.  Contrary to the Motion's unsupported assertion that Bullock "has not yet been personally served with the Freezing and Disclosure Order," (MOL at 8) Bullock *has been* personally served by a process server in New York—something Bullock apparently did not tell her Cypriot counsel.  Petitioners have provided the Affidavit of Service, and this service complied with Cypriot law.  Id. ¶¶ 8-10, Tsirides Ex. 2-3.  Hence, Bullock's "time to respond" (MOL at 8) had been over seven months when Petitioners filed their Section 1782 application.  Bullock has to date refused to comply with the Freezing and Disclosure Order.  Id. ¶ 11.

Unlike Movants' Cypriot counsel, who offered no Cypriot law, Petitioners have shown that under the express terms of the applicable Cypriot procedural rules, the pending appeal by Bullock in Cyprus did not suspend the enforceability of the Freezing and Disclosure Order, and

none of the defendants in the Cyprus Proceeding has applied for a stay of that order. Supp. Tsirides Decl. ¶¶ 5-7. As such, Movants are effectively asking this Court for relief they never even bothered to seek in Cyprus. In any case, the Second Circuit has made clear that an appeal in foreign proceedings is not a reason to deny discovery under Section 1782. See Brandi-Dohrn, 673 F.3d at 82-84 (reversing an order quashing subpoenas). Even if Bullock's appeal of the Freezing and Disclosure Order ultimately succeeds in Cyprus, the law in this Circuit is that "courts should err on the side of ordering discovery, since foreign courts can easily disregard material they do not wish to consider." In re Gushlak, 2011 WL 3651268, at *4 (citing In re Application of Euromepa S.A., 51 F.3d 1095, 1101 (2d Cir. 1995)).[4]

Nor does Bullock's presence as a defendant in Cyprus (which is not an issue for RIG LLC, Smith or Remmel) exempt her from Section 1782 discovery. This Court has ordered Section 1782 discovery against a global bank that was party to Venezuelan litigation, where (as Bullock here) the bank refused to provide information in support of discovery requests in the Venezuelan court. See In re Application of Servicio Pan Americano de Proteccion, C.A., 354 F. Supp. 2d 269, 274 (S.D.N.Y. 2004). Judge Patterson recently adopted this reasoning when ordering Section 1782 discovery against a party to French litigation. See In re Auto-Guadeloupe Investissement S.A., No. 12-mc-221, 2012 U.S. Dist. LEXIS 147379, at *16-17 (S.D.N.Y. Oct. 10, 2012) (denying motion to quash subpoena). Here, Bullock's defiance of the Cyprus Court's discovery order is a compelling reason to permit Section 1782 discovery to proceed.

---

[4] Far from supporting their arguments, Second Circuit decisions cited by Movants (MOL at 13) repeat the guidance that "it is far preferable for a district court to reconcile whatever misgivings it may have about the impact of its participation in the foreign litigation by issuing a closely tailored discovery order than by simply denying relief outright." See, e.g., In re Esses, 101 F.3d 873, 876 (2d Cir. 1996).

### d. Movants Have Failed To Carry Their Burden of Demonstrating the Non-Receptivity of the Limassol District Court.

The Motion suggests incorrectly (MOL at 7) that it is Petitioners' burden under Intel to show that the Cyprus court will be receptive to U.S. discovery.  See 542 U.S. at 264 (instructing courts to look to "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign . . . court to U.S. federal-court judicial assistance").  Settled law, however, holds that Movants bear the burden of showing the Cyprus Court's non-receptivity, and Movants have failed to carry their burden because they have offered no authoritative proof that the Cyprus Court would reject any evidence obtained here.

Tellingly, the cases cited by Movants themselves (MOL at 5, 13) establish that "only upon 'authoritative proof that a foreign tribunal would *reject* evidence obtained with the aid of section 1782,' should a district court refrain from granting the assistance offered" under Section 1782.  In re Esses, 101 F.3d at 876 (emphasis in original).  Esses also placed the burden of that showing on the party resisting Section 1782 discovery.  Id.  See also In re Levy, 249 F.R.D. 96, 107 (S.D.N.Y. 2008) (ordering Section 1782 discovery where "[a]lthough no foreign government or court has affirmatively requested the assistance of this Court in obtaining discovery, this is not a case where the foreign forums have been expressly unreceptive" to U.S. discovery).[5]

Notably, Bullock's Cypriot counsel says nothing about the Cyprus Court's receptivity to evidence obtained here, limiting his declaration to his understanding that the Cyprus Court has not ordered discovery from non-parties.  Demetriades Decl. ¶¶ 4-5.  First, this "understanding" is wrong, as shown by Petitioners' evidence of substantial third-party discovery in the Cyprus

---

[5] As noted above, Microsoft and Schmitz applied this same standard, but in those cases, unlike this case, the European Commission (in Microsoft) and the German government (in Schmitz) loudly and expressly voiced their objection to the use of discovery obtained through Section 1782.  428 F. Supp.2d at 194-95; 376 F.3d at 82-84.  Here, no such evidence has been offered by Movants.  See Supp. Tsirides Decl. ¶ 12.

8

Proceeding.  See Tsirides Decl. at ¶¶ 7, 36a, 36b.  In any event, the absence of certain discovery in Cyprus is irrelevant to the receptivity issue.  As Petitioners' expert has noted, "nothing under Cyprus law restricts the ability of private litigants in the Cyprus Court from seeking discovery from the United States through 28 U.S.C. § 1782, or has any bearing on the Cyprus Court's receptivity of discovery from the Section 1782 Proceeding."  Supp. Tsirides Decl. ¶ 12.

Movants also cite parts of a declaration that the Republic of Cyprus made under Article 23 of the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil and Commercial Matters (the "Hague Evidence Convention").  MOL at 8-9.  But the Hague Evidence Convention generally, and Cyprus' declaration (which is shared by dozens of other State Parties and is intended to insure that Letters of Request would only be executed in response to sufficiently substantiated requests from foreign courts)[6] do not govern or restrict private litigants in the Cyprus Court from seeking U.S. discovery under Section 1782.  Indeed, as ignored by Movants, notwithstanding this reservation by Cyprus, U.S. courts have granted Section 1782 discovery in aid of Cypriot proceedings.  See In re Application of Bank of Cyprus Public Co. Ltd., 2:10-mc-00294 (D.N.J. Jan. 13, 2011) (granting Section 1782 application in connection with a Cypriot civil proceeding); Weber v. Finker, 554 F.3d 1379 (11th Cir. 2009) (affirming order compelling Section 1782 discovery for use in Cypriot civil action).  Accordingly, there is no basis for Movants' claim that Petitioners' are "attempt[ing] to circumvent the procedural rules" of the Cyprus Court.  MOL at 9.  As shown, in fact the opposite is true, and Movants have failed to show that Cypriot law has any relevance here.

---

[6] See Conclusions and Recommendations of the Special Commission on the Practical Operation of The Hague Apostille, Evidence and Service Conventions, Oct 28-Nov 4, 2003 ¶ 29, *available at* http://www.hcch.net/upload/wop/lse_concl_e.pdf (last viewed Jan. 13, 2014).

> **e. The Subpoenas Seek Discrete Categories of Evidence Directly Relevant to Petitioners' Claims in the Cypriot Court.**

Movants characterize the subpoenas as "grossly and needlessly overbroad" and assert without support that the subpoenas seek documents not located here (although without denying that Movants are located here). MOL at 11. Cases cited in the Motion, however, do not support quashing appropriate subpoenas where they can otherwise be " tailored," In re Esses, 101 F.3d at 876, and, in any event, Movants have not shown that the subpoenas here seek anything other than discrete categories of documents and deposition testimony from persons present in this District that would materially aid Petitioners in the Cyprus Proceeding.

In the subpoena served on Bullock, the document requests and deposition topics concern four areas of inquiry crucial to the Cyprus Proceeding:

- Information about Bullock's assets that the Cyprus Court has already ordered Bullock to disclose in the Freezing and Disclosure Order (which Bullock has defied), including trust structures already disclosed through third-party discovery;

- Information about Bullock's relationships with companies believed to be implicated in the fraud alleged in the Cyprus Proceeding (including Solferino Developments S.A. ("Solferino"));

- Information about Bullock's knowledge of Moscow Region bond programs that were allegedly defrauded per the claims in the Cyprus Proceeding; and

- Information about Bullock's communications with individuals and corporate service companies who are either co-conspirators in or witnesses of the fraud alleged in the Cyprus Proceeding.

The subpoena served upon RIG LLC (which is not a party in the Cyprus Proceeding and which Bullock affirms she is the sole member of (Bullock Decl. ¶ 1)) also seeks production of documents regarding these key areas (other than the asset information sought in the Freezing and Disclosure Order) because it is plausible that Bullock may maintain such records in the files of her U.S. company rather than in her personal files.

10

The discovery sought from Smith focuses on three areas of inquiry that are also important to the Cyprus Proceeding (in which Smith is not a party):

- Information about Smith's knowledge of and participation in the affairs of Solferino (a defendant in the Cyprus Proceeding), of which Smith is believed to have been a Board member, and his communications regarding Solferino;

- Information about Smith's relationship with certain U.S., Russian and Cypriot companies believed to have been beneficially owned and/or controlled by Bullock;

- Non-privileged information about Smith's involvement in a 2012 arbitration in New York between RIG LLC and a Cypriot entity (Laziar Holdings Limited) that is a defendant in the Cyprus Proceeding.[7]

The discovery sought from Remmel (also not a party in the Cyprus Proceeding) is even narrower, focusing only on her knowledge of and communications regarding Solferino (of which she is believed to have been a Board member, together with Bullock and Smith).

Movants' assertion that many of their documents "are not located in the United States" (MOL at 11) not only is unsupported, but is irrelevant. They are present in this District and to the extent they have control over documents they can produce them.[8] Similarly, given that Movants are located here, their *deposition* testimony certainly is accessible here. In sum, there is no basis for Movants to claim that the subpoenas are "unduly intrusive or burdensome" (as part

---

[7] Here, Smith is (or was) a director of a company (Solferino) that is a defendant in the Cyprus Proceeding (Tsirides Decl. ¶ 40) and the only documents sought from him are non-privileged documents (Pell Decl., Pell Ex. 8, at 4-5). Hence, it is curious that the Motion relies on In re Chevron Corp., 749 F. Supp.2d 141 (S.D.N.Y. 2010) (MOL at 4, 12). There, Judge Kaplan denied a motion to quash by a New York attorney active in certain non-legal activities with plaintiffs in Ecuador, holding that claims of attorney-client privilege and work product immunity could not block Section 1782 discovery probative to the Ecuador proceedings. Id. at 168-69.

[8] Notwithstanding the Motion's citation to In re Godfrey, 526 F. Supp. 2d 481, 423 (S.D.N.Y. 2007) and Microsoft, 428 F. Supp. at 194 n.5, "[o]n its face, § 1782 does not limit its discovery power to documents located in the United States . . . [and] there is reason to think that Congress intended to reach only evidence located within the United States." In re Kreke Immobilien KG, No. 13-mc-110, 2013 WL 5966916, at *4 (quoting In re Sarrio, S.A., 119 F.3d 143, 147 (2d Cir. 1997)).

11

of the fourth discretionary factor identified in Intel or otherwise) because the discrete categories of information sought are tied directly to Petitioners' claims in the Cyprus Proceeding.

## II. THE MOTION REPEATS IRRELEVANT AND UNSUPPORTED ALLEGATIONS FROM AN ACTION ALREADY DISMISSED

Nearly half of Movants' MOL and the entire Bullock Declaration consist of rehashed allegations (primarily directed at parties other than the Petitioners) that Bullock and RIG LLC previously and unsuccessfully asserted in RIGroup LLC v. Trefonisco Mgmt. Ltd., No. 12-cv-3721 (S.D.N.Y.).[9] Movants improperly rely on these irrelevant allegations in trying to cast this Section 1782 proceeding as a "fishing expedition."

### a. *Bullock and RIG LLC Cannot Relitigate Here Claims Already Dismissed by Judge Furman.*

In 2012, RIG LLC and Bullock (represented by Movant Smith) brought suit in New York against a pair of Russian individuals and several entities they purportedly controlled, accusing them of fraudulently depriving Bullock of her interest in a Russian subsidiary of RIG LLC. See Pell Decl., Pell Ex. 2. After Gorsoan and GPB instituted the Cyprus Proceedings, RIG LLC and Bullock amended their complaint to add Gorsoan and another individual (but not GPB) as defendants. See RIGroup LLC v. Trefonisco Mgmt. Ltd., No. 12-cv-3721, 2013 WL 2458855, at *1 n.1 (S.D.N.Y. June 7, 2013). RIG LLC and Bullock branded all of the defendants "Russian raiders" and attempted to support their claims with the same generalized references to corruption in the Russian courts that now appear in the Bullock Declaration. See Bullock Decl. ¶¶ 20-23.

---

[9] The Bullock Declaration makes irresponsible allegations against Gorsoan and others that have no basis in fact. For example, Bullock claims that Gorsoan's funds were frozen in Cyprus in connection with "susp[icion] by the Cypriot authorities of financial improprieties." Bullock Decl. ¶ 19. Bullock's statement is unsupported by any facts. What Bullock failed to disclose to the Court is that, in fact, the Gorsoan funds were *voluntarily* frozen by Gorsoan so as to secure the interim freezing order that Gorsoan sought and obtained against Bullock in the Cyprus Proceeding. See Supp. Tsirides Decl. ¶¶ 15-16. It is telling that Bullock would make these outrageous and self-serving allegations that her Cypriot lawyer obviously could not support.

12

In June 2013, Judge Furman dismissed plaintiffs' entire action on the basis of *forum non conveniens*.[10] Id. at *11. Ignoring Bullock's aspersions and allegations, Judge Furman held that Russia was an adequate alternative forum and reasoned that a "pending investigation of Bullock . . . [in Russia] is not a basis for retaining jurisdiction over this lawsuit, as Plaintiffs have neither shown that the investigation is baseless nor that the Russian criminal justice system is inadequate to allow Bullock to vindicate her purported innocence." Id. at *7. Judge Furman also found that Bullock herself chose to do business in Russia and followed decisions by "district courts in this Circuit [that] have repeatedly rejected arguments that Russia is an inadequate forum based on allegations [of corruption] of the sort made by Plaintiffs here." Id. at *8.

Movants cannot here relitigate the claims that Judge Furman dismissed. The Cyprus Proceeding does not involve any of the principal defendants that Bullock and RIG LLC sued in this Court before having their action dismissed, and in any case a Section 1782 proceeding is not an opportunity for discovery subjects to assert counterclaims against applicants.

### b. The Section 1782 Application Is Proper on Its Face.

The Motion cites cases referencing the uncontroversial point that courts are not to grant discovery under Section 1782 when there is reason to believe that applicants are engaged in a "fishing expedition" seeking information to use in non-disclosed proceedings, or wish to harass parties. MOL at 5. Notably, none of these cases refused to grant Section 1782 discovery on this basis. See In re Levy, 249 F.R.D. at 107 (holding that "there is no indication that Sveaas' request for discovery from Martinez is motivated by bad faith, is intended to harass Martinez, or seeks cumulative material"); Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chtd. Intl (USA) Ltd., 785 F. Supp. 2d 434, 439 (S.D.N.Y. 2011) ("Since the Court is satisfied that the documents AHAB is seeking are relevant to the foreign proceedings and "for use" in the foreign

---

[10] The case was appealed to the Second Circuit where it awaits oral argument. See MOL at 15.

13

proceedings, the fact that AHAB may also be able to use the discovery in future litigation against the respondents is immaterial.").

The Cyprus Proceeding, pending for nearly 18 months, has been stymied by Bullock, and if anything, Petitioners have exercised restraint in waiting until now (only after the Cyprus Court affirmed its jurisdiction by denying a set-aside application by Bullock and other defendants, see Tsirides Decl. ¶¶ 32-35) to apply for discovery assistance under Section 1782. As shown above, all of the Section 1782 statutory elements are concededly present, and all of the discretionary factors favor enforcing the subpoenas served on Movants.

### III. THERE IS NO BASIS FOR "RECIPROCAL" DISCOVERY WHEN BULLOCK HAS FLOUTED CYPRUS DISCOVERY ORDERS AND CHOSEN NOT TO PURSUE DISCOVERY THERE

Bullock argues that she be granted unspecified "reciprocal discovery" from Petitioners if the Court enforces the subpoenas. MOL at 13-14. Given Bullock's actions in Cyprus, there is no basis for granting this request.

It is undisputed that Bullock has refused to comply with discovery in the Cyprus Proceeding and that she has not sought discovery in the Cyprus Proceedings. Supp. Tsirides Decl. ¶¶ 11, 14. Yet, Bullock now remarkably asserts that she will be prejudiced by Section 1782 discovery creating "an uneven discovery playing field" (MOL at 14) unless the Court grants reciprocal discovery. As an initial matter, Bullock's argument makes no factual sense. It is Bullock who has, for nine months disobeyed discovery orders by the Cyprus Court. It is Bullock who has chosen to pursue no discovery in Cyprus. See id. ¶¶ 13-14. It is Bullock whose attempt to sue Gorsoan and others in this Court was dismissed for *forum non conveniens* (highlighting that Petitioners are not even present here for purposes of Section 1782 – the only

14

jurisdictional basis in this action).[11]  It would be unfair *to Petitioners* to be ordered to engage in reciprocal discovery under such circumstances because Bullock would be rewarded and Petitioners would, in effect, be penalized for bringing this Section 1782 application when it became apparent that Bullock was disregarding discovery orders in Cyprus.

Moreover, as a matter of law, none of the considerations that here militate against granting reciprocal discovery were present in the cases cited by Bullock (MOL at 13-14).  For example, in In re Consorcio Minero, No. 11-mc-354, 2012 WL 1059916, at *2-4 (S.D.N.Y. 2012), there was no evidence that the party seeking reciprocal discovery had ignored foreign discovery orders and that party had no other practical way of obtaining discovery.

### IV.   MOVANTS HAVE NOT ATTEMPTED TO MEET AND CONFER ON THE SCOPE OF THE SUBPOENAS AND ANY VALID CONFIDENTIALITY CONCERNS COULD BE MET BY AN APPROPRIATE ORDER

The Motion also seeks "an appropriate order of confidentiality" covering any discovery provided in compliance with the subpoenas and an award of "reasonable attorneys' fees and other costs and expenses incurred as a result of bringing" the Motion.  MOL at 14-16.  Movants are not entitled to costs because, as shown above, the Motion lacks merit, and, in any event, they have not met their burden of showing any undue burden from the discovery sought.  Moreover, Movants have ignored their obligation to meet and confer on the subpoenas' scope or any genuine issues of confidentiality, nor have Movants bothered showing why any concerns they have cannot be met by a standard confidentiality order under the Federal Rules.

---

[11] It also is Bullock who has failed to identify the discovery she seeks, which provides a basis for denying it out of hand (and suggests that it is sought now only to inflict inconvenience on Petitioners for pursuing their rights).  See In re Application of iManagement Svcs. Ltd., 2005 WL 1959702, at *6 (denying reciprocal discovery where movant had not "identified any documents or witnesses within this district that it seeks to discover").

## **CONCLUSION**

For the foregoing reasons, Petitioners Gorsoan and GPB respectfully request that this Court deny the Motion and enforce the Section 1782 Discovery Order.

Dated:  New York, New York
        January 13, 2013

Respectfully submitted,

/s/ Owen C. Pell
Owen C. Pell
Max Shterngel
WHITE & CASE LLP
1155 Avenue of the Americas
New York, New York 10036-2787
Telephone: (212) 819-8200
Facsimile: (212) 354-8113

*Attorneys for Petitioners Gorsoan Limited and Gazprombank OJSC*