Eb3WgorC

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   In re Application of GORSOAN LIMITED
    and GAZPROMBANK OJSC
4    for an Order Pursuant to              13 MC 397 (PGG)
    28 U.S.C. 1782 to Conduct Discovery,
5

6   ------------------------------x

7                                      New York, N.Y.
                                       November 3, 2014
8                                      12:30 p.m.

9   Before:

10                    HON. PAUL G. GARDEPHE,

11                                          District Judge

12
                           APPEARANCES
13
    WHITE & CASE LLP
14       Attorneys for Petitioners
    BY:  OWEN C. PELL
15       MAX SHTERNGEL

16
    STUART A. SMITH
17       Attorney for Movants

18

19

20

21

22

23

24

25

Eb3WgorC

1              (Case called)

2              MR. PELL:  Owen Pell from White & Case.  With me today

3     is Max Shterngel for the plaintiffs, applicants, Gorsoan Ltd.

4     and Gazprombank.

5              MR. SMITH:  Stuart Smith for the movants Rigroup Janna

6     Bullock, Zoe Bullock, and myself.

7              THE COURT:  This is a matter that goes back to a part

8     one assignment I received a long time ago in response to an

9     application for the issuance of subpoenas to certain parties.

10    I signed that application and now there's a dispute as to

11    whether certain subpoenas that I issued should be quashed.

12    What I've been trying to get to the bottom of is whether one of

13    the subjects of the subpoena, a woman named Janna Bullock, was

14    properly served by process from a court in Cyprus, which I will

15    refer to as the Cypriot court.  The subject order from the

16    Cypriot court is a freezing and disclosure order.  Gorsoan, one

17    of the applicants here, states that Bullock was properly served

18    with a freezing and disclosure order issued by the Cypriot

19    court and that she has failed to comply with that order.

20    Gorsoan further argues that Bullock's noncompliance with the

21    Cypriot court's freezing and disclosure order provides a

22    compelling basis to enforce the subpoena on Bullock, arguing

23    that the information Gorsoan seeks is unavailable in the Cyprus

24    proceedings due to Bullock's noncompliance, citing opposition

25    brief, docket No. 16 at 7.

Eb3WgorC

1          The background here is that in August of 2012, Gorsoan

2     and Gazprombank filed a civil suit against Bullock and 29 other

3     defendants in the Cyprus Court claiming $22 million in damages

4     from fraud, citing Tsirides declaration paragraph five, docket

5     No. 4.  Gorsoan alleged that it had "invested substantial sums

6     (around U.S. 23 million) in U.S. bonds issued by companies

7     affiliated with the Moscow region government," and that

8     Bullock's ex-husband, Alexey Kuznetsov (then the minister of

9     finance in the Moscow region government), and certain offshore

10    corporate entities owned by Bullock and Kuznetsov diverted

11    proceeds from these bonds and used these funds for their own

12    purposes (*Id.* paragraphs 20, 22, and 40).

13          On March 6, 2013, the court in Cyprus issued an order

14    which I've referred to as a freezing and disclosure order.

15    That order froze all the assets of 15 of the defendants named

16    in the Cyprus action, including Bullock, anywhere in the world

17    up to the value of $26,344,765.  It also directed these

18    defendants to disclose all assets that they possessed that

19    exceeded 10,000 pounds in value, and it also directed the

20    remaining defendants to produce documents in their possession

21    relating to those 15 defendants.  (*Id.* paragraphs 11 and 28

22    through 29).

23          I have received a declaration from Alexandros

24    Tsirides, Gorsoan's Cypriot counsel, stating that Bullock was

25    personally served with the freezing and disclosure order on

Eb3WgorC

 1   April 24, 2013, and that assertion is supported by an affidavit

 2   of service.  That document is Exhibit 2 to Tsirides's second

 3   supplemental declaration.  See paragraph four.

 4            However, counsel for Bullock has disputed whether she

 5   was, in fact, served with the Cypriot court's freezing and

 6   disclosure order on April 24, 2013, as the applicants here

 7   assert.  More specifically, on March 24, 2014, counsel for

 8   Bullock sent a letter to the Court stating that according to

 9   Bullock's Cypriot counsel, a Mr. Demetriades, the March 2013

10   freezing and disclosure order had not been properly served on

11   Ms. Bullock, citing docket No. 20.

12            Bullock's counsel also noted in that letter that on

13   March 12, 2014, Gorsoan had filed an application with the

14   Cyprus court seeking leave to serve Ms. Bullock's counsel,

15   Mr. Demetriades as substitute service for Bullock.  Bullock's

16   counsel argued that it is thus "reasonable to infer that

17   neither Bullock nor Mr. Demetriades has been served."  The

18   point is that if Bullock had been personally served on April

19   24, 2013, then why at a later date would Gorsoan file an

20   application with the Cyprus court seeking leave to serve

21   Ms. Bullock through substitute service on her Cypriot counsel.

22            Gorsoan did not respond to this assertion, and given

23   that the premise for the application here is that Gorsoan has

24   not been able to get the information from Bullock because she

25   won't comply with the freezing and disclosure order issued by

Eb3WgorC

1    the Cypriot court, I determined that it was necessary to obtain

2    an explanation for why Gorsoan made an application to the

3    Cypriot court to serve Ms. Bullock through substitute service.

4             Accordingly, on October 22 of this year, I issued an

5    order directing Gorsoan to "explain whether they sought

6    permission in Cyprus to serve Bullock by substitute means and,

7    if so, why they previously represented to this Court that

8    Bullock had been personally served with the Cyprus court's

9    discovery order," citing docket No. 24.

10             On October 24, 2014, Gorsoan's counsel submitted a

11   letter and supplemental declaration addressing these issues,

12   citing docket No. 25.  The letter states that Bullock has been

13   personally served with the Cyprus court's freezing and

14   disclosure order three times and that Gorsoan is pursuing civil

15   contempt remedies against Bullock in Cyprus for her failure to

16   comply with that order.  The attached declaration, which was

17   executed by Alexandros Tsirides, Gorsoan's Cypriot counsel,

18   states that Bullock was first served with a freezing and

19   disclosure order on April 24, as I previously noted, and

20   Mr. Tsirides notes that Bullock's counsel has not explained why

21   service of that order back on April 24, 2013, was invalid under

22   either U.S. or Cyprus law.

23             The Tsirides declaration then goes on to state, "In

24   order to have Bullock held in civil contempt based on her

25   noncompliance with the freezing and disclosure order [Gorsoan]

Eb3WgorC

1    first sought and obtained two preliminary orders from the

2    Cyprus court," citing Tsirides's second supplemental

3    declaration at paragraph eight.  The Cyprus court issued orders

4    on December 19, 2013, granting Gorsoan leave to serve the

5    freezing and disclosure order on Bullock again, and on October

6    9, according to Mr. Tsirides, the Cyprus court granted Gorsoan

7    leave to serve its application for contempt against Bullock,

8    and that application apparently also included a copy of the

9    freezing and disclosure order.  *(Id.* paragraph eight, Exhibits

10   3-4).

11            On August 5, pursuant to the Cyprus court's order,

12   according to Mr. Tsirides, Bullock was again personally served

13   in New York with a freezing and disclosure order, and in

14   support of that assertion, Mr. Tsirides attaches another

15   affidavit of service, which is Exhibit 5 to his declaration.

16   Mr. Tsirides goes on to state that on October 20, 2014,

17   Ms. Bullock was served with a contempt application, which

18   included a copy of the freezing and disclosure order.  *(Id.*

19   paragraph 10, Exhibit 6).

20            Now, I have questions for both sides, but maybe I

21   should start with Gorsoan and then I'll speak with Bullock's

22   counsel.  The question I have, and it's the question that my

23   order was directed at, is if Bullock was properly served on

24   April 24, 2013, with a freezing and disclosure order, why was

25   it necessary to serve her with the order repeatedly.  That's my

Eb3WgorC

1    question.  And it may be that in Cyprus procedures are

2    different, I don't know, but in this country, if effective

3    service was made, as is alleged here, in April of 2013, it

4    wouldn't be necessary to continue serving the person repeatedly

5    with the same order.  As I said, maybe the practices are

6    different in Cyprus, but I need you to explain that.

7              MR. PELL:  Yes, your Honor.  Owen Pell, for Gorsoan.

8              Your Honor, there are two reasons why service was

9    effected a second time.  The reason it was effected the third

10   time is when you move on to the contempt phase, that is a new

11   phase in Cyprus and you have to re-serve.

12             The reason for the second service was really out of an

13   abundance of caution and to meet objections that had been made

14   by counsel for Bullock in the foreign proceeding.  They had

15   raised issues *vis-a-vis* service.  They had also raised issues

16   as to the Hague Convention on service, and so out of an

17   abundance of caution, we went back and served again.

18             What's important to understand is that this is not a

19   default judgment situation.  Bullock has appeared in Cyprus

20   through lawyers and litigated the service issue and lost, and

21   that was why she was ordered to make disclosure.  She has

22   chosen not to appeal that ruling in Cyprus.  We were trying to

23   make the record as clear as possible that she had been properly

24   served as many different ways as we could think of so that in

25   Cyprus, we could not only proceed with contempt but so that

Eb3WgorC

1    there was really no ability by the other side to muddy the

2    record in Cyprus, because we really are trying to proceed there

3    and to get more disclosure.

4           With respect to the 1782 proceeding, as your Honor

5    knows, even if there had been no Cyprus proceeding, we would

6    have been entitled under 1782 to discovery, as long as we had

7    contemplation of a foreign proceeding.  Here, there's no

8    question that we have a foreign proceeding.  Bullock has

9    participated in it and the two applicants are parties in that

10   proceeding.  As to the 1782 application and the motion to

11   quash, the fact that Bullock continues to try to fight

12   discovery in Cyprus need not prevent the subpoenas from going

13   forward and disclosure from occurring here.

14          THE COURT:  All right.  Then let me hear from

15   Bullock's counsel.

16          Mr. Smith, you just heard your adversary say that your

17   client litigated the service issue in Cyprus, she lost, she has

18   not appealed, and she still hasn't complied with the freezing

19   and disclosure order.  Do you disagree with anything that

20   counsel just said?

21          MR. SMITH:  I'm not aware, I have no knowledge of any

22   service of process litigation in Cyprus with respect to a

23   previous service.  I would simply tell the Court that under

24   1782, the federal courts here carefully respect foreign

25   procedures, and to the extent that there may be another

Eb3WgorC

proceeding in Cyprus dealing with this contempt citation and

service of process, I think it's necessary to await the

decision of the Cyprus court in that matter.  If it turns out

that Bullock has been properly served, that is an issue for the

Cyprus court to decide and not, I would respectfully submit,

this Court.

        I would simply also suggest to the Court that under

Cyprus procedures, as Mr. Demetriades's declaration earlier

stated, there is no discovery in Cyprus in a civil suit of this

sort until the pleadings have closed.  Now, for reasons that I

can't anticipate, this lawsuit was started in 2012, but the

statement of claim, which is analogous to a complaint, wasn't

filed by the plaintiff until December 2013.  I'm advised by

Mr. Demetriades that the answer to that complaint is currently

due to be filed on November 14, 2014, so the pleadings haven't

closed here, and, under Cyprus law, there is no discovery until

the pleadings close.

        I would also add that under Cyprus law, there are no

depositions; there is simply document production.  So the fact

that these subpoenas ask here in their application under 1782

for sworn deposition testimony seems to me to be at variance

with Cyprus procedure.  And since 1782 gives the courts

discretion to assist in discovery in a foreign proceeding, the

courts here are very careful to make sure that any discovery

that is assisted by a federal court here cannot exceed the

Eb3WgorC

1   scope of this discovery that is available in a foreign

2   proceeding.  So on that note, I would simply say that at this

3   juncture, I think the case for the application is not ripe for

4   decision until such time as we get a decision from the Cyprus

5   court that Ms. Bullock has been properly served, because it is

6   their exclusive authority to render such a decision, and the

7   pleadings in the Cyprus case close.

8           THE COURT:  All right.  Let me just return to my

9   original question to you, Mr. Smith.  What I said to you is

10  that your adversary has represented that Ms. Bullock litigated

11  the service issue in Cyprus, that she lost on that issue, that

12  she has not appealed, and she still has not complied with the

13  freezing and disclosure order.  What I want to hear from you

14  and what I asked you is do you dispute that your client,

15  Ms. Bullock, litigated the service issue in Cyprus and that she

16  lost that issue.

17          MR. SMITH:  I have no information as to whether that's

18  correct or not correct, and I have seen no papers filed in this

19  court that indicate that the Cyprus court has so ruled.

20          THE COURT:  Mr. Pell.

21          MR. PELL:  Yes, your Honor.  First of all, there is a

22  lot to respond to here because there are so many false

23  premises, it's difficult to know which one to deal with first.

24          First, your Honor, there could never be or have been a

25  contempt proceeding in Cyprus if the Cyprus court had not

Eb3WgorC

1    determined that it actually had jurisdiction over Bullock, had

2    ordered discovery, had ordered disclosure and no disclosure was

3    forthcoming.  In fact, your Honor, as we said in our papers, we

4    received disclosure from other defendants in Cyprus and that

5    was how we tailored the subpoenas in this proceeding to make

6    sure we were following up on information we had gotten in

7    Cyprus from entities that the Court had ordered to provide

8    information and did.  So the fact is Bullock has been served,

9    the Cyprus court knows it, they've appeared in Cyprus, they've

10   litigated.  That was all in our papers.  It was their burden to

11   join issue on that if they disputed it and to prove otherwise,

12   and they haven't.

13          THE COURT:  Is your position that she was properly

14   served simply an inference from the fact that the Cyprus court

15   issued this contempt order, or is there some document extant in

16   which the Cyprus court makes a finding that she was properly

17   served?

18          MR. PELL:  The fact that she was ordered to make

19   disclosure tells you the Cyprus court believes it had

20   jurisdiction.  We then took that proof back to Cyprus.  When

21   there were questions raised by opposing counsel as to the Hague

22   Convention, we served her again.  It was because we put in all

23   that proof that the court in Cyprus allowed us to proceed to

24   the contempt phase.

25          THE COURT:  Again, is that something I'm to infer, or

Eb3WgorC

1    is there a document that actually says that?

2                    MR. PELL:  That's attached to the affidavits, your

3    Honor.

4                    THE COURT:  What's attached?

5                    MR. PELL:  What you're asking for, I believe, is

6    discussed in the Tsirides affidavit.

7                    THE COURT:  All right.  You're telling me that

8    Mr. Tsirides states in his declaration that the Cyprus court

9    wouldn't have done this unless she was properly served?  Is

10   that your point?  Because what I'm actually looking for, I just

11   want to know, is there an order from the Cyprus court stating

12   that she was properly served.

13                   MR. PELL:  If you look at the Tsirides declaration,

14   paragraphs 34 to 35 --

15                   THE COURT:  All right.  Just give me a minute.  Could

16   you help me with how I can find that in this file?

17                   MR. PELL:  Yes, your Honor.  I definitely can.

18                   THE COURT:  Because I've got quite a few documents in

19   here, and I'm not able to put my finger on it immediately.

20                   MR. PELL:  Yes, your Honor.

21                   THE COURT:  And there have been multiple declarations

22   from Mr. Tsirides, so which one is it that we're talking about?

23                   MR. PELL:  Right.  I believe you're talking about the

24   first one, your Honor.

25                   THE COURT:  All right.  I have the first one.

Eb3WgorC

1          MR. PELL:  And it should be paragraphs 34 to 35.

2          THE COURT:  I'm sorry.  I'm looking at the first

3     supplemental declaration of Alexander Tsirides.  Is that what I

4     should be looking at?

5          MR. PELL:  Actually, it's this one.  Actually, your

6     Honor, the one you want, the court stamp is dated November 27,

7     2013.  It's document four, I believe.

8          THE COURT:  What is its title?

9          MR. PELL:  The title is declaration of Alexandros

10    Tsirides in support of application for discovery pursuant to 28

11    U.S.C. Section 1782.  I'm happy to share mine, your Honor,

12    because it has no marks on it.

13         THE COURT:  I'm going to need you to do that because I

14    can't find it in my file.

15         MR. PELL:  There you are, your Honor.  And it's

16    paragraphs 34 and 35.

17         THE COURT:  All right.  Mr. Smith, I'm looking at one

18    of the declarations Mr. Tsirides has submitted.  This one is

19    docket No. 4, and in paragraph 35, Mr. Tsirides asserts, "In

20    the November 2013 decision, the Cypriot court concluded that it

21    has jurisdiction over the dispute, that the service of process

22    on all defendants was done properly and in accordance with

23    applicable regulations, and that there are no procedural

24    irregularities.  Bullock and the other defendants who filed the

25    set-aside application have not appealed the November 2013

Eb3WgorC

1    decision."

2              Now, my question to you is what do you offer me to

3    dispute that.

4              MR. SMITH:  I think one can infer, your Honor, given

5    the fact that repeated attempts to serve Bullock were done yet

6    again, suggests to me that the petitioners in this case were

7    not confident that the service of process had been properly

8    effected.

9              THE COURT:  As I told you, it was your argument on

10   that point that gave me pause, but now I'm dealing with new

11   evidence that indicates that your client was served on no less

12   than three occasions with the applicable order.  I have

13   affidavits of service representing that that happened.  I have

14   Mr. Tsirides's declaration about the import of that under

15   Cypriot law, and now I need something solid from you to make a

16   determination that there's a reason to distrust the affidavits

17   of service, Mr. Tsirides's declaration.  I need something

18   solid, and counsel has explained why he arranged for or sought

19   substitute service.  According to him, it was done out of an

20   abundance of caution, but certain representations have been

21   made both today and in prior affidavits and declarations, and I

22   wanted to give you an opportunity to tell me why I shouldn't

23   accept these representations.

24             MR. SMITH:  Your Honor, since this was not something I

25   was aware of, I would just ask the Court for a brief period of

Eb3WgorC

1    time to consult with Mr. Demetriades, who is Bullock's Cypriot

2    counsel, for him to be able to address this point because I

3    think it is a critical point, and since it involves a detail of

4    the Cyprus proceeding with which I am not familiar, I would

5    like an opportunity on behalf of the movants to have a brief

6    period to submit an additional document to the Court of

7    explanation.

8         THE COURT:  But I already have a declaration from

9    Mr. Demetriades.  I alluded to it in my initial remarks, and

10   it's always been clear in this case that there is a dispute

11   about service.  My question to you is what additional

12   information could Mr. Demetriades provide.

13        MR. SMITH:  I think he could address the point of the

14   existence of a Cyprus court ruling with respect to which there

15   was no appeal.  That seems to me to be a rather critical aspect

16   of this thing because it may well be that if that is the case

17   and there is no explanation as to why that happened under

18   Cyprus law, then I would agree that that statement in the

19   declaration should be accepted by this Court.  But given the

20   fact that this is something that I'm not aware of and that

21   Mr. Demetriades never addressed specifically, I would like to

22   have an opportunity to be able to respond.

23        THE COURT:  I don't know that I need to understand

24   Cyprus appellate procedure in order to make a finding here that

25   your client was served.  I mean, that's what we're talking

Eb3WgorC

1    about here.  We're talking about whether she was served with

2    this freezing and disclosure order and she has ignored it and

3    not complied with it.  That's what I'm interested in, and I've

4    heard from Mr. Pell repeated statements and I've read repeated

5    statements submitted by his client asserting that she was

6    served and, in fact, that she's litigated the issue and, in

7    fact, that she lost the issue in Cyprus.

8            I don't think I need to understand Cypriot appellate

9    procedure to make a finding that she was served and she has

10   nonetheless chosen to ignore the freezing and disclosure order.

11   That's what I'm interested in, and I'm interested in it

12   because, as I said at the outset, the premise is that

13   applicants have not been able to get this information through

14   the Cypriot proceedings, and your response was, well, my client

15   was actually never served.  And what I'm telling you,

16   Mr. Smith, is I have now a very substantial record indicating

17   that she was actually served three times, with the same order,

18   and she hasn't responded to it.

19           Now, you say you want to get another affidavit or

20   declaration from Mr. Demetriades explaining to me what the

21   significance is of her decision not to appeal or what that

22   might mean under Cypriot law, and I don't understand why I need

23   to understand Cypriot appellate procedure in order to make a

24   finding.

25           MR. SMITH:  Let me suggest to the Court that

Eb3WgorC

1    subsequent to the order that the Cyprus court allegedly

2    addressed, there have been other attempted services to which

3    the Cyprus court has never decided whether she was validly

4    served under these orders, and in point of fact, Mr. Pell's own

5    letter to the Court, which came in last week, makes it clear

6    that he has submitted the evidence of service to the Cyprus

7    court, which suggests to me that it's the Cyprus court that has

8    to decide whether she was properly served.

9            THE COURT:  As I understand it, Mr. Pell is asserting

10   that now there are contempt proceedings ongoing in Cyprus as to

11   your client.  That's what's going on now, as I understand it.

12           MR. SMITH:  Yes.

13           THE COURT:  And again, there are contempt proceedings

14   going on because she hasn't responded to the freezing and

15   disclosure order.

16           MR. SMITH:  But Mr. Pell, in his letter of October 24

17   to the Court, said explicitly that the evidence of personal

18   service was submitted to the Cyprus court.  Now, the reason,

19   obviously, that was done is because it's the Cyprus court that

20   has the exclusive authority to make a determination as to

21   whether she was properly served under Cyprus law, so I don't

22   think that it would be improper for me to have an opportunity

23   to address this unappealed order allegedly saying that she was

24   properly served a while back.

25           MR. PELL:  Your Honor, I feel like I'm in a game of

Eb3WgorC

1    three-card Monte.  First of all, the existence of the Cyprus

2    proceeding does not bear on the ability of this Court to grant

3    a 1782 order and to enforce it.  We clearly have a Cyprus

4    proceeding.  There is no debate about that.  You clearly have

5    evidence that the Cyprus proceeding is proceeding and that my

6    clients are plaintiffs in that proceeding against Mr. Smith's

7    client, the discovery subjects of the 1782 order.

8         It is fascinating to me that in a proceeding where

9    Mr. Smith's client has chosen not to appear and is now on the

10   verge of being held in contempt he wants to use that Cyprus

11   proceeding now as a foil to prevent 1782 discovery, which is

12   exactly what the Supreme Court in Intel said isn't supposed to

13   happen.  The first problem I have is everything he wants to

14   litigate in this court or have this Court wait for Cyprus to

15   litigate is irrelevant because the existence of the Cyprus

16   proceeding is not a necessary element of getting 1782

17   discovery.  But as important, the fact is Mr. Smith already had

18   an opportunity through a Cypriot lawyer to engage on the issues

19   in this record, and he chose not to.  There's already an

20   affidavit from their Cypriot lawyer.  All they had to do was

21   raise these issues and explain them, but now they're moving the

22   shell again.  The shell game is on and now they want you to

23   wait for further proceedings in Cyprus knowing that his client

24   is avoiding doing anything in Cyprus.  So all he's trying to do

25   is delay your Honor carrying out the subpoenas.

Eb3WgorC

1        MR. SMITH:  I would simply respond, your Honor, and

2    say I don't think I'm trying to delay things further.  I'm

3    simply asking for a brief period of time to explain this one

4    unappealed order of the Cyprus court saying that she was

5    properly served, given the fact that it wasn't responded to.  I

6    don't think, given the fact that this case has gone on for a

7    while, that if it takes a few more days for me to make a

8    submission of explanation, if there is an explanation, as to

9    why that order making a determination on the adequacy of

10   service was not appealed, I would like to have that

11   opportunity.

12       MR. PELL:  Again, your Honor, even if there had been

13   an appeal of that order, that would be irrelevant here, the

14   fact that the Cyprus court had or doesn't have an appeal.  In

15   fact, Mr. Tsirides, in his first supplemental declaration,

16   notes that an appeal by some of the discovery subjects in

17   Cyprus does not affect the enforceability of the judgment

18   ordering Janna Bullock to make disclosure.  That's document No.

19   17 in the record, and that's another thing, no evidence

20   countered to that has been provided by Mr. Smith.  So all

21   you're seeing here, your Honor, is they're just dancing,

22   looking for more time, trying to use the Cyprus proceeding as a

23   shield when, in fact, they're about to be held in contempt in

24   that proceeding for not participating in it.

25       THE COURT:  All right.  This matter has been pending

Eb3WgorC

1   almost a year.  Mr. Smith, I'm not going to delay this more.  I

2   feel like I have given the parties ample opportunity to submit

3   whatever they deem is appropriate, and in good conscience, I

4   can't delay the matter further.  I'm going to go forward and

5   decide this application based on the materials that have been

6   submitted, and I'm going to try to do that promptly.

7           Anything else?

8           MR. PELL:  Thank you, your Honor.

9           MR. SMITH:  Thank you, your Honor.

10          (Adjourned)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25