UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _12/10/14_
```

In Re Application of GORSOAN LIMITED
and GAZPROMBANK OJSC for an Order
Pursuant to 28 U.S.C. 1782 to Conduct
Discovery for Use in a Foreign Proceeding,

Petitioners.

**MEMORANDUM
OPINION & ORDER**

13 Misc. 397 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

Movants Janna Bullock, RIGroup LLC, Stuart Smith, and Zoe Bullock Remmel

have moved to vacate this Court's December 4, 2013 ex parte order granting discovery to

Gorsoan Limited and Gazprombank OJSC (collectively, "Gorsoan") under 28 U.S.C. § 1782,

and to quash the subpoenas directed to them pursuant to Rule 45 of the Federal Rules of Civil

Procedure.  In the alternative, Movants seek an order (1) granting Bullock the right to take

reciprocal discovery and (2) directing Gorsoan to preserve and protect the confidentiality of any

documents or information produced pursuant to the subpoenas.  For the reasons stated below, the

Movants' motion will be denied.

## BACKGROUND

In August 2012, Gorsoan, a Cyprus limited liability company, and Gazprombank,

a Russian bank, filed a civil suit against Janna Bullock and twenty-nine other defendants in the

District Court of Limassol in Cyprus (the "Cyprus Court"), claiming approximately $22 million

in damages for fraud (the "Cyprus Proceedings").  (Tsirides Decl. (Dkt. No. 4) ¶ 5)  Gorsoan

alleged that it had "invested substantial sums (around US$23,000,000) in bonds . . . issued by

companies affiliated with the Moscow Region government. . . .," and that Bullock, Bullock's ex-

husband Alexey Kuznetsov (then the Minister of Finance in the Moscow Region government),

and offshore corporate entities owned by Bullock and Kuznetsov diverted proceeds from these bonds and used these funds for their own purposes.  (Id. ¶¶ 20, 22-24, 40)  In April 2010, Gazprombank assigned all of its rights as a purchaser of the bonds to Gorsoan, and in July 2012, Gazprombank assigned its legal rights related to the alleged fraud to Gorsoan.  (Id. ¶ 25)

In March 2013, the Cyprus Court issued an order (the "Freezing and Disclosure Order") (1) freezing all the assets of fifteen of the defendants (including Bullock) anywhere in the world up to the value of $26,344,765; (2) directing these defendants to disclose all assets that exceeded €10,000 in value; and (3) directing the remaining defendants to produce documents in their possession relating to the first fifteen defendants.  (Id. ¶¶ 11, 28-29)  A number of the defendants, including Bullock, have not complied with the Freezing and Disclosure Order.[1]  (Id.

---

[1] The parties dispute whether the Freezing and Disclosure Order was properly served on Bullock.  (See Movants Br. (Dkt. No. 13) at 8; Gorsoan Opp. Br. (Dkt. No. 16) at 6-7; Mar. 24, 2014 Movants Letter (Dkt. No. 20); Oct. 24, 2014 Gorsoan Letter (Dkt. No. 25); Nov. 3, 2014 Conf. Tr. (Dkt. No. 32)); Nov. 4, 2014 Movants Letter (Dkt. No. 30); Nov. 5, 2014 Gorsoan Letter (Dkt. No. 31)).  Gorsoan has submitted affidavits of service showing that the Freezing and Disclosure Order was served on Bullock three times:  on April 24, 2013 (see Tsirides Second Supp. Decl. (Dkt. No. 25) ¶ 4, Ex. 2); on August 5, 2014 (see id. ¶ 9, Ex. 5); and on October 20, 2014, as an attachment to Gorsoan's service of a civil contempt application on Bullock.  (See id. ¶ 10, Ex. 6)  Gorsoan explains that service of the Freezing and Disclosure Order was effected a second time "out of an abundance of caution and to meet objections that had been made by counsel for Bullock in the foreign proceeding," and a third time because "when you move on to the contempt phase, that is a new phase in Cyprus and you have to re-serve."  (Nov. 3, 2014 Conf. Tr. (Dkt. No. 32) 7:9-14)

Bullock has not demonstrated that service of the Freezing and Disclosure Order on any of these three occasions was improper.  Instead, she argues that she is not required to comply with the Order because the Cyprus Court has not ruled on whether it was properly served on her.  (See Nov. 4, 2014 Movants Letter (Dkt. No. 30) at 2-3) (asserting that "it will be for the Cyprus Court to decide, in the first instance, whether [Gorsoan's] subsequent attempted service was proper"))  Courts in this Circuit have held, however, that parties – such as Gorsoan – seeking discovery pursuant to 28 U.S.C. § 1782 need not wait for an outcome in the foreign proceeding to pursue discovery in the United States.  See, e.g., In re Gushlak, No. 11 Misc. 218 (NGG), 2011 WL 3651268, at *1 (E.D.N.Y. Aug. 17, 2011), aff'd sub nom. Gushlak v. Gushlak, 486 F. App'x 215 (2d Cir. 2012) ("[T]he possibility that the Grand Court [of the Cayman Islands] will rule on discovery requests similar to the ones at issue here does not weigh against granting Petitioner's

¶ 36)  Gorsoan's purpose in seeking discovery from Movants in this Section 1782 proceeding is to obtain information regarding (1) the alleged underlying fraud; and (2) assets or entities controlled by Bullock or others that are relevant to the claims in the Cyprus Proceedings.  (Id. ¶ 44; Gorsoan Memo in Support of Ex Parte Application (Dkt. No. 2) at 7-8)  According to Gorsoan's Cypriot counsel, Cypriot law and the rules of the Cyprus Court permit the use in the Cyprus Proceeding of any relevant information discovered in this Section 1782 proceeding.  (Tsirides Decl. (Dkt. No. 4) ¶ 45)

On November 26, 2013, Gorsoan submitted an ex parte application for an order pursuant to 28 U.S.C. § 1782 to conduct discovery for use in the Cyprus Proceedings.  (Gorsoan Memo in Support of Ex Parte Application (Dkt. No. 2))  Gorsoan seeks documents and testimony from Bullock, and documents from RIGroup LLC (of which Bullock is the sole member (see Pell Decl. (Dkt. No. 3), Ex. 2 ¶ 5)), regarding the issuance of the bonds in Russia, as well as the transactions that benefitted Bullock and which were allegedly accomplished through fraudulent diversion of bond proceeds.  (Gorsoan Memo in Support of Ex Parte

---

application.  Again, a § 1782 applicant need not exhaust foreign discovery remedies. . . . Requiring Petitioner to wait for the outcome . . . of the discovery proceedings would amount to enforcing such an 'exhaustion' requirement.") (citation omitted); In re iManagement Svcs. Ltd., No. 05-mc-89 (FB), 2005 WL 1959702, at *5 (E.D.N.Y. Aug. 16, 2005) ("[Section] 1782 does not contain an exhaustion requirement that would impose upon an applicant a duty to first seek the requested discovery from the foreign court.")

Here, Gorsoan has presented affidavits of service showing that Bullock was properly served with the Freezing and Disclosure Order on three separate occasions.  (See Tsirides Second Supp. Decl. (Dkt. No. 25), Ex. 2, 5-6)  Bullock has not argued that these affidavits are invalid in any way.  It is also worth noting that the Cyprus Court has granted Gorsoan leave to serve a civil contempt application on Bullock (see id. ¶ 8, Ex. 4), suggesting that that court believes that Bullock has intentionally failed to comply with the Freezing and Disclosure Order.  Given all of these circumstances, this Court concludes that Gorsoan has adequately shown that Bullock was served with the Freezing and Disclosure Order and has intentionally refused to comply with it.

Application (Dkt. No. 2) at 7-8)  Gorsoan seeks this information here due to Bullock's "refus[al] to comply with her discovery obligations in the Cyprus Proceeding."  (Id. at 7)

In the ex parte application, Gorsoan also seeks from Movant Smith (the attorney for Bullock and RIG LLC, and a board member of Solferino, a corporation and a co-defendant in the Cyprus Proceedings (Tsirides Decl. (Dkt. No. 4) ¶ 40)) and Movant Zoe Bullock Remmel (Bullock's daughter and a board member of Solferino (id.)) the "production of documents and deposition testimony regarding the nature of their appointment to Solferino's Board, as well as Solferino's activities in connection with the alleged fraud."  (Gorsoan Memo in Support of Ex Parte Application (Dkt. No. 2) at 7)  Smith, Remmel, and RIGroup are not parties to the Cyprus Proceedings.  (Tsirides Decl. (Dkt. No. 4) ¶ 43)

On December 4, 2013, this Court granted Gorsoan's ex parte application for an order pursuant to Section 1782 to obtain discovery from Bullock, RIGroup LLC, Smith, and Remmel in connection with the Cyprus Proceedings.  (Dkt. No. 6)

On December 9, 2013, Gorsoan served subpoenas upon Bullock and Smith to testify at a deposition and produce requested documents.  (See Affidavits of Service (Dkt. Nos. 7-8))  The Bullock subpoena requires her to produce:

(1)     Documents sufficient to comply with paragraph 2 of the Freezing and Disclosure Order [in the Cyprus Proceedings], by which you were ordered to provide information regarding your assets exceeding €10,000 in value anywhere in the world as of the date of your compliance with this subpoena. . . .

(2)     Documents describing the location and nature of any and all Assets . . . held under [three trusts]. . . .

(3)     Documents relating to your financial, corporate, managerial and/or employment relationship (including any ownership and/or control, whether direct or indirect) with [RIGroup LLC, RIGroup Russia OOO, and IFC RIGroup Finance ZAO]. . . .

(4) Documents relating to your financial, corporate, managerial and/or employment relationship . . . with [fourteen named entities]. . . .

(5) Documents relating to your financial, corporate, managerial and/or employment relationship . . . with [thirty-nine named entities]. . . .

(6) Documents relating to your knowledge of and/or involvement in the issuance of bonds, and the investment of the proceeds of the bonds, by [Mortgage Company of the Moscow Region OAO, Moscow Region Mortgage Agency OAO, and Moscow Region Investment Mortgage Company OAO]. . . . [and]

(7) Documents reflecting your non-privileged Communications with [twenty-one named persons and entities] relating to any of the matters referenced [in the first six requests]. . . .

(Pell Decl. (Dkt. No. 3), Ex. 6)

   The Smith subpoena requires him to produce:

(1) Documents reflecting your knowledge of or involvement in the activities of [Solferino], including but not limited to your service on the Board. . . .

(2) Documents reflecting your Communications with [Bullock, Remmel, and Alexey Kuznetsov] regarding Solferino. . . .

(3) Documents relating to your financial, corporate, managerial, professional or employment relationship . . . with [RIGroup LLC, RIGroup Russia OOO, IFC RIGroup Finance ZAO, and Laziar Holdings Limited]. . . . [and]

(4) Non-privileged Documents relating to your involvement in an arbitration proceeding between RIG LLC and Laziar. . . .

(Pell Decl. (Dkt. No. 3), Ex. 8)

   On December 12, 2013, Gorsoan served Remmel with a subpoena for documents and testimony.  (See Affidavit of Service (Dkt. No. 9))  The subpoena requires Remmel to produce:

(1) Documents reflecting your knowledge of or involvement in the activities of [Solferino], including but not limited to your service on the Board. . . . [and]

     (2)      Documents reflecting your Communications with [Bullock, Smith, and Alexey Kuznetsov] regarding Solferino. . . .

(Pell Decl. (Dkt. No. 3), Ex. 9)

          On December 20, 2013, Gorsoan served a subpoena for documents on RIGroup

LLC.  (See Affidavit of Service (Dkt. No. 11))  The subpoena requires RIGroup LLC to produce:

     (1)      The articles of incorporation, by-laws, minutes, board materials, and resolutions of RIG LLC, including any amendments thereto.

     (2)      A chart of or documents sufficient to show the corporate parents, subsidiaries, and any affiliates of RIG LLC, both at the time of incorporation and presently.

     (3)      Documents showing how RIG LLC was and has been capitalized during the period from incorporation to the present.

     (4)      Documents relating to RIG LLC's relationship (including any ownership and/or control, whether direct or indirect) with [RIGroup Russia OOO and IFC RIGroup Finance ZAO]. . . .

     (5)      Documents relating to RIG LLC's relationship (including any ownership and/or control, whether direct or indirect) with [fourteen named entities]. . . .

     (6)      Documents relating to RIG LLC's relationship (including any ownership and/or control, whether direct or indirect) with [forty-two named entities]. . . .

     (7)      Documents relating to RIG LLC's knowledge of and/or involvement in the issuance of bonds, and the investment of the proceeds of the bonds, by [Mortgage Company of the Moscow Region OAO, Moscow Region Mortgage Agency OAO, and Moscow Region Investment Mortgage Company OAO] at any time. . . . [and]

     (8)      Documents reflecting RIG LLC's non-privileged Communications with [twenty-two named individuals and entities] relating to any of the matters referenced in Request Nos. 1-7 above. . . .

(Pell Decl. (Dkt. No. 3), Ex. 7)

## DISCUSSION

### I.   LEGAL STANDARD

Section 1782(a) provides:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal. . . . The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. . . . The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing.  To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

28 U.S.C. § 1782(a).  "The statute authorizes district courts to grant such relief only where (1) the person from whom discovery is sought resides or is found in the district of the district court where the application is made; (2) the discovery is for use in a proceeding before a foreign tribunal; and (3) the application is made by the foreign tribunal or 'any interested person.'"  In re OOO Promnefstroy, No. M 19-99 (RJS), 2009 WL 3335608, at *4 (S.D.N.Y. Oct. 15, 2009) (citing Schmitz v. Berstein Liebhard & Lifshitz, LLP, 376 F.3d 79, 83 (2d Cir. 2004)).

"'[O]nce the statutory requirements are met, a district court is free to grant discovery in its discretion.'"  Schmitz, 376 F.3d at 83-84 (quoting In re Metallgesellschaft AG, 121 F.3d 77, 78 (2d Cir. 1997)); see In re Edelman, 295 F.3d 171, 181 (2d Cir. 2002) ("Congress planned for district courts to exercise broad discretion over the issuance of discovery orders pursuant to § 1782(a) – both over whether to grant a discovery order and, if so, what limits to place on that discovery.") (citing S.Rep. No. 88–1580, § 9, reprinted in 1964 U.S.C.C.A.N. at 3788).  "This discretion, however, is not boundless.  Rather, we have held that 'district courts

must exercise their discretion under § 1782 in light of the twin aims of the statute: providing

efficient means of assistance to participants in international litigation in our federal courts and

encouraging foreign countries by example to provide similar means of assistance to our

courts. . . .'" Schmitz, 376 F.3d at 84 (quoting In re Malev Hungarian Airlines, 964 F.2d 97, 100

(2d Cir. 1992)) (internal quotation marks omitted). In exercising this discretion, courts should

consider:

(1)    [w]hether the documents or testimony sought are within the foreign
       tribunal's jurisdictional reach, and thus accessible absent § 1782 aid;

(2)    [t]he nature of the foreign tribunal, the character of the proceedings
       underway abroad, and the receptivity of the foreign government or the
       court or agency abroad to U.S. federal-court judicial assistance;

(3)    [w]hether the § 1782 request conceals a[n] attempt to circumvent foreign
       proof-gathering restrictions or other policies of a foreign country or the
       United States; and

(4)    [w]hether the subpoena contains unduly intrusive or burdensome requests.

In re Microsoft Corp., 428 F. Supp. 2d 188, 192-93 (S.D.N.Y. 2006) (citing Intel Corp. v.

Advanced Micro Devices, Inc., 542 U.S. 241, 264-65 (2004)).

"A court considering a request for discovery under § 1782 must also be mindful

of U.S. federal discovery procedures under Rules 26 and 45 of the Federal Rules of Civil

Procedure." In re Auto-Guadeloupe Investissement S.A., No. 12 MC 221 (RPP), 2012 WL

4841945, at *4 (S.D.N.Y. Oct. 10, 2012); see In re Gushlak, No. 11 MC 218 (NGG), 2011 WL

3651268, at *6 (E.D.N.Y. Aug. 17, 2011), aff'd sub nom. Gushlak v. Gushlak, 486 F. App'x 215

(2d Cir. 2012) ("Section 1782(a) mandates that discovery under the statute be produced 'in

accordance with the Federal Rules of Civil Procedure.' Accordingly, the court is guided by

Rules 26 and 45, which govern third-party discovery.").

"Under Rule 26(b)(1), parties are entitled to discovery 'regarding any nonprivileged matter that is relevant to any party's claim or defense,' to the extent the request is 'reasonably calculated to lead to the discovery of admissible evidence.'" In re Gushlak, 2011 WL 3651268, at *6. "This standard 'has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" Id. (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978)).

"Federal Rule of Civil Procedure 45(c)(3)(A)(iv) provides that a court must quash or modify a subpoena that 'subjects a person to undue burden.'" Sanofi-Synthelabo v. Apotex Inc., No. 02 Civ. 2255 (SHS), 2009 WL 5247497, at *3 (S.D.N.Y. Dec. 30, 2009) (quoting Fed. R. Civ. P. 45(c)(3)(A)(iv)), aff'd sub nom. Sanofi-Aventis v. Apotex Inc., 659 F.3d 1171 (Fed. Cir. 2011). "Whether a subpoena subjects a witness to undue burden within the meaning of [Rule 45(d)(3)(A)(iv)] 'depends upon such factors as relevance . . . and the burden imposed.'" Kirschner v. Klemons, No. 99 Civ. 4828 (RCC), 2005 WL 1214330, at *2 (S.D.N.Y. May 19, 2005) (quoting Concord Boat Corp. v. Brunswick Corp., 169 F.R.D. 44, 49 (S.D.N.Y. 1996)).

A party moving to quash a subpoena "carr[ies] the burden of proving that a subpoena imposes an undue burden on a witness." Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas, 262 F.R.D. 293, 299 (S.D.N.Y. 2009) (citation omitted). "Because the burden is on the party seeking to quash a subpoena, that party cannot merely assert that compliance with the subpoena would be burdensome without setting forth the manner and extent of the burden and the probable negative consequences of insisting on compliance. . . . [I]nconvenience alone will not justify an order to quash a subpoena that seeks potentially relevant testimony." Kirschner, 2005 WL 1214330, at *2 (citations omitted). "A subpoena that 'pursues material with little apparent or likely relevance to the subject matter,' however, is likely

to be quashed as unreasonable even where the burden of compliance would not be onerous." Id. (quoting Concord Boat Corp., 169 F.R.D. at 50).

## II.   ANALYSIS

### A.   Statutory Factors

There is no dispute here that Gorsoan's application pursuant to Section 1782 satisfies the statutory factors.  Movants Bullock, Smith, and Remmel were all served in this District, and Defendant RIGroup LLC has its principal place of business in New York, New York.  (See Affidavits of Service (Dkt. Nos. 7-10); Pell Decl. (Dkt. No. 3), Ex. 2 ¶ 4)  Moreover, the discovery Gorsoan seeks is for use in a foreign proceeding in the District Court of Limassol in the Republic of Cyprus.  (See Ex Parte Application (Dkt. No. 1))  Finally, this Court's ex parte order was issued pursuant to an application by Gorsoan and Gazprombank, who are "interested person[s]" under Section 1782 insofar as they are plaintiffs in the Cyprus Proceedings.  This Court thus had the statutory authority to issue the ex parte order under Section 1782.  See In re OOO Promnefstroy, 2009 WL 3335608, at *4 (citing Schmitz, 376 F.3d at 83).

### B.   Discretionary Factors

Because the Section 1782 statutory factors are satisfied, this Court is "free to grant discovery in its discretion."  Schmitz, 376 F.3d at 83-84 (2d Cir. 2004) (quoting In re Metallgesellschaft, 121 F.3d at 78).  In determining whether to grant Movants' motion to quash the subpoenas, this Court must consider the four factors articulated by the Supreme Court in Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241 (2004).  For the reasons stated below, this Court finds that the Intel factors, on balance, weigh against Movants' motion to quash Gorsoan's subpoenas.

1.     __Whether the Evidence Sought Is Available to the Foreign Tribunal__

In Intel, the Supreme Court explained that "when the person from whom discovery is sought is a participant in the foreign proceeding . . . , the need for [Section] 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad.  A foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence."  Intel, 542 U.S. at 264.  Because Bullock is a named party in the Cyprus Proceedings, and because the subpoenas addressed to Remmel, Smith, and RIGroup seek discovery concerning Solferino – also a named party in the Cyprus Proceedings – Movants argue that the documents and testimony sought is available to the Cyprus Court and resort to Section 1782 is improper.  (Movants Br. (Dkt. No. 13) at 7)

Remmel, Smith, and RIGroup are not parties to the Cyprus Proceedings, and the subpoenas served on them all seek information that is not available to the Cyprus Court. Although some of the document requests involve Solferino, most of the requests seek information about the relationships between the served individual or entity and other named individuals or entities.  (See Pell Decl. (Dkt. No. 3), Ex. 7-9)  Moreover, those requests that involve Solferino seek information that Solferino itself may not possess.  The Remmel subpoena, for example, requires production of "[d]ocuments reflecting [her] knowledge of or involvement in the activities of [Solferino], including but not limited to [her] service on the Board. . . ."  (Pell Decl. (Dkt. No. 3), Ex. 9)  This request addresses Remmel's knowledge of and involvement with Solferino, and implicates information that goes beyond Solferino's corporate documents.

As to Bullock, her involvement in the Cyprus Proceedings is not dispositive as to the first Intel factor.  See In re Auto-Guadeloupe Investissement S.A., 2012 WL 4841945, at *5 ("[T]his Court is not persuaded that Intel precludes § 1782 discovery of parties participating in

the underlying international proceeding.  Section 1782 aid is not foreclosed just because the need

for such aid may not be readily apparent.").

　　　　　As noted above, the record demonstrates that Bullock has not complied with her

discovery obligations under the Freezing and Disclosure order issued in the Cyprus

Proceedings.[2]  Given her failure to comply with the Cyprus Court's Order, "exercise of this

Court's power under Section 1782 may be necessary to enable discovery of the documents."  See

In re Servicio Pan Americano de Proteccion, C.A., 354 F. Supp. 2d 269, 274 (S.D.N.Y. 2004);

see also In re Auto-Guadeloupe Investissement S.A., 2012 WL 4841945, at *6 ("[I]n light of the

fact that the materials which AGI seeks would be unavailable but for § 1782 assistance, the first

Intel factor weighs against quashing AGI's subpoena requesting discovery from Leucadia.").

　　　　　On balance, analysis of the first Intel factor favors enforcement of the subpoenas

pursuant to Section 1782.

### 2.　　Whether the Cyprus Court Is Receptive to Judicial Assistance From This Court

　　　　　Under the second Intel factor, courts consider "the nature of the foreign tribunal,

the character of the proceedings underway abroad, and the receptivity of the foreign government

or the court agency abroad to U.S. federal-court judicial assistance."  Intel, 542 U.S. at 264.

Movants argue that Gorsoan has not offered "any authoritative proof (as is [its] burden) that the

---

[2]  The parties dispute whether Bullock's appeal of the Freezing and Disclosure Order in Cyprus suspends the enforceability of that Order.  Movants have cited no case suggesting that an appeal in a foreign proceeding prevents a U.S. court from granting discovery under Section 1782, however.  See Euromepa S.A. v. R. Esmerian, Inc., 51 F.3d 1095, 1101 (2d Cir. 1995) (rejecting district court's conclusion that Section 1782 discovery would offend French sovereignty where "no authoritative declarations by French judicial, executive or legislative bodies objecting to foreign discovery assistance appear in the record"); see also In re Gushlak, 2011 WL 3651268, at *5 ("[T]he possibility that the Grand Court [of the Cayman Islands] will rule on discovery requests similar to the ones at issue here does not weigh against granting Petitioner's [Section 1782] application."), aff'd, 486 Fed. App'x 215 (2d Cir. 2012).

Cyprus courts would be receptive to discovery conducted in the United States. . . ." (Movants Br. (Dkt. No. 13) at 7)  They further argue that "Cyprus's ratification of the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters . . . is clear proof that Cyprus is decidedly unreceptive to reciprocity concerning U.S.-style discovery. . . ." (Id.)

   As an initial matter, Movants have not demonstrated that Gorsoan has the burden of proving that Cyprus courts would be receptive to discovery conducted in the United States. Although Intel does not address "the question of whose burden it is to demonstrate receptivity or, for that matter, nonreceptivity of a foreign tribunal," In re Chevron Corp., 762 F. Supp. 2d 242, 252 (D. Mass. 2010), the weight of authority indicates that the party opposing the Section 1782 application bears the burden of proving the non-receptivity of the foreign tribunal.  For example, the Third Circuit has held that "the parties opposing discovery under section 1782" "bear the burden of proof on the receptiveness issue." In re Chevron Corp., 633 F.3d 153, 162-63 (3d Cir. 2011).  Moreover, in In re Esses, 101 F.3d 873 (2d Cir. 1996), the Second Circuit stated that "only upon 'authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782,' should a district court refrain from granting the assistance offered by the act," a statement indicating that the party opposing the discovery request must produce this "authoritative proof." See id. at 876 (quoting Euromepa S.A. v. R. Esmerian, Inc., 51 F.3d 1095, 1100 (2d Cir. 1995) (emphasis added)).

   Regardless of which party bears the burden on this factor, there is no evidence that Cyprus has been "expressly unreceptive" to U.S. discovery.  See In re Levy, 249 F.R.D. 96, 107 (S.D.N.Y. 2008) (ordering discovery pursuant to Section 1782 in a case "where the foreign forums have [not] been expressly unreceptive to an American court's intercession").  Where courts have found that analysis of the second Intel factor weighs against a Section 1782

discovery request, evidence demonstrating the non-receptiveness of the foreign tribunals to U.S. discovery has been explicit.  See, e.g., In re Microsoft Corp., 428 F. Supp. 2d at 194 (finding that the second Intel factor "cut[] sharply" against Microsoft's Section 1782 discovery request where the European Commission "has explicitly stated that it opposes the discovery sought by Microsoft and is not receptive to U.S. judicial assistance"); Schmitz, 376 F.3d at 84 ("In this case, the German government was obviously unreceptive to the judicial assistance of an American federal court.").

Cyprus's ratification of the Hague Convention does not demonstrate that its courts are non-receptive to U.S. federal-court assistance.  Cyprus's Declaration under the Hague Convention states:  "In accordance with Article 23, the Government of the Republic of Cyprus declares that the Republic of Cyprus will not execute Letters of Request issued for the purpose of obtaining pre-trial discovery of documents."[3]  The terms of Article 23 of the Convention "are a continued source of misunderstandings," but Article 23 "was intended to permit States to ensure that a request for the production of documents must be sufficiently substantiated so as to avoid requests whereby one party merely seeks to find out what documents may generally be in the possession of the other party to the proceeding."[4]  Cyprus's declaration regarding letters of request, therefore, does not constitute a blanket prohibition on such letters, but rather indicates that letters of request must be sufficiently substantiated.  Moreover, several U.S. courts have granted discovery requests pursuant to Section 1782 in aid of proceedings in Cyprus, suggesting that Cyprus's ratification of the Hague Convention does not foreclose Section 1782 discovery in

---

[3]  See Declarations Reservations of the Republic of Cyprus, *available at* http://www.hcch.net/index_en.php?act=status.comment&csid=496&disp=resdn (last visited Dec. 10, 2014).

[4]  See Conclusions and Recommendations of the Special Commission on the Practical Operation of The Hague Apostille, Evidence and Service Conventions, Oct. 28 – Nov. 4, 2003 ¶ 29, *available at* http://www.hcch.net/upload/wop/lse_concl_e.pdf (last visited Dec. 10, 2014).

aid of proceedings in Cyprus.  See In re Bank of Cyprus Public Co. Ltd., No. 10-mc-294 (D.N.J.

Jan. 13, 2011) (Dkt. No. 5) (granting Section 1782 application in connection with a proceeding

in Cyprus); Weber v. Finker, 554 F.3d 1379, 1384-85 (11th Cir. 2009) (affirming order to

compel discovery pursuant to Section 1782 for use in a lawsuit in Cyprus).

Given that there is no evidence that the Cyprus tribunal would be unreceptive to

U.S. federal-court assistance, the second Intel factor weighs in favor of enforcement of the

subpoenas.

### 3.     Whether the Subpoenas Constitute Attempts to Circumvent Foreign Proof-Gathering Restrictions

Under the third Intel factor, courts "consider whether the [Section] 1782(a)

request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of

a foreign country or the United States." Intel, 542 U.S. at 265.  Movants argue that Gorsoan's

effort to obtain information through the instant subpoenas constitutes "an entirely premature

fishing expedition that seeks to circumvent the foreign proof-gathering procedural rules of

Cyprus." (Movants Br. (Dkt. No. 13) at 9)  They claim that Gorsoan's subpoenas are

"procedurally improper" because "the Cyprus court has not ordered any claims-related [as

opposed to asset-related] discovery with respect to any party or non-party in the Cyprus

Proceeding" (id. at 8-9), and under the Cyprus Civil Procedure Rules "an application for claims-

related discovery (which would only consist of document discovery from the parties, and not

sworn deposition discovery as sought by the subpoenas issued by [Gorsoan]) is normally made to

the Cyprus Court following the closing of the pleadings." (Demetriades Decl. (Dkt. No. 14) ¶ 5)

Gorsoan responds that the "Freezing and Disclosure Order on its face does not draw a distinction

between 'asset-related discovery' and 'claims-related' or 'merits-related' discovery," and

Gorsoan's Cypriot counsel declares that he does "not know of any such formal distinction recognized or enforced under Cypriot law." (Supp. Tsirides Decl. (Dkt. No. 17) ¶ 4)

Whether or not a distinction exists between claims-based and asset-based discovery under Cypriot law, courts in this Circuit have held that parties seeking discovery pursuant to Section 1782 need not wait for an outcome in the foreign proceeding to pursue discovery in the United States. See, e.g., In re Gushlak, 2011 WL 3651268, at *5 ("[T]he possibility that the Grand Court [of the Cayman Islands] will rule on discovery requests similar to the ones at issue here does not weigh against granting Petitioner's application. Again, a § 1782 applicant need not exhaust foreign discovery remedies. Requiring Petitioner to wait for the outcome of the . . . discovery proceedings would amount to enforcing such an 'exhaustion' requirement.") (citation omitted); In re iManagement Svcs. Ltd., No. 05-mc-89 (FB), 2005 WL 1959702, at *5 (E.D.N.Y. Aug. 16, 2005) ("[Section] 1782 does not contain an exhaustion requirement that would impose upon an applicant a duty to first seek the requested discovery from the foreign court."). That the Cyprus court has not yet ordered "claims-related" discovery is irrelevant: Gorsoan may seek discovery pursuant to Section 1782 regardless of the status of the Cyprus Proceedings.[5]

---

[5] Movants argue that the Cyprus Proceedings and the instant subpoenas "represent the multi-year, continuing harassment by Russian corporate raiders seeking to steal Ms. Bullock's assets," and that "[t]hese acts of thievery and continued unlawful acts of harassment should not be condoned . . . by this Court via the grant of discovery . . . in favor of such corporate raiders. . . ." (Movants Br. (Dkt. No. 13) at 5-6)

It is worth noting, however, that on March 18, 2014, the Second Circuit affirmed the dismissal of an action brought in the Southern District of New York by Bullock and RIGroup against a number of Russian corporate entities, including Gorsoan, on forum non conveniens grounds. See RIGroup LLC et al. v. Trefonisco Mgmt. Ltd. et al., 559 Fed. App'x 58 (2d Cir. 2014), aff'g 949 F. Supp. 2d 546 (S.D.N.Y. 2013). In that action, Bullock and RIGroup alleged that the defendants had "conspired to loot a Russian corporation owned and controlled by Plaintiffs" – the same allegations Movants make in the instant action to support their claim that Gorsoan's

Movants have not demonstrated that Gorsoan's effort to seek discovery pursuant to Section 1782 constitutes an attempt to circumvent foreign proof-gathering restrictions or other policies. Accordingly, the third Intel factor weighs in favor of enforcing the subpoenas.

### 4. Whether the Requests in the Subpoenas Are Unduly Intrusive or Burdensome

The final Intel factor requires a court to consider "[w]hether the subpoena contains unduly intrusive or burdensome requests." In re Microsoft Corp., 428 F. Supp. 2d at 193 (citing Intel, 542 U.S. at 264-65). Movants argue that the subpoenas are "grossly and needlessly overbroad, and should be quashed on this basis." (Movants Br. (Dkt. No. 13) at 11)

With regard to the Bullock subpoena, Movants first argue that the request for documents "sufficient to disclose all assets exceeding Euros 10,000 anywhere in the world" is improper because (1) it parallels the Cyprus Freezing and Disclosure Order and Bullock has no obligation to comply with it because she has not been served with it, and (2) Gorsoan "may not use Section 1782 to compel the production of documents not located in the United States." (Id. (citing In re Godfrey, 526 F. Supp. 2d 417, 423 (S.D.N.Y. 2007); Microsoft Corp., 428 F. Supp. 2d at 194 & n.5)) As to the service point, as discussed above, this Court finds that Bullock has been properly served with the Freezing and Disclosure Order, and therefore she has an obligation to comply with it. Because Bullock has not complied with the Freezing and Disclosure Order (see Tsirides Decl. (Dkt. No. 4) ¶ 36), the information sought through that Order is not available in the Cyprus Proceedings. Accordingly, Gorsoan is entitled to seek that information under Section 1782.

---

subpoenas constitute a "fishing expedition." See RIGroup LLC et al., 949 F. Supp. 2d at 549. Although the Court of Appeals did not rule on the merits of Bullock and RIGroup's claims, the dismissal based on forum non conveniens suggests that a Russian tribunal – and not a U.S. court – is the proper forum for Bullock and RIGroup to litigate the merits of their allegations against the alleged Russian corporate raiders.

As to Movants' second argument, although Section 1782 on its face "'does not limit its discovery power to documents located in the United States . . . , there is reason to think that Congress intended to reach only evidence located within the United States.'" In re Kreke Immobilien KG, No. 13 Misc. 110 (NRB), 2013 WL 5966916, at *4 (S.D.N.Y. Nov. 8, 2013) (quoting In re Sarrio, S.A., 119 F.3d 143, 147 (2d Cir. 1997)).  Courts in the Second Circuit are divided on this issue, but "'[t]he bulk of authority in this Circuit' suggests that a [Section] 1782 respondent cannot be compelled to produce documents located abroad." Id. (quoting In re Godfrey, 526 F. Supp. 2d 417, 423 (S.D.N.Y. 2007)); see also Microsoft, 428 F. Supp. 2d at 194 n.5 (S.D.N.Y. 2006) ("[Section] 1782 does not authorize discovery of documents held abroad."). Consistent with In re Kreke, this Court concludes that Section 1782 does not authorize a court to compel a party to produce documents located abroad.  Accordingly, the instant subpoenas are to be read as seeking only documents located in the United States.  Because all Movants are located in the United States, they are required to appear for deposition in accordance with the subpoenas.

Movants also argue that the subpoenas "are completely vague and unfocused, and improperly expansive and unduly intrusive."  (Movants Br. (Dkt. No. 13) at 12)  "[F]ew reported decisions address the issue of burdensomeness in the context of [Section] 1782. . . ."  In re OOO Promnefstroy, 2009 WL 3335608, at *9.  Under Rule 45 of the Federal Rules of Civil Procedure, "[w]hether a subpoena imposes an 'undue burden' 'depends on such factors as relevance, the need of the party for the documents, the breadth of the document, the time period covered by it, the particularity with which the documents are described and the burden imposed.'"  Koch v. Pechota, No. 10 Civ. 9152, 2012 WL 4876784, at *3 (S.D.N.Y. Oct. 12, 2012) (quoting Night Hawk Ltd. v. Briarpatch Ltd., L.P., No. 03-cv-1382 (RWS), 2003 WL 23018833, at *8 (S.D.N.Y. Dec. 23, 2003) (citations and quotations omitted)).  "[I]nconvenience alone will not

justify an order to quash a subpoena that seeks potentially relevant testimony." <u>Kirschner</u>, 2005 WL 1214330, at *2.

Although the document requests in the Bullock and RIGroup subpoenas seek documents relating to Bullock's and RIGroup's respective relationships with a large number of individuals and entities, all of the requests seek relevant information regarding Bullock's and RIGroup's relationships with, and knowledge of, companies, programs, and individuals involved in the fraud alleged in the Cyprus Proceedings.  Gorsoan explains that the RIGroup subpoena "also seeks production of documents regarding these key areas . . . because it is plausible that Bullock [as the sole member of RIGroup] may maintain such records in the files of her U.S. company rather than in her personal files." (Gorsoan Opp. Br. (Dkt. No. 16) at 10)  Bullock and RIGroup have not demonstrated that the subpoenas served on them seek irrelevant information or are overly broad.  As to the Smith and Remmel subpoenas, they seek information concerning certain individuals' and entities' involvement in and knowledge of the fraud alleged in the Cyprus Proceedings.  Once again, Movants have not demonstrated that these requests seek irrelevant information or are overly broad.

In sum, analysis of the fourth <u>Intel</u> factor weighs in favor of enforcing Gorsoan's subpoenas.

*     *     *     *

Analysis of the four <u>Intel</u> factors demonstrates that the instant subpoenas were properly issued.  Accordingly, Movants' motion to quash will be denied.

### C.   **Bullock's Request for Reciprocal Discovery**

Bullock requests, in the alternative, that this Court condition its grant of Section 1782 discovery on Gorsoan "providing reciprocal discovery to Ms. Bullock such [as] to impose

parity to the disclosure mix." (Movants Br. (Dkt. No. 13) at 13)  "'Consistently, the Second

Circuit and the Supreme Court[] have suggested that a district court could condition relief [under

28 U.S.C. § 1782] upon a reciprocal exchange of information, as such would lend parity to the

disclosure mix.'"  In re Consorcio Minero, S.A. v. Renco Group, Inc., No. 11 Mc. 354, 2012 WL

1059916, at *3 (S.D.N.Y. Mar. 29, 2012) (quoting Minatec Finance S.A.R.L. v. SI Group, Inc.,

No. 08 Civ. 269, 2008 WL 3884374, at *9 (N.D.N.Y. Aug. 18, 2008)).  Reciprocal discovery is

appropriate where "[t]here is apparently no process by which [the party requesting reciprocal

discovery] can seek and obtain documents from [the other party] in the [foreign] proceedings in

the manner in which discovery may proceed in the U.S. under 28 U.S.C. § 1782." Id. at *4.

   Gorsoan asserts that Bullock is not entitled to reciprocal discovery because she

has "refused to comply with discovery in the Cyprus Proceeding[s]" and "she has not sought

discovery in the Cyprus Proceedings." (Gorsoan Opp. Br. (Dkt. No. 16) at 14)  Although

Bullock disputes whether she was properly served with the Freezing and Disclosure Order, she

has not disputed Gorsoan's assertion that she "has not sought any discovery or disclosure from

Gorsoan or [Gazprombank] in the Cyprus Proceeding."  (See Tsirides Supp. Decl. (Dkt. No. 17)

¶ 14)  Because there is no suggestion that the discovery procedures in Cyprus are inadequate, or

that Bullock cannot obtain documents from Gorsoan in the Cyprus Proceedings, Bullock is not

entitled to reciprocal discovery.

### D.  Bullock's Requests for a Protective Order and Attorneys' Fees

   Movants request that this Court condition any discovery "upon the entry of an

appropriate protective order declaring the documents to be confidential, limiting Petitioners'

ability to use same, and obliging Petitioners to institute proper protections to ensure the privacy

and confidentiality of the documents and/or information produced. . . ." (Movants Br. (Dkt. No.

13) at 14)  Movants' confidentiality concerns may be satisfied through a standard confidentiality agreement and protective order pursuant to Federal Rule of Civil Procedure 26(c).  The parties may submit a proposed protective order, using this Court's model protective order.

Finally, Movants' request for attorneys' fees pursuant to Federal Rule of Civil Procedure 45(d) is denied, because they have not shown that Gorsoan failed to "avoid imposing undue burden or expense on a person subject to the subpoena[s]."  See Fed. R. Civ. P. 45(d).

## CONCLUSION

For the reasons stated above, Movants' motion to vacate this Court's December 4, 2013 order granting Gorsoan's Section 1782 application, and motion to quash the subpoenas served on Movants, is DENIED.  (Dkt. No. 12)  However, discovery pursuant to the instant subpoenas is limited to materials found in the United States, and to testimony that can be obtained within the United States.

The Clerk of Court is respectfully directed to terminate the motion.  (Dkt. No. 12)

Dated: New York, New York
       December 10, 2014

                                   SO ORDERED.


                                   _____
                                   Paul G. Gardephe
                                   United States District Judge

21